UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>v.<br><br>STEPHEN JOHNSON<br>   Defendant. | Case No. 22-cr-0176 (CJN) |

DEFENDANT STEPHEN JOHNSON'S
MOTION TO SUPPRESS STATEMENTS

Stephen Johnson, through undersigned counsel, moves this Court for an order suppressing as evidence against him at trial statements he made while in law enforcement custody. Mr. Johnson seeks the suppression of these statements because they were obtained in violation of the Fifth Amendment to the United States Constitution and *Miranda v. Arizona*, 384 U.S. 436 (1966). The statements should also be suppressed because they are the tainted fruit of a Fourth Amendment violation. An evidentiary hearing on this motion is respectfully requested.

BACKGROUND AND STATEMENT OF FACTS

On October 7, 2021, agents with the Federal Bureau of Investigation (FBI) executed a search warrant at Mr. Johnson's residence in connection with an investigation into the possible transportation of child pornography. During the execution of the search warrant, Mr. Johnson was arrested and taken to the FBI's Washington Field Office at 601 4th Street, NW, Washington, DC. While in the custody of law enforcement at the FBI's Washington Field Office, Mr. Johnson was interrogated by two FBI agents about an alleged child pornography offense. Mr. Johnson made several statements during his interrogation.

Mr. Johnson's interrogation was video recorded. Audio from the video recording of the

interrogation shows that Mr. Johnson made some potentially incriminating statements in response to law enforcement questioning before he was given any *Miranda* warnings. Those potentially incriminating statements include statements about his place of residence and telephone number.

The recording further reveals that, before being advised of his *Miranda* rights, an agent told Mr. Johnson that "[i]n order for us to talk to you, we're going to have to walk you through your advice of rights." Then, the agent said: "Basically, we want to have a conversation with you so we can tell you like what's going on and why we're here, um, and in order to do that we have to let you know all of your rights, okay." About one minute after this discussion, the agent informed Mr. Johnson of his *Miranda* rights. Mr. Johnson indicated that he understood his rights by nodding his head and faintly saying "uh-huh" after the agent asked if he understood his rights.

The recording of Mr. Johnson's statement reveals that, after his rights were read to him, and before answering any additional questions, he asked "[c]an I have a lawyer present?" An agent then told Mr. Johnson that "that is your right" and then stated the following: "But what I'm asking you is are you willing to initiate a conversation with us now without a lawyer present." The agent also told Mr. Johnson that "we just want to be able to tell a little bit right now about what's going on." Mr. Johnson then appears to sign the form from which the agent read Mr. Johnson his rights.[1] After signing the form, he continued speaking with the two agents for an extended period. Mr. Johnson made various statements about the offense with which he is charged during his interrogation.

---

[1] Through discovery, the government produced a "Federal Bureau of Investigation Advice of Rights" form which appears to bear Mr. Johnson's signature. Above the signature line of this form, it states that "I have read this statement of my rights and I understand what my rights are. At this time, I am willing to answer questions without a lawyer present."

On October 5, 2021, two days before Mr. Johnson's arrest, a criminal complaint was filed in the United States District Court for the District of Columbia. On October 7, 2021, after his custodial interrogation, Mr. Johnson appeared before a United States Magistrate Judge. Mr. Johnson remained in custody until his detention hearing the next day. At the conclusion of the October 8, 2021, detention hearing, Mr. Johnson was released from custody.

An indictment was filed against Mr. Johnson in connection with the instant case on May 20, 2022. The indictment charges Mr. Johnson with one count of Transportation of Child Pornography, in violation of 18 U.S.C. § 2252(a)(1). A trial date has been set for January 29, 2024.

The government may seek to use statements made by Mr. Johnson during his custodial interrogation against him at a trial. For the reasons set forth below, the government is precluded from using against Mr. Johnson at trial any statements he made to law enforcement during his custodial interrogation.

## **ARGUMENT**

### I.      Mr. Johnson's Statements Must Be Suppressed as the Tainted Fruit of His Illegal Arrest

The government bears the burden of proving that the seizure of Mr. Johnson was lawful. *See Florida v. Royer*, 460 U.S. 491, 500 (1983) (it is the government's burden to justify seizure); *United States v. Allen*, 629 F.2d 51, 55 (D.C. Cir. 1980) (burden is on the government to prove legality of challenged arrest); and *United States v. Delaney*, 955 F.3d 1077, 1081 (D.C. Cir. 2020) (the "government bears the burden to provide evidence sufficient to support reasonable suspicion"). Mr. Johnson was undoubtedly seized for purposes of the Fourth Amendment at the time he made statements to law enforcement considering that a reasonable person in his

circumstances would not have felt free to leave. *See United States v. Mendenhall*, 446 U.S. 544, 545 (1980) (a person is seized for Fourth Amendment purposes when "a reasonable person would have believed that he was not free to leave"). Thus, the police needed probable cause or a valid warrant to justify seizing Mr. Johnson. *See United States v. Watson*, 423 U.S. 411, 417 (1976).

