UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>v.<br><br>STEPHEN JOHNSON<br>        Defendant. | Case No. 22-cr-0176 (CJN) |

**DEFENDANT STEPHEN JOHNSON'S
REPLY IN SUPPORT OF HIS MOTIONS IN LIMINE TO EXCLUDE EVIDENCE**

      Stephen Johnson, through undersigned counsel, respectfully submits this Reply in support of his Consolidated Motion in Limine to Exclude Certain Irrelevant, Prejudicial, Hearsay and Unconstitutional Evidence, as well as his Motion in Limine to Exclude Evidence of Google Searches. *See* ECF No. 117, 122. For reasons that follow, the Court should grant the motions in limine to exclude evidence.

### DISCUSSION

**I.    Mr. Johnson Only Seeks Preclusion of Evidence on the Number of CyberTip Reports, which Remains Irrelevant, Unfairly Prejudicial and Cumulative.[1]**

      By his motion in limine, Mr. Johnson seeks only to exclude evidence of the number of CyberTips, not their content. *See* ECF No. 117 at 3-5. The government acknowledges this much, mentioning that Mr. Johnson's "focus [is] on the number of CyberTip reports[.]" ECF No. 124 at 3. However, its argument that the evidence is admissible then revolves around the content of the

---

[1] The purpose of this Motion, and the relevant section in the Motion to Exclude Certain Evidence, is to preclude admission of evidence related to the number of CyberTips. *See* ECF No. 117 at 3-5. Mr. Johnson's counsel is currently working with the government to agree on which portions of the report it will introduce. Consequently, the content of the CyberTips might be at issue in the future, addressed through another motion, but not in this Motion.

CyberTip reports, based on the fact that the "content of the reports, not the number of reports … is significant." *Id.* Mr. Johnson and the government seem to agree on this principle – the number of reports is insignificant. The disagreement lies in the conclusion, namely that the Court should exclude evidence that is irrelevant, rather than letting it go forward because other portions of the document may be probative.

Insofar as the government still intends to admit the *number* of CyberTips, Mr. Johnson's arguments regarding their low probative value and substantially higher risk of unfair prejudice remain. First, as the government seems to concede, the number of CyberTips "is likely a function of the way the Google stores and reviews data on its servers[.]" *Id.*; *see also* ECF No. 117 at 3-4 (explaining how one upload may instantaneously and automatically set off multiple reports across Google's vast network of servers). Thus, the number of CyberTip reports does not have "any tendency to make a fact" of consequence "more or less probable than it would be without" the number of reports. *See* Fed. R. Evid. 401 (defining relevance). Consequently, the number of CyberTips remains of minimal or nil probative value, irrelevant and, under Fed. R. Evid. 402, inadmissible.

Additionally, the low probative value is far outweighed by the risks of unfair prejudice and cumulative evidence. As explained in the Motion to Exclude Certain Evidence, the high number of the CyberTips is designed to evoke a "purely emotional basis" for the jury to decide on the matter, a basis protected against by Rule 403. *See* Fed. R. Evid. 403 (Advisory Committee notes). As the government recognizes, "it is … not the number of reports submitted that is significant[.]" ECF No. 124 at 4. That the government may "place no emphasis" on the number of trial, with only "[i]ncidental reference" to it, and the jury might "focus not on the number of reports," *see* ECF No. 124 at 4-5, are all irrelevant to the inadmissibility of the evidence.

2

Put simply, the number of CyberTips is not probative of any point of consequence to the charges against Mr. Johnson. The government seems to agree on this much. The evidence is therefore irrelevant and inadmissible under Rules 401 and 402. Additionally, to the extent the government argues it could still refer to the number of CyberTips in passing, their irrelevance is vastly outweighed by the risks of unfair prejudice and cumulative evidence they present. Inadmissible evidence remains inadmissible, regardless of how much the government mentions it. Consequently, the number of CyberTips is also inadmissible under Rule 403.

## II. Lay Testimony by LEO Regarding the Age of the People in the Material May Fall Outside the Scope of Permissible Topics for a Lay Witness.

To the extent that the government agrees it will not call on the NCMEC representative to testify about the age of the people depicted in the files or their status as "known minors," the issue is resolved. *See* ECF No. 124 at 6 & n. 1. However, to the extent the government will call on LEOs to testify regarding the age of the victims, Mr. Johnson maintains his concerns around the proper scope of lay testimony.

