UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>v.<br><br>STEPHEN JOHNSON,<br><br>Defendant. | Case No. 22-CR-176 (CJN) |

### GOVERNMENT'S PRE-HEARING MEMORANDUM

The United States of America, by and through undersigned counsel, respectfully submits this Pre-Hearing Memorandum in advance of the evidentiary hearing currently scheduled for Monday, April 1, 2024.

### RELEVANT PROCEDURAL HISTORY

On November 22, 2023, the defendant filed motions to suppress his statements and the evidence from his Google account, residence, and digital devices. (ECF Nos. 82, 83, 84, 85). The defendant principally challenges the warrantless review of the CyberTip images in his Motion to Suppress Evidence from Google Account, but he also argues that the warrantless review taints the government's recovery of all the evidence in this case, including his statements. (ECF Nos. 83, 84, 85). The issue was extensively briefed. (ECF Nos. 94, 99, 121, 128).

This Court heard oral argument at a motions hearing on March 21, 2024. Later that same day, the government submitted a Supplement to its memoranda in opposition to the defendants' suppression motions. (ECF No. 133). On March 22, 2024, the defendant filed a Response and exhibit thereto, and the government filed a Reply. (ECF Nos. 134, 135, 136).

On March 25, 2024, the parties were advised by email that this Court wished to schedule an evidentiary hearing focusing on the specific facts that led to the government's decision to submit

the CyberTips warrant application. The Court noted that it would be helpful if the government could present, among other things, evidence about the government's practice around that time regarding decisions to seek warrants in similar circumstances. After the government sought clarification, the parties were advised that, in addition to assessing the application of the good-faith exception to the exclusionary rule, the Court is considering whether it may be possible to consider the issues regarding the viewing of the CyberTips files under the independent source doctrine, *see Murray v. United States*, 487 U.S. 533 (1988).

The evidentiary hearing has been scheduled for Monday, April 1, 2024. Given the proximity of the trial date, and to aid the Court's resolution of the defendant's suppression motions, the government respectfully submits this Pre-Hearing Memorandum to advise the Court and the defense of the evidence and argument it intends to present at the hearing.

## THE GOVERNMENT'S ANTICIPATED PRESENTATION

The government intends to call Detective Thomas Sullivan at the hearing. The government anticipates that Detective Sullivan's testimony will establish the following facts:

Detective Sullivan has been employed by the Metropolitan Police Department since 2009 and has held the rank of Detective Grade II since 2015. Since 2018, Detective Sullivan has been assigned to the Northern Virginia–Washington, D.C. Internet Crimes Against Children Task Force. The ICAC Task Force is a partnership between local, state, and federal law enforcement agencies. Among other functions, the ICAC Task Force is responsible for coordinating CyberTipline reports ("CyberTips") received from the National Center for Missing and Exploited Children.

Between October 3 and 5, 2020, Google submitted 19 CyberTips to NCMEC concerning 220 media files that the defendant uploaded to his Google account on September 21, 2020, and October 1, 2020. The reports were referred to the ICAC Task Force and were initially investigated

by the Virginia State Police, which is the Task Force's coordinating agency. Between December 7 and 10, 2020, a VSP Special Agent served administrative subpoenas upon Google, Comcast, Verizon Wireless, and Sprint. Once it was determined that the defendant appeared to reside in Washington, D.C., the CyberTips were referred to Detective Sullivan.

On December 16, 2020, Detective Sullivan formally opened a case within MPD's system. At the time, Detective Sullivan's understanding was that he needed to apply for a search warrant to view CyberTip files if a person at the electronic service provider submitting the CyberTip had not viewed the files, either historically or contemporaneously with the submission of the CyberTip. In Detective Sullivan's experience, most service providers review reported content before submitting a CyberTip, and so he was not often presented with CyberTips that required him to obtain search warrants.

Before the Google CyberTips in this case, Detective Sullivan had applied for a search warrant to review a CyberTip one time, in 2018, for a CyberTip involving a relatively obscure service provider called "Rabbit." In the "Rabbit" case, Detective Sullivan sought a search warrant to review the CyberTip content because it was not clear that "Rabbit" had done any review before sending the files included with the CyberTip, and a cloud service submitted the CyberTip on behalf of "Rabbit."

Detective Sullivan's understanding here was that Google employed hash matching and that a hash-matched copy of the files attached to the CyberTips had been historically reviewed by a person at Google, as Google explained in the "Company Information" section of the CyberTips:

> With respect to the portion of this CyberTip containing the heading: "Was File Reviewed by Company?", when Google responds "Yes" it means the contents of the file reported were viewed by a person concurrently to or immediately preceding the sending of the CyberTip. When Google responds "No", it means that while the contents of the file were not reviewed concurrently to making the report, historically a person had reviewed a file whose hash (or digital fingerprint) matched the hash of the reported image and determined it contained apparent child pornography.

Accordingly, Detective Sullivan reasoned that because the reported content had been historically

3

reviewed by a person at Google, he was not required to obtain a search warrant. To Detective Sullivan's knowledge, there was no policy or practice of applying for search warrants in these circumstances.[1] Had Detective Sullivan known that applying for a search warrant was advisable, he would have refrained from viewing the files and applied for a search warrant.

Detective Sullivan viewed video files attached to at least one of the CyberTips. Detective Sullivan's practice is to view thumbnails of files, and he does not view any more than is necessary to draft a probable cause narrative, which typically means opening and watching only a few videos. On December 16, 2020, Detective Sullivan drafted an affidavit in support of a search warrant for the defendant's Google account and submitted it to an Assistant United States Attorney for review. In the affidavit, Detective Sullivan described the content of four video files attached to CyberTip report number 80805184: "lil black girl fucked by BBC.mp4"; "d7f235bb-2f07-41c6-beed-92cd0dc41788.mp4"; "black Shayla BACK IT UP 2.mp4"; and "VID-20180228-WA0229.mp4."

After being alerted to the unsettled law on Google's hash matching and the potential need for a warrant to review the CyberTip files, Detective Sullivan turned to drafting an affidavit in support of a search warrant for the CyberTip files. On December 28, 2020, the government submitted the warrant application, in case number 20-SW-321, and it was referred to the Honorable Zia M. Faruqi. In the affidavit, Detective Sullivan disclosed that he had viewed the CyberTip files but noted that he was not relying on anything he had learned to establish probable cause.

On January 4, 2021, Detective Sullivan reached out to a contact at the FBI for assistance.

---

[1] As the magistrate court noted in its order denying the government's warrant application, "[t]o the Court's and the government's knowledge, this was one of the first requests in this District for a warrant to search a CyberTip report." *In the Matter of the Search of Encrypted Data Provided by the National Center for Missing and Exploited Children for Nineteen Related Cyber Tipline Reports*, Case No. 20-SW-321 (ZMF), 2021 WL 2100997, at *2 (D.D.C. May 22, 2021).

4

Detective Sullivan explained that Google reported that they had used hash matching to identify the files as CSAM and that there appeared to be conflicting information about whether Google viewed the images before submitting to NCMEC:

> From: Sullivan, Thomas J. (MPD) <Thomas.Sullivan@dc.gov>
> Sent: Monday, January 4, 2021 3:15 PM
> To: Hunter, Breelle (CID) (FBI) <bhunter@fbi.gov>
> Subject: [EXTERNAL EMAIL] - Google NCMEC Cybertip
>
> Hello,
>
> SA Alix Skelton forwarded me your information and said you were the person to reach out to about NCMEC questions!
>
> I was recently assigned 19 Google Cybertips for the same user, and well over a hundred CSAM videos. Google reported that they had used some sort of hash matching program to identify the files as CSAM. I'm having difficulty understanding where Google is getting the hash matches from (CVIP?) and also there appears to be conflicting information about whether or not Google viewed the images prior to submitting to NCMEC. So I wanted to reach out and see if you had any insight into how Google is reporting to NCMEC and what kind of hash program they're using.
>
> Thank you for any help and feel free to give me a call at [redacted].

The FBI referred Detective Sullivan to NCMEC, who in turn referred him to Google. Detective Sullivan sought out this information because he had not previously dealt with this issue.

On March 23, 2021, the magistrate court entered a minute order denying without prejudice the warrant application. Although the magistrate court found that the government had "established probable cause to view all images, videos, and files in question," it cited its inherent authority to manage its own docket as the basis for the denial. The magistrate court further explained its reasoning in a May 22, 2021, Order. See *In the Matter of the Search of Encrypted Data Provided by the National Center for Missing and Exploited Children for Nineteen Related Cyber Tipline Reports*, Case No. 20-SW-321 (ZMF), 2021 WL 2100997, at *1 (D.D.C. May 22, 2021). As the magistrate court explained in that order, it held two hearings on the government's warrant application at which Google appeared through counsel, and both Google and the government

submitted supplemental materials.  *See id.* at *2.

In March 2021, Detective Sullivan was informed of the magistrate court's decision, which he understood to mean that he could view the CyberTip files without a warrant and rely on the information he learned from his review in warrant applications.  He did not re-review the four video files he had earlier described.  The government subsequently applied for warrants to search the defendant's Google account (issued March 30, 2021, in case number 21-SC-1056) and residence (issued October 5, 2021, in case number 21-SW-334), which included Detective Sullivan's descriptions of the four video files.

\*   \*   \*

***The Good-Faith Exception to the Exclusionary Rule***

If this Court were to conclude that a search warrant was required to view the CyberTip files at issue here, the government respectfully submits that the proffered evidence would provide a sufficient factual basis for the Court to conclude that Detective Sullivan acted in good faith at all relevant times.  Detective Sullivan was presented with the novel issue of whether a warrant is required to view CyberTip images when the antecedent private search is based on a hash match.  Because Google explained that historically a person at Google had reviewed a file with a matching hash and determined that it contained apparent child pornography, Detective Sullivan reasoned that no warrant was required.  At the time, there was no policy or practice of seeking warrants in these circumstances.  Indeed, as the magistrate court noted, "[t]o the Court's and the government's knowledge, this was one of the first requests in this District for a warrant to search a CyberTip report."  *In the Matter of the Search of Encrypted Data Provided by the National Center for Missing and Exploited Children for Nineteen Related Cyber Tipline Reports*, 2021 WL 2100997, at *2.  Detective Sullivan's interpretation was objectively reasonable given the

6

information available to him and the state of the law at the time.

On the good-faith doctrine, the Supreme Court has explained:

> The basic insight of the *Leon* line of cases is that the deterrence benefits of exclusion vary with the culpability of the law enforcement conduct at issue. When the police exhibit deliberate, reckless, or grossly negligent disregard for Fourth Amendment rights, the deterrent value of exclusion is strong and tends to outweigh the resulting costs. But when the police act with an objectively reasonable good-faith belief that their conduct is lawful, or when their conduct involves only simple, isolated negligence, the deterrence rationale loses much of its force, and exclusion cannot pay its way.

*Davis v. United States*, 564 U.S. 229, 238 (2011) (cleaned up). Here, Detective Sullivan acted with an objectively reasonable good-faith belief that his conduct was lawful such that exclusion is unwarranted. His interpretation of whether a search warrant was required in the novel circumstances presented to him was an objectively reasonable one given that it aligned with the decisions of the only two Courts of Appeals to have addressed the issue at that time. *See United States v. Miller*, 982 F.3d 412 (6th Cir. 2020) (holding that law enforcement review of Google CyberTip files does not require a warrant under the private-search doctrine); *cf. United States v. Reddick*, 900 F.3d 636 (5th Cir. 2018) (holding the same for Microsoft's cloud service). Because there was no contrary precedent at the time and there was no policy or practice of applying for search warrants in these circumstances, Detective Sullivan's conduct did not exhibit the sort of "deliberate, reckless, or grossly negligent disregard for Fourth Amendment rights" that would militate in favor of exclusion.

After Detective Sullivan viewed the files, he learned that the law on Google's hash matching was unsettled and that it was advisable to seek a warrant. So Detective Sullivan drafted an affidavit in support of a CyberTip warrant and was fully transparent about having viewed the CyberTip images. The magistrate court ultimately agreed that no warrant had been necessary and, despite finding the government had established probable cause to view the images, denied the

7

government's warrant application for reasons of judicial economy. Here, Detective Sullivan's warrantless review of the CyberTip files was in objectively reasonable good faith, and he then paused his investigation pending the government's attempt to obtain a search warrant for the CyberTip files out of an abundance of caution. In these circumstances, exclusion would have no deterrent value and would not further the legitimate aims of the exclusionary rule.

***The Independent Source Doctrine***

The independent source doctrine provides an additional basis on which the Court can deny the defendant's suppression motions. The independent source doctrine recognizes that when unlawfully obtained evidence has an independent source, exclusion is unwarranted because "[i]nvoking the exclusionary rule would put the police (and society) not in the *same* position they would have occupied if no violation occurred, but in a *worse* one." *Murray v. United States*, 487 U.S. 533, 541 (1988). The doctrine applies only where "the search pursuant to warrant[2] was in fact a genuinely independent source of the information," not where the "decision to seek the warrant was prompted by what [was] seen during the initial entry," or "information obtained during that entry was presented to the Magistrate and affected his decision to issue the warrant." *Murray*, 487 U.S. at 542. Here, Detective Sullivan explained in full candor that he had viewed the CyberTip files but did not inform the magistrate court of anything he had seen. And it is clear from the magistrate court's conduct of the proceedings before it, and its ultimate written order, that it relied not on the fact that Detective Sullivan had viewed the files but rather on information about

---

[2] While the magistrate court withheld the warrant for reasons of judicial economy, its order functionally authorized the search insofar as it explicitly found that the government's application "established probable cause to view all images, videos, and files in question." Ordinarily, such a finding requires the issuance of a search warrant. *See* Fed. R. Crim P. 41(d)(1) (providing that "[a]fter receiving an affidavit or other information, a magistrate judge . . . ***must issue*** the warrant if there is probable cause to search for and seize a person or property" (emphasis added)).

Google's hash matching system. The question then is whether Detective Sullivan would have sought a warrant to view the CyberTip files absent his initial review of the files. The evidence here shows that he would have.

In this case, the decision to seek a warrant was prompted not by what Detective Sullivan had seen during his initial review but by the CyberTips that were referred to him. The impetus for Detective Sullivan's review of the files was his receipt of the CyberTips, which contained information indicating that the defendant's Google account contained apparent child pornography. Detective Sullivan prepared an affidavit in support of a search warrant application for the Google account to which the CyberTips related, and in doing so he described the contents of four files referenced in the CyberTips. Detective Sullivan believed he could view those files based on Google's explanation of its historical review and his understanding of the law at the time. After learning that seeking a warrant was the best course given that the law was unsettled on Google's hash matching, he did not further review the CyberTip files and turned to drafting an affidavit in support of a search warrant to do so. Had he known that seeking a warrant for the CyberTip files was advisable, he would have done so before viewing the files. Indeed, the CyberTips provided an independent basis for Detective Sullivan to seek search warrants without requiring him to view the attached files.[3] Based on the CyberTips' content, it is inconceivable that Detective Sullivan

---

[3] In addition to including Google's description of its historical review, the reports also include numerous filenames indicative of child pornography, such as "lil black girl fucked by BBC.mp4," "Pthc Goldberg 10Y 2 Kleine Fotzen - Sonya (22.24).avi," "Pthc Goldberg 10Y Kleine Fotze - Unk (07.14).avi," "(Children-sf-model) Pthc - 11Yo Black Girl Showing Off Her Pussy Aka - [!!! New !!!][USA][00.07.14] (2).avi," and "[pthc] Goldberg - The Visitors (HiRes, 20m36s) ~ 2014 opva 9y 10y 11y 12y black preteen pedo lolitabay pussy.avi." The initialism "pthc," for example, stands for "preteen hardcore," and it is commonly used in reference to child pornography. Other terms are more explicit, such as references to ages (9, 10, 11, and 12), "children," and "pedo" (short for pedophile).

would not have first sought a warrant to view the files had he known it was advisable to do so.[4]

The Third Circuit applied the independent source doctrine on somewhat analogous facts in *United States v. Stabile*, 633 F.3d 219 (3d Cir. 2011). In that case, the Secret Service was investigating Stabile for counterfeiting checks. *See id.* at 224. A New Jersey state detective examined Stabile's hard drives pursuant to a state search warrant and was told to look only for evidence of financial crimes. *See id.* at 226–27. The detective "observed a list of file names with file extensions indicating video files and file names suggestive of child pornography." *Id.* at 227. The filenames included terms like those included in the CyberTips at issue here, "such as 'PTHC' (pre-teen hardcore), "PEDO" (pedophile-related), "6YO" (six-year-old), and "8YO" (eight-year-old)." *Id.* The detective proceeded to open 12 different files to confirm that they were child pornography and not adult pornography. *See id.* After confirming the files were child pornography, the detective informed the prosecutor, who told the detective to cease his review and informed a Secret Service agent of the detective's findings. *See id.* The Secret Service agent

---

Given the information contained in the CyberTips, Detective Sullivan arguably could have established probable cause to search the defendant's Google account without viewing or providing any description of the contents of the CyberTip files.

[4] Whether Detective Sullivan would have still pursued a warrant had he *not* seen child pornography is not relevant to this inquiry. As the Supreme Court explained:

> To determine whether the warrant was independent of the illegal entry, one must ask whether it would have been sought even if what actually happened had not occurred—not whether it would have been sought if something else had happened. That is to say, what counts is whether the actual illegal search had any effect in producing the warrant, not whether some hypothetical illegal search would have aborted the warrant. Only that much is needed to assure that what comes before the court is not the product of illegality; to go further than that would be to expand our existing exclusionary rule.

*Murray*, 487 U.S. at 542 n.3.

applied for a federal search warrant that included the filenames but no reference to the fact that the detective had viewed them. *See id.* at 227–28. The Third Circuit held that the independent source doctrine vitiated the taint of the detective's unlawful search because, given the "lurid file names indicative of child pornography," "it would be 'impossible' or 'inconceivable' that the [Secret Service agent] would not have applied for the first federal warrant." *Id.* at 245.

The same reasoning applies here with greater force, because unlike the detective in *Stabile*, Detective Sullivan had an objectively reasonable good-faith belief that his review of the files was lawful. After becoming aware of uncertainty in the law, Detective Sullivan turned to drafting an affidavit in support of a search warrant for the CyberTip files. Had Detective Sullivan been aware of the uncertainty sooner, he would have applied for a warrant before viewing any files, and he would have had ample basis to do so given the CyberTips' contents. As in *Stabile*, given the CyberTips' contents, which included filenames indicative of child pornography, it is inconceivable that Detective Sullivan would not have pursued a warrant had he known it was advisable to do so.

                Respectfully submitted,

                MATTHEW M. GRAVES
                UNITED STATES ATTORNEY
                D.C. Bar No. 481052

Dated: March 28, 2024        By:    */s/ Paul V. Courtney*
                Paul V. Courtney
                D.C. Bar No. 1034252 / N.Y. Bar No. 5392337
                Assistant United States Attorney
                Ryan Lipes
                N.Y. Bar No. 5404843
                Special Assistant United States Attorney
                United States Attorney's Office for the
                District of Columbia
                601 D Street, N.W.
                Washington, D.C. 20530
                (202) 252-1719 (Courtney)
                (202) 252-0844 (Lipes)
                Paul.Courtney@usdoj.gov
                Ryan.Lipes2@usdoj.gov