UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>v.<br><br>STEPHEN JOHNSON,<br><br>Defendant. | Case No. 22-CR-176 (CJN)<br><br>**EX PARTE AND UNDER SEAL** |

**UNITED STATES' MOTION TO RESTRAIN DISSIPATION OF ASSETS**

The United States of America, by and through undersigned counsel, respectfully moves this Court to enter a restraining order to preserve the equity in the defendant's bank accounts and other assets for potential use to satisfy the anticipated restitution judgment in this case. Restitution in child pornography cases is mandatory, *see* 18 U.S.C. § 2259, and the defendant is likely to owe a significant amount of additional special assessments that are also mandatory in child pornography cases, *see* 18 U.S.C. §§ 2259A, 3014. The government has learned that, in the hours leading up to his self-surrender on April 19, 2024, the defendant was engaged in active efforts to liquidate financial accounts containing nearly one million dollars in assets. A restraining order is necessary to ensure that adequate funds are available to pay the substantial mandatory restitution judgment and special assessments that the defendant faces at sentencing.

**FACTUAL BACKGROUND**

On April 17, 2024, a jury found Defendant guilty of five counts of Transportation of Child Pornography, in violation of 18 U.S.C. § 2252(a)(1), (b)(1), and one count of Possession of Child Pornography, in violation of 18 U.S.C. § 2252(a)(4)(B), (b)(2). (ECF No. 166). The defendant is pending sentencing and will face a mandatory restitution judgment and mandatory special assessments. *See* 18 U.S.C. § 2259, 2259A, 3014.

Following the jury's verdict, the Court allowed the defendant to remain on pretrial release for roughly 42 hours so that he could get his affairs in order before turning himself in to the U.S. Marshals. The government has since learned that the defendant used this time to attempt to liquidate his brokerage and retirement accounts at J.P. Morgan and transfer the funds elsewhere. *See* **Exhibit 1** (Declaration of Special Agent Kelly A. McLeod).

Early on Thursday, April 18, 2024—the morning after the verdict—the defendant sent a secure message[1] to his J.P. Morgan financial advisor that said, "Hi ▇▇▇, I want to sell all stocks in my retirement account and move the funds to my checking." *See id.* ¶ 2.a. n.1.

As detailed in her Declaration, Special Agent McLeod spoke with ▇▇▇, the defendant's financial advisor. *See id.* ¶ 2. ▇▇▇ found the defendant's request and the method of correspondence to be unusual, and he followed up by calling the defendant. *See id.* ¶ 2.a. According to ▇▇▇, the defendant stated he was going out of the country, would not have access to a computer or phone, and needed access to cash. *See id.* ¶ 2.b. ▇▇▇ described the defendant as sounding calm but also thought he seemed in a rush to get access to money. *See id.* During the same conversation, the defendant indicated that he had liquidated his brokerage account and wanted to move the funds into his checking account. *See id.* ¶ 2.c. ▇▇▇ explained that the funds required three days to clear and could not yet be moved. *See id.* In reviewing the account, he could see that the defendant had executed trades online into the early morning hours. *See id.* ▇▇▇ found the defendant's activity to be suspicious because it made little financial sense and would have been against his advice: the defendant had liquidated hundreds of thousands of dollars in equity that is subject to capital gains tax. *See id.* ¶ 2.d. The defendant also stated that his wife would be controlling his accounts in his absence, but he was also not interested in following

---

[1] The defendant was prohibited from using internet-connected devices as a condition of release.

through on ▉'s suggestion that he complete the appropriate power-of-attorney paperwork. *See id.* ¶ 2.e. Due to the red flags raised by the defendant's behavior, ▉ conducted a Google search for the defendant's name and learned that, just one day earlier, the defendant was convicted of federal child pornography offenses. *See id.* ¶ 2.f. ▉ then made an internal report. *See id.* ¶ 2.f.

Bank records from J.P. Morgan show that the defendant made a series of transactions before reporting to the U.S. Marshals that appear to be an attempt to dissipate funds:

| ACCOUNT | ACTION TAKEN |
|---|---|
| **PERSONAL CHECKING** | <ul><li>$218,448 transferred into account from Robinhood (April 19)</li><li>$2,388 transferred into the account from Webull (trading platform) (April 22)</li><li>$472,262 transferred into the account from a J.P. Morgan brokerage account (April 26)</li><li>$35,000 transferred into account from business savings account (April 18)</li><li>$200,000 transferred into account from personal savings (April 3)</li></ul> |
| **PERSONAL SAVINGS** | <ul><li>Teller transaction of $100,000 to Defendant's wife (April 18)</li><li>$200,000 transfer to personal checking (April 3)</li></ul> |
| **BUSINESS SAVINGS** | <ul><li>$35,000 (entirety of account) transferred to personal checking (April 18)</li></ul> |

While there could be legitimate reasons for the defendant to prepare his finances before self-surrendering, these transactions raised several red flags. According to the financial advisor, the defendant seemed to be in a rush to get access to money, claiming that he was leaving the country. The defendant had no apparent concern for the significant tax consequences of his actions: he had just liquidated a brokerage account containing nearly $500,000, for which he will

3

owe significant capital gains tax, and he sought to liquidate his retirement account, which will be subject to a tax penalty given that the defendant is only 36 years old. That same day, the defendant transferred $100,000 to his wife. And while the defendant told his banker that his wife would be controlling the account in his absence, he rejected the banker's suggestion that he complete the power-of-attorney paperwork that would empower her to do so.

On May 7, 2024, defense counsel informed the government by email that the defendant's J.P. Morgan Chase accounts had been frozen. This appears to have been done on the bank's own initiative; the government is not aware how long the freeze will remain in effect.

The United States has an interest in ensuring that these funds are preserved pending sentencing so that they are available to satisfy the substantial mandatory restitution and special assessments that the defendant faces in this case.

## ANTICIPATED MANDATORY RESTITUTION AND SPECIAL ASSESSMENTS

Defendant's child pornography convictions carry mandatory restitution and special assessments. This Court "shall order" restitution for a defendant convicted of trafficking in child pornography. 18 U.S.C. § 2259(b)(2); *see also id.* § 2259(b)(4) (noting that a Court cannot decline to issue an order of restitution based on the defendant's economic circumstances or the fact that a victim has received compensation from another source). "Trafficking in child pornography" includes convictions for transporting and possessing child pornography under section 2252. *See id.* § 2259(c)(3). At minimum, this Court must order $3,000 per victim in restitution. *See id.* § 2259(b)(2)(B). But a victim is entitled to the full amount of restitution causally related to the defendant's actions. *See id.* § 2259(b)(2)(A), (B). In this case, the government has at least eight identified victims who have expressed an interest in being contacted before sentencing. Thus, at a minimum, the defendant is responsible for *at least* **$24,000** in mandatory restitution.

4

In addition to mandatory restitution, the defendant's convictions come with mandatory special assessments. *See id.* §§ 2259A, 3014. Section 2259A provides that the Court "shall assess" defendants in child pornography cases. *See id.* § 2259A(a) (noting that the assessment is "in addition to any other criminal penalty, restitution, or special assessment authorized by law"). The amount depends on the offense of conviction. On a conviction for possession of child pornography under Section 2252(a)(4), the assessment is not more than $17,000. *Id.* § 2259A(a)(1). On a conviction for "any other offense for trafficking in child pornography," which includes transportation, the assessment is not more than $35,000. *Id.* § 2259A(a)(2). Based on the defendant's convictions here, the Court could order an additional assessment up to **$192,000**.[2]

Then, in addition to the standard special assessment under Section 3013, Section 3014 requires that the Court "shall assess an amount of $5,000 on any non-indigent person" convicted of a child pornography offense found in Chapter 110 (i.e., every conviction in this case). *See id.* § 3014(a)(3). This additional special assessment is used to fund the Domestic Trafficking Victims' Fund. *See id.* § 3014(c). Three circuits have found that this additional assessment applies **per count**. *See United States v. Warrington*, 78 F.4th 1158, 1168–70 (10th Cir. 2023); *United States v. Randall*, 34 F.4th 867, 874–77 (9th Cir. 2022); *United States v. Johnman*, 948 F.3d 612, 616-19 (3d Cir. 2020). *But see United States v. Haverkamp*, 958 F.3d 145, 149–50 (2d Cir. 2020) (holding the 3014 assessment applies per offender, not per count). If applied per count, the defendant would owe an additional, mandatory assessment of **$30,000**.

In sum, the defendant faces the potential for mandatory restitution and special assessments in excess of **$246,000**.

---

[2] The statute, enacted in 2018, provides that that the caps on these assessment "shall be adjusted annually in conformity with the Consumer Price Index," 18 U.S.C. § 2259A(b), so the defendant's total exposure may be higher.

5

## ARGUMENT

The government enforces restitution orders through the Federal Debt Collection Procedures Act (FDCPA), 28 U.S.C. §§ 3001, *et seq.*, and "by all other available and reasonable means," 18 U.S.C. § 3664(m)(ii).  The FDCPA authorizes the Court to use the All Writs Act, 28 U.S.C. § 1651, to support any of the remedies set forth in the FDCPA.  *See* 28 U.S.C. § 3202(a). Indeed, the All Writs Act has been successfully used to restrain a defendant from dissipating assets.  Post-conviction, defendants "no longer are bathed with the presumption of innocence," and the court has the power to restrain assets so that they are available to comply with upcoming restitution orders. *United States v. Numisgroup Int'l Corp.*, 169 F. Supp. 2d 133, 138 (E.D.N.Y. 2001); *see also United States v. Abdelhadi*, 327 F. Supp. 2d 587 (E.D. Va. 2004) (authorizing under All Writs Act restraining order against defendant and others acting in concert with him from transferring, selling or disposing of defendant's property and allowing government to file notice of lis pendens where such order was necessary to protect and effectuate sentencing and restitution orders and to ensure future availability of property to satisfy the restitution order); *United States v. Gates*, 777 F. Supp. 1294, 1296 n.7 (E.D. Va. 1991) (noting that trial court has authority to order a defendant awaiting sentencing not to dispose of his assets to ensure meaningful ability to impose a proper sentence and "to fulfill the intent and mandate of Congress that a financially able defendant pay fines and costs of prosecution, incarceration, and supervised release or probation."); *accord United States v. Bank of Am.*, 922 F. Supp. 2d 1, 5 (D.D.C. 2013), *aff'd sub nom. United States v. Bank of Am. Corp.*, 753 F.3d 1335 (D.C. Cir. 2014) ("Under the All Writs Act, the Court has authority to 'issue all writs necessary or appropriate in aid of [its] jurisdiction[].'") (citing *United States v. N.Y. Tel. Co.*, 434 U.S. 159, 172 (1977) (the All Writs Act empowers courts to issue extraordinary writs as necessary to effectuate and prevent the frustration of orders the court has issued)).

Here, the jury found the defendant guilty, and he is awaiting sentencing. He faces a substantial amount of mandatory restitution and special assessments based on his child pornography convictions. While various remedies are available to the government under the Mandatory Victim Restitution Act, 18 U.S.C. § 3663A, and the FDCPA to enforce collection of the restitution obligation, none of them can be instantly implemented, and none of them prevents a defendant or those acting on his behalf from dissipating assets or otherwise secreting, wasting, or placing them beyond the government's reach. In short, none reasonably ensures the effectiveness of the Court's order. Only the restraining order can serve this function.

WHEREFORE, the United States respectfully request that this Court grant its motion and restrain the defendant (and others acting on his behalf) from dissipating his assets to preserve their availability to pay his mandatory restitution and special assessments obligations in this case.

Respectfully submitted,

MATTHEW M. GRAVES
UNITED STATES ATTORNEY
D.C. Bar No. 481052

Dated: May 13, 2024     By:     /s/ Paul V. Courtney
Paul V. Courtney
D.C. Bar No. 1034252 / N.Y. Bar No. 5392337
Assistant United States Attorney
Ryan Lipes
N.Y. Bar No. 5404843
Special Assistant United States Attorney
Criminal Division, Federal Major Crimes Section

BRIAN P. HUDAK
Chief, Civil Division

By:     /s/ Melissa E. Goforth Koenig
Melissa E. Goforth Koenig
TX Bar No. 24027269 / N.Y. Bar No. 5778188
Oliver W. McDaniel
D.C. Bar No. 377360
Assistant United States Attorneys
Civil Division, Financial Litigation Unit

United States Attorney's Office
for the District of Columbia
601 D Street, N.W.
Washington, D.C. 20530
(202) 252-1719 (Courtney)
(202) 252-0844 (Lipes)
(202) 809-3573 (Goforth Koenig)
(202) 252-2508 (McDaniel)
Paul.Courtney@usdoj.gov
Ryan.Lipes2@usdoj.gov
Melissa.Goforth.Koenig@usdoj.gov
Oliver.McDaniel@usdoj.gov