

**FILED**

**MAY 15 2024**

Clerk, U.S. District and
Bankruptcy Courts

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

|  |  |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| v. ) | Criminal No. 22-CR-176 (CJN) |
| ) | |
| STEPHEN JOHNSON, ) | |
| ) | |
| Defendant, ) | |
| ) | |
| J.P. MORGAN CHASE BANK, N.A. ) | |
| ) | |
| Garnishee. ) | |

## APPLICATION FOR PREJUDGMENT WRIT OF GARNISHMENT

The United States of America applies, *ex parte*, under 28 U.S.C. §§ 1651, 3101, and 3104 of the Federal Debt Collection Procedures Act (FDCPA) for issuance of a prejudgment Writ of Garnishment for substantial nonexempt property belonging to or due Stephen Adom Adeiye Rattley Johnson (hereinafter referred to as "Mr. Johnson" or "Defendant").[1] This is an action to secure and preserve assets in which Defendant has a substantial nonexempt interest before entry of a judgment in which mandatory restitution and forfeiture orders will be imposed. In support of this application, the United States submits a Declaration of Federal Bureau of Investigation Special Agent Kelly A. McLeod (Docket Doc. No. 172-1), pursuant to 28 U.S.C. § 3101(c), to establish with particularity to the Court's satisfaction facts supporting the probable validity of the claim for a debt and the right of the United States to recover what is demanded.

---

[1] Applications for FDCPA writs are necessarily submitted *ex parte* without notice to judgment debtors and their insiders until after the process has been served on whomever is holding the subject property to prevent the transfer or dissipation of non-exempt assets. Once the United States certifies that process has been served, the *ex parte* restriction on this application and its related filings may be lifted. Garnishment of co-owned property is subject to garnishment to the same extent as it would be under the law of the State in which such property is located. 28 U.S.C. §§ 3010; 3104.

## Factual Background

On April 17, 2024, a jury found Defendant guilty of five counts of Transportation of Child Pornography, in violation of 18 U.S.C. § 2252(a)(1), (b)(1), and one count of Possession of Child Pornography, in violation of 18 U.S.C. § 2252(a)(4)(B), (b)(2). (ECF No. 166). The Defendant is pending sentencing and will face a mandatory restitution judgment and mandatory special assessments. *See* 18 U.S.C. § 2259, 2259A, 3014.

Following the jury's verdict, the Court allowed the Defendant to remain on pretrial release for roughly 42 hours so that he could get his affairs in order before turning himself in to the U.S. Marshals. The government has since learned that the Defendant used this time to attempt to liquidate his brokerage and retirement accounts at J.P. Morgan and transfer the funds elsewhere. *See* Exhibit 1 (Declaration of Special Agent Kelly A. McLeod (Docket Doc. No. 172-1)).

Early on Thursday, April 18, 2024—the morning after the verdict—the Defendant sent a secure message[2] to his J.P. Morgan financial advisor that said, "Hi Gamal, I want to sell all stocks in my retirement account and move the funds to my checking." *See id.* ¶ 2.a. n.1.

As detailed in her Declaration, Special Agent McLeod spoke with G.A., the Defendant's financial advisor. *See id.* ¶ 2. G.A. found the Defendant's request and the method of correspondence to be unusual, and he followed up by calling the Defendant. *See id.* ¶ 2.a. According to G.A., the Defendant stated he was going out of the country, would not have access to a computer or phone, and needed access to cash. *See id.* ¶ 2.b. G.A. described the Defendant as sounding calm but also thought he seemed in a rush to get access to money. *See id.* During the same conversation, the Defendant indicated that he had liquidated his brokerage account and wanted to move the funds into his checking account. *See id.* ¶ 2.c. G.A. explained that the funds

---

[2] The Defendant was prohibited from using internet-connected devices as a condition of release.

required three days to clear and could not yet be moved. *See id.* In reviewing the account, he could see that the Defendant had executed trades online into the early morning hours. *See id.* G.A. found the Defendant's activity to be suspicious because it made little financial sense and would have been against his advice: the Defendant had liquidated hundreds of thousands of dollars in equity that is subject to capital gains tax. *See id.* ¶ 2.d. The Defendant also stated that his wife would be controlling his accounts in his absence, but he was also not interested in following through on G.A.'s suggestion that he complete the appropriate power-of-attorney paperwork. *See id.* ¶ 2.e. Due to the red flags raised by the Defendant's behavior, G.A. conducted a Google search for the Defendant's name and learned that, just one day earlier, the Defendant was convicted of federal child pornography offenses. *See id.* ¶ 2.f. G.A. then made an internal report. *See id.* ¶ 2.f.

Bank records from J.P. Morgan show that before reporting to the U.S. Marshals, the Defendant made a series of transactions that appear to be an attempt to dissipate funds:

| ACCOUNT | ACTION TAKEN |
|---|---|
| **PERSONAL CHECKING** | • $218,448 transferred into account from Robinhood (April 19)<br><br>• $2,388 transferred into the account from Webull (trading platform) (April 22)<br><br>• $472,262 transferred into the account from a J.P. Morgan brokerage account (April 26)<br><br>• $35,000 transferred into account from business savings account (April 18)<br><br>• $200,000 transferred into account from personal savings (April 3) |
| **PERSONAL SAVINGS** | • Teller transaction of $100,000 to Defendant's wife (April 18)<br><br>• $200,000 transfer to personal checking (April 3) |

| BUSINESS SAVINGS | • $35,000 (entirety of account) transferred to personal checking (April 18) |

While there could be legitimate reasons for the Defendant to prepare his finances before self-surrendering, these transactions raised several red flags. According to the financial advisor, the Defendant seemed to be in a rush to get access to money, claiming that he was leaving the country. The Defendant had no apparent concern for the significant tax consequences of his actions: he had just liquidated a brokerage account containing nearly $500,000, for which he will owe significant capital gains tax, and he sought to liquidate his retirement account, which will be subject to a tax penalty given that the Defendant is only 36 years old. That same day, the Defendant transferred $100,000 to his wife. And while the Defendant told his banker that his wife would be controlling the account in his absence, he rejected the banker's suggestion that he complete the power-of-attorney paperwork that would empower her to do so.

On May 7, 2024, defense counsel informed the government by email that the Defendant's J.P. Morgan Chase accounts had been frozen. This appears to have been done on the bank's own initiative; the government is not aware how long the freeze will remain in effect.

The United States has an interest in ensuring that these funds are preserved pending sentencing so that they are available to satisfy the substantial mandatory restitution and special assessments that the Defendant faces in this case.

### The Writ of Garnishment

Defendant's last known address is: 600 H Street NE, Apt 749A, Washington, D.C. 20002, and his social security number is \*\*\*-\*\*-3494. To secure payment of the criminal monetary obligations in this case, the United States requests that a Prejudgment Writ of Garnishment be issued for service upon the following garnishee:

National Subpoena Processing
J.P. Morgan Chase Bank, N.A.
Mail Code LA4-7300
700 Kansas Lane
Monroe, LA 71203.

Pursuant to 28 U.S.C. § 3101(d), the United States shall serve the Garnishee with a copy of the Application, Writ of Garnishment, Clerk's Notice of Garnishment, and answer Form with instructions for compliance. After the Garnishee has been served, the United States shall serve the Defendant and each person whom the United States has reasonable cause to believe has an interest in the property subject to the Writ of Garnishment with those documents, and they shall be afforded an opportunity for a hearing.

## Discussion

The United States has met all requirements for the issuance of the prejudgment remedy sought, pursuant to 28 U.S.C. §§ 3101 and 3104, and no bond is required of the United States. Moreover, the FDCPA, which provides for enforcement of restitution as well as other debts owed the United States, also authorizes the Court to use the All Writs Act, 28 U.S.C. § 1651, to support any of the remedies set forth in the FDCPA. *See* 28 U.S.C. § 3202(a). This Court has the discretion to order the requested relief pursuant to the All Writs Act, 28 U.S.C. § 1651, which provides that "all courts established by Act of Congress may issue all writs necessary or appropriate in aid of their respective jurisdictions and agreeable to the usages and principles of law." *See In re Baldwin-United Corp.*, 770 F.2d 328, 338 (2d Cir. 1985) ("[a]n important feature of the All Writs Act is its grant of authority to enjoin and bind non-parties to an action when needed to preserve the court's ability to reach or enforce its decision in a case over which it has proper jurisdiction").

Indeed, the All Writs Act has been successfully used to preserve a Defendant's assets after conviction but before sentencing. Post-conviction, defendants "no longer are bathed with the

presumption of innocence," and the Court has the power to restrain assets where "sentencing and a substantial Order of Restitution is imminent." *United States v. Numisgroup Int'l. Corp.*, 169 F. Supp.2d 133, 138 (E.D.N.Y. 2001) (All Writs Act used to restrain 26,600 coins seized on search warrant as collateral for restitution); *see, e.g., United States v. Sullivan*, 2010 WL 543724243, 1, 6-8 (E.D.N.C. Nov. 2010) (restraining defendant from disposing of assets after entry of guilty plea but before sentencing hearing (citing *United States v. Gates*, 777 F. Supp. 1294, 1296 n.7 (E.D.Va. 1991) and *United States v. Abdelhadi*, 327 F. Supp. 2d 587 (E.D. Va. 2004) (noting that trial court has authority to order a defendant awaiting sentencing not to dispose of assets as needed to protect and effectuate sentencing and to ensure future availability of property to satisfy restitution orders); *United States v. Friedman*, 143 F.3d 18, 19-20 (1st Cir. 1998) (district court temporarily restrained a defendant from transferring assets pursuant to the All Writs Act). *See also United States v. Bank of Am.*, 922 F. Supp. 2d 1, 5 (D.D.C. 2013), *aff'd sub nom. United States v. Bank of Am. Corp.*, 753 F.3d 1335 (D.C. Cir. 2014) ("Under the All Writs Act, the Court has authority to 'issue all writs necessary or appropriate in aid of [its] jurisdiction[ ].' ") (citing *United States v. New York Tel.*, 434 U.S. 159, 172 (1977) (the All Writs Act empowers courts to issue extraordinary writs as necessary to effectuate and prevent the frustration of orders the court has issued)). Once defendants are sentenced, various remedies are available to enforce collection of judgments under federal and state law. But absent the prejudgment relief requested, the victims should not bear the risk of nonpayment while defendants dissipate, transfer, or waste their interest in substantial nonexempt assets while awaiting sentencing. In this case, the United States seeks a prejudgment Writ of Garnishment after Defendant's guilty verdict and prior to sentencing because it has become aware of undisclosed assets in Defendant's possession, and Defendant's efforts to dispose of them without paying his restitution.

Enclosed for this Court's signature is a Notice of Continuing Non-Wage Garnishment that 28 U.S.C. § 3101(d) obligates the Clerk to provide to the Defendant and the Garnishee. After the Writ of Continuing Non-Wage Garnishment and the Notice are executed, these documents should be returned to the undersigned for service on the Defendant and the Garnishee.

Dated: May 15, 2024

Respectfully submitted,

MATTHEW GRAVES, D.C. Bar #481052
United States Attorney

BRIAN P. HUDAK
Chief, Civil Division

By: _____
OLIVER W. McDANIEL, DC Bar #377360
MELISSA E. GOFORTH KOENIG
Assistant United States Attorneys
601 D Street, NW (Civil Division)
Washington, D.C. 20530
(202) 252-2508 (om) | (202) 809-3573 (mgk)
oliver.mcdaniel@usdoj.gov
melissa.goforth.koenig@usdoj.gov

PAUL V. COURTNEY
D.C. Bar # 1034252 / N.Y. Bar # 5392337
Assistant United States Attorney
RYAN LIPES
N.Y. Bar # 5404843
Special Assistant United States Attorney
Criminal Division, Fed. Major Crimes Sect.
Paul.Courtney@usdoj.gov
Ryan.Lipes2@usdoj.gov