For reasons discussed in Mr. Johnson's Motion to Suppress Evidence from Residence (ECF No. 83) and Motion to Suppress Evidence from Google Account (ECF No. 82), Mr. Johnson's seizure and removal from his residence on October 7, 2021, was done in violation of the Fourth Amendment. Accordingly, any statements he made after his unlawful seizure must be suppressed. *See Taylor v. Alabama*, 457 U.S. 687 (1982) (confession that was the fruit of an illegal arrest is inadmissible) and *Dunaway v. New York,* 442 U.S. 200 (1979) (same).

> II. **Mr. Johnson's Statements Were Obtained in Violation of His Fifth Amendment Right Under the United States Constitution and *Miranda***

The Fifth Amendment to the United States Constitution provides that no person shall "be compelled in any criminal case to be a witness against himself." U.S. Const. Amend. V. It is well understood that, as part of this Fifth Amendment protection, statements made by an accused during custodial interrogation cannot be used against him at trial unless he was properly informed about his right to remain silent and validly waived that right. *See Miranda v. Arizona*, 384 U.S. 436 (1966).

To determine if a person experienced "custodial interrogation" for purposes of assessing whether his *Miranda* rights were violated, courts must evaluate two questions: 1) Whether the accused was in custody; and 2) if the accused was in custody, whether he was being interrogated. *See Rhode Island v. Innis*, 446 U.S. 291, 300-301 (1980) ("*Miranda* safeguards come into play whenever a person in custody is subjected to either express questioning or its functional equivalent"). A person is in custody when he feels that he is "not at liberty to terminate the

interrogation and leave." *Thompson v. Keohane*, 516 U.S. 99, 112 (1995). Ordinarily, a "formal arrest or restraint on freedom of movement of the degree associated with a formal arrest" constitutes custody. *See California v. Beheler*, 463 U.S. 1121, 1125 (1983). Interrogation occurs when law enforcement officers engage in "express questioning" or any other activity that is "reasonably likely to elicit an incriminating response." *Rhode Island v. Innis*, 446 U.S. at 301 (1980).

Based on what constitutes "custodial interrogation," Mr. Johnson clearly experienced custodial interrogation when he was questioned at the FBI Washington Field Office on October 7, 2021. His formal arrest at his residence and subsequent transfer to the FBI's office would undoubtedly convey to any reasonable person that he was not free to leave during any questioning. And all statements made by Mr. Johnson while at the FBI's Washington Field Office were in response to express questioning. Thus, before using any of these statements against Mr. Johnson at trial, the government must show that the statements were obtained in compliance with *Miranda*.

> A. <u>All statements obtained from Mr. Johnson prior to being given his *Miranda* warnings must be suppressed.</u>

The video recording of Mr. Johnson's interrogation shows that he made several statements to FBI agents before any *Miranda* warnings were provided to him. The government may seek to use some of Mr. Johnson's pre-warning statements against him at trial. For example, the government may seek to use Mr. Johnson's statements regarding his residency to prove that he resided at a location allegedly associated with transporting child pornography. Additionally, the government may seek to use information Mr. Johnson provided about his telephone number to tie him to a telephone that may have allegedly been used to possess or transport child pornography. Because these statements were made during custodial interrogation and before Mr. Johnson was informed about his *Miranda* rights, the statements are inadmissible at trial. *See Miranda* 384 U.S.

at 444 ("the prosecution may not use statements, whether exculpatory or inculpatory, stemming from custodial interrogation of the defendant unless it demonstrates the use of procedural safeguards effective to secure the privilege against self-incrimination").  Accordingly, the admission at Mr. Johnson's trial of any statements he made before being given any *Miranda* warnings will violate Mr. Johnson's Fifth Amendment rights.

> B. Because there was no valid waiver of Mr. Johnson's *Miranda* rights, all statements obtained from Mr. Johnson after he was given *Miranda* warnings must be suppressed.

The Miranda warnings given by law enforcement officers must reasonably convey the constitutional rights of the accused.  *See California v. Prysock*, 453 U.S. 355, 361 (1981).  These rights are not reasonably conveyed when a person is misled about the nature of his constitutional rights.  *See United States v. Noti*, 731 F.2d 610, 614 (9th Cir. 1984).  Similarly, an apparent waiver of these rights is not valid if not "made with a full awareness of both the nature of the right being abandoned and consequences of the decision to abandon it."  *Moran v. Burbine*, 475 U.S. 412, 421 (1986).  For a waiver to be valid, it must be shown "that the waiver was knowing, intelligent, and voluntary."  *Maryland v. Shatzer*, 559 U.S. 98, 104 (2010).

Mr. Johnson was not adequately advised of his *Miranda* rights because the agent did not properly inform him about the purpose of these rights.  While the purpose of *Miranda* warnings is to inform an accused person about his rights concerning speaking with law enforcement, the agent repeatedly told Mr. Johnson that the warnings were so he can learn from the agents about why he was being arrested.  Mr. Johnson was advised by an agent that "[i]n order *for us to talk to you*, we're going to have to walk you through your advice of rights" [emphasis added].  Mr. Johnson was then told that "we want to have a conversation with you *so we can tell you* like what's going on and why we're here" [emphasis added]. The agent informed Mr. Johnson that before *they could*

6

*speak* to him, "we have to let you know all of your rights." And, when Mr. Johnson asked about speaking with an attorney, he was told that he had a right to have an attorney or he could "initiate a conversation" with agents without an attorney so *they* are "able to tell a little bit right now about what's going on." These statements by law enforcement are misleading because they would cause a reasonable person (and Mr. Johnson) to incorrectly believe that *Miranda* warnings are to advise one of his rights regarding getting information from law enforcement about the purpose of that person's arrest.

Additionally, Mr. Johnson did not validly waive his *Miranda* rights because the agent did not properly inform him about what he was waiving. According to the agents, Mr. Johnson simply had to choose whether he was willing to participate in a conversation without a lawyer in which the agents were merely going to inform him about the purpose of his arrest. The agents did not adequately warn Mr. Johnson that he was being asked to waive his right not to incriminate himself without the assistance of counsel. It is only after being induced by promises of being informed about "what's going on" that Mr. Johnson agreed to have a conversation with the agents. Under these circumstances, there can be no finding that Mr. Johnson understood the nature of the right being abandoned and that he abandoned his rights knowingly, intelligently, and voluntarily.

C. <u>Because law enforcement officers did not cease questioning after Mr. Johnson invoked his right to counsel, his statements must be suppressed.</u>

In accordance with *Miranda*, "[i]f the individual indicates in any manner, at any time prior to or during questioning, that he wishes to remain silent, the interrogation must cease." *Miranda* 384 U.S. at 473-74. And "[if] the individual states that he wants an attorney, the interrogation must cease until an attorney is present." *Id*. at 474.

When Mr. Johnson inquired about having counsel present, the agents did not cease questioning. Nor did they make any attempt to make an attorney available for Mr. Johnson.

7

Rather, an agent told Mr. Johnson that he could be informed about "what's going on" if he spoke with the agents without a lawyer. Thus, by failing to cease questioning, or at least get clarification about Mr. Johnson's wishes, Mr. Johnson's Fifth Amendment rights were violated by the FBI agents. Because agents continued to engage Mr. Johnson in the absence of counsel, any statements he made to them are presumed involuntary. *See McNeil v. Wisconsin*, 501 U.S. 171, 177 (1991) ("[i]f the police do subsequently initiate an encounter in the absence of counsel (assuming there has been no break in custody), the suspect's statements are presumed involuntary and therefore inadmissible as substantive evidence at trial, even where the suspect executes a waiver and his statement would be considered voluntary under traditional standards"). For these reasons, Mr. Johnson's statements must be suppressed as being involuntarily made.

## CONCLUSION

For all the foregoing reasons, either one of which is sufficient to compel suppression of Mr. Johnson's statements in this case, and for any other reasons this Court may deem just and proper, Stephen Johnson, through counsel, respectfully requests that this motion be granted and that any statements made by him during custodial interrogation be suppressed as evidence against him at trial.

DATED: November 22, 2023            Respectfully submitted,

*/s/ Jonathan Jeffress*
Jonathan Jeffress (D.D.C. Bar No. 479074)
Tony Miles (D.D.C. Bar No. 484450)
Washington, D.C. 20005
Phone: (202) 640-2850
Fax: (202) 280-1034
jjeffress@kaiserdillon.com
tmiles@kaiserdillon.com

*Counsel for Defendant Stephen Johnson*

8