As explained in the original Motion to Exclude Certain Evidence, the age of the people depicted in the material is better left to an expert. *See* ECF No. 117 at 6. The Federal Rules of Evidence, as well as binding case law on this Court, set out that an expert may testify if their "scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue[,]" whereas a lay witness can only testify based on their "experiential perception" and a reasoning process "familiar to the average person in everyday life." *United States v. Wilson*, 605 F.3d 985, 1025 (D.C. Cir. 2010) (citing *United States v. Garcia*, 413 F.3d 201, 215 (2d Cir. 2005)); *see also* Fed. R. Evid. 701, 702(a). The government intends to introduce six LEO to testify on the age of the people depicted in the material, as they can identify those depicted in the files in "Counts Two, Four, Ten, Twelve, Thirteen, Fourteen, and Fifteen[.]"

3

*See* ECF No. 124 at 6. Notably, this still ignores the requirement for personal knowledge regarding the people depicted in Counts One, Three and Five through Nine. *Cf.* ECF No. 110 at 2.

Even if this fundamental requirement was addressed, the government's proposed basis for the testimony is also weak at best, arguing that the testimony of LEO may "aid the jury" because they have "more complete bases on which to assess the minor victims' ages," including their "height, weight, clothing, and behavior, including vocabulary and the ability to carry on a conversation with an adult." ECF No. 124 at 8. The government seemingly acknowledges the shakiness of this foundation, as it also stated its intent to introduce a birth certificate regarding one of the people in the material, and its intent to allow the jury to observe the ages for others. *Id.* at 6, 8. While voluminous, the case law it cites in support of its ability to call LEO on this topic is also only vaguely related at best, as it all falls outside of this jurisdiction, and therefore fails to bind this Court. *Id.* at 7 & n. 3. Case law within this Circuit, on the other hand, supports the introduction of expert testimony to prove the age of people in alleged child pornography material. *See* ECF No. 117 at 6 (collecting D.D.C. and D.C. Cir. case law). While the government may prove its case as it wants, it remains constrained by the Federal Rules of Evidence, including Rules 701 and 702.

In light of the above, the Court should limit LEO testimony to the proper scope of lay testimony. Unless the government qualifies and notifies the declarant as an expert, the Court must keep the age of the people depicted in the material as outside the scope of testimony. Insofar as the witness testimony is kept within the proper scope, the issue is resolved.

  **III.** **Only One Mega.nz Link May be Relevant, Keeping the Rest of the Mega.NZ Report and its Bounce-Back Message Inadmissible.**

Similarly to the above, the government's argument is focused primarily on a topic that was not of concern to Mr. Johnson, resolving the issues in favor of exclusion. To the extent the

4

the government "does not intend to introduce the content of the bounce-back message," *see* ECF No. 124 at 10, the issue regarding that potential evidence is resolved.

The government also fails to explain the relevance of the rest of the Mega.nz report outside of one link. It explains how one video listed in the report is charged in the operative indictment and might be traced back to Mr. Johnson's web history, but fails to do so on any "other aspects of that report[.]" ECF No. 124 at n. 5. In other words, it explains how "the file" is probative, but not how "Mega.nz links for child pornography files" are linked to the defendant. *Id.* at 10. Consequently, the Court should exclude the rest of the Mega.nz report.

**IV.   The Google Searches On or After October 2, 2020, Without Any Further Evidence of Links to Child Pornography, Are Irrelevant to His Alleged Activity or State of Mind at the Time in Question, Confuse the Issues, Waste Time and Are Cumulative and Unfairly Prejudicial.**

The government reiterated its intent to introduce evidence of Mr. Johnson's Google searches following the notification that his account was disabled on October 2, 2020, listing certain searches from October 2 through October 5, 2020 in order to prove their relevance and admissibility. *See* ECF No. 124 at 10-13. Respectfully, the searches identified by the government remain irrelevant to Mr. Johnson's activity and state of mind at the time of the alleged offense conduct, and the probative value of such evidence is vastly outweighed by the risks of confusing the issues, wasting time, presenting cumulative evidence and unfair prejudice. The Court should therefore exclude the evidence under Rule 402 and 403.

Reducing the probative value even further is the timing of these searches well after the alleged offense conduct. The government claims the searches go towards mens rea and consciousness of guilt. *Id.* at 12. The operative indictment, however, only charges Mr. Johnson with activity up to and including September 21, 2020 and October 1, 2020. *See* ECF No. 110. Any evidence regarding Mr. Johnson's state of mind beginning on the day *after* the last day of the

alleged offense conduct proves nothing regarding his state of mind *during* that timeframe.  As explained in the original Motion to Exclude Google Searches, those searches only tend to show a "natural and expected reaction" by a "confused and worried person who is simply searching for answers and support online."  *See* ECF No. 122 at 3.  Distinguishing from a recent D.D.C. case, Mr. Johnson's searches are entirely unlike the statements of someone who stormed the Capitol on January 6, 2021, then attempted to preclude introduction of his public commentary on social media regarding the same event.  *United States v. Bennett*, No. CR 21-312 (JEB), 2023 WL 6460026, at *6 (D.D.C. Oct. 4, 2023).  It does not go towards his actions or his intent during the alleged offense conduct.  Like *Stehn v. Cody*, which, unlike the government's assertions, may guide the Court, the searches are a "fragment that is not intelligible without inferring what might have been written in the gaps" which could "easily engender needless and possibly prejudicial speculation by the jury[.]" *Stehn v. Cody*, 74 F. Supp. 3d 140, 150-151 (D.D.C. 2014).  The probative value is negligible, to the point that its admission may be precluded under Rule 402.

        Additionally, the probative value is substantially outweighed by the risks of jury confusion, waste of time, cumulative evidence and unfair prejudice.  As explained in the original Motion to Exclude Google Searches, it invites a "guilty by association," as the jury would be asked to infer Mr. Johnson's guilt from his apparent anxiety about the reasons underlying the Google alert.  *See* ECF No. 122 at 4-5; *see also United States v. Hernandez*, 780 F.2d 113, 118 (D.C. Cir. 1986) (holding that Rule 403 bars admission of evidence where "whatever the slim probative value … it was overwhelmed by its prejudicial effect" because it would lead the jury to infer "a slightly refined version of guilt by association").  Simply because Mr. Johnson looked up "guilty-looking" articles on the Internet, the jury would be asked to conclude his guilt and his own guilty conscience, raising substantial risks of unfair prejudice.  *Id.*; *see also Stehn v. Cody*, 74 F. Supp. 3d 140, 147-

148 (D.D.C. 2014) (barring testimony about the payment of a traffic fine under Rule 403, because "[i]nsofar as there is any probative value in the oral statement that exceeds the statement implicit in paying the ticket, it is outweighed by the risks of jury confusion and unfair prejudice … admission of the testimony would likely suggest to a jury that Defendant's statement means that Defendant *actually believed* that he had violated the law by failing to yield." (emphasis in original)).  In addition to the unfair prejudice, the evidence would also confuse the jury and likely waste the judge and jury's time, as the activities in the days following the charged offense conduct would just provide arbitrary, additional context, while the government may attempt to prove the relevant elements with proof of activity during the relevant time period.  *See* ECF No. 122 at 4; *see also Elion v. Jackson*, 544 F. Supp. 2d 1, 8 (D.D.C. 2008) (barring evidence with low probative value, that is only indirectly linked to the matter, when it "could confuse the jury and would likely waste the Court's and the jury's time.").

In light of the above, significant risks of unfair prejudice, jury confusion, waste of time and cumulative evidence, weighed against the minimal-to-no probative value, the Court must also preclude evidence of the Google searches under Rule 403**.**

**V.      Issues Regarding Other Evidence are Resolved.**

To the extent the government stated its intent not to introduce other evidence flagged in the Motion to Exclude Evidence, those issues are resolved.  *See* ECF No. 124 at 13.  The government stated it does not intend to present the opinions of LEO stated during Mr. Johnson's custodial interview at trial and does not intend to present evidence on Mr. Johnson's Tor browser at trial.  *Id.*  To the extent the government intends to introduce evidence of Mr. Johnson's Google search for "private for search engine" at his trial, *see id.* at n. 9, Mr. Johnson reiterates the issues of relevance and unfair prejudice stated both with regards to the Tor Browser and with regards to

7

the Google searches. *See* ECF No. 117 at 11-12; *see also* ECF No. 122 at 2-5. Put simply, without more, a Google search for "private for search engine" has no relevance to Mr. Johnson's trial and would only serve to unduly prejudice the jury against him.

## CONCLUSION

For all the foregoing reasons, this Court should grant Defendant Stephen Johnson's motions in limine to exclude evidence.

DATED: March [XX], 2024

Respectfully submitted,

*/s/ Jonathan Jeffress*
Jonathan Jeffress (D.D.C. Bar No. 479074)
Tony Miles (D.D.C. Bar No. 484450)
Washington, D.C. 20005
Phone: (202) 640-2850
Fax: (202) 280-1034
jjeffress@kaiserdillon.com
tmiles@kaiserdillon.com

*Counsel for Defendant Stephen Johnson*