**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| **UNITED STATES OF AMERICA** | |
| **v.** | **Case No. 22-CR-176 (CJN)** |
| **STEPHEN JOHNSON,** | |
| **Defendant.** | |

**GOVERNMENT'S MEMORANDUM IN OPPOSITION TO**
**DEFENDANT STEPHEN JOHNSON'S MOTION FOR A NEW TRIAL**

The United States of America, by and through undersigned counsel, files this response in opposition to the defendant's motion for a new trial under Federal Rule of Criminal Procedure 33.

Rule 33 allows the Court to vacate any judgment and grant a new trial "if the interest of justice so requires." *See* Fed. R. Crim. P. 33(a). "Granting a new trial motion is warranted only in those limited circumstances where a serious miscarriage of justice may have occurred." *United States v. Wheeler*, 753 F.3d 200, 208 (D.C. Cir. 2004) (cleaned up). As set forth below, the defendant has identified no such circumstances here.

The defendant argues that he should get a new trial because (1) the Court denied his motion to suppress evidence seized from the his digital devices, (2) the Court denied his motion to suppress evidence obtained from his Google account, (3) a court clerk provided redacted exhibit lists to the jury, (4) the jury resumed deliberating after a jury poll indicated a lack of unanimity, and (5) the Court improperly admitted certain Rule 404(b) and Tor browser evidence. None of these arguments entitles the defendant to a new trial.

Three of the issues—this Court's denial of his two suppression motions and admission of the Rule 404(b) evidence—have already been litigated extensively. The defendant seeks to

relitigate decided issues by rehashing old arguments this Court has already considered and rejected. His motion as to these issues—which do not warrant reconsideration—should be denied.

In addition, neither the jury's receipt of the exhibit lists nor the jury's continued deliberations after the first verdict warrant a new trial. As to the jury receiving the exhibit list— and consistent with the decision of many other courts facing this issue—no evidence of prejudice exists warranting a new trial. And Federal Rule of Criminal Procedure 31(d) expressly permitted the Court to "direct the jury to deliberate further" once the jury poll revealed a lack of unanimity.

Because none of the defendant's arguments warrant a new trial, his Rule 33 motion for a new trial should be denied.

## BACKGROUND

In September 2020, Google reported to the National Center for Missing and Exploited Children, or NCMEC, that a user had uploaded several hundred files containing child pornography to the Google Drive account stephenjohnson1197@gmail.com. *See* Gov't Exs. 100-1 to 100-19. NCMEC forwarded the information, called "CyberTips," to law enforcement. *See* 4/9/24 Tr. at 346:18-23.

After initially reviewing some of the files from NCMEC, law enforcement sought a search warrant to review the full contents of the CyberTips. *See* 4/1/24 Tr. at 18-24. The magistrate judge assigned to the search warrant held hearings *sua sponte* on whether a search warrant was even necessary. *See id.* at 24:25–25:14. The magistrate judge eventually found that the government had established probable cause but that the government did not need a search warrant to review the NCMEC CyberTips. *See Matter of Search of Encrypted Data Provided by National Center for Missing and Exploited Children for Nineteen Related Cyber Tipline Reports*, No. 20-SW-321, 2021 WL 2100997 (D.D.C. May 22, 2021) (Faruqui, M.J.).

Law enforcement then obtained a search warrant for the defendant's Google account.  *See* 4/1/24 Tr. at 26:5-9.  After searching the defendant's Google account, law enforcement obtained an arrest warrant for the defendant and a search warrant for the defendant's apartment.  *See* 4/9/24 Tr. at 379:20-23.  The Federal Bureau of Investigation arrested the defendant on October 7, 2021.  *Id.* at 379:24-25.

As relevant to this trial, a federal grand jury returned a second superseding indictment charging the defendant with 15 counts of 18 U.S.C. § 2252(a)(1), (b)(1) (transportation of child pornography) and one count of 18 U.S.C. § 2252(a)(4)(B), (b)(2) (possession of child pornography).  (*See* ECF 110).

Before trial, the defendant moved to suppress evidence obtained from his Google account (ECF 82), apartment (ECF 83), and electronic devices within his apartment (ECF 84).  This Court received extensive briefing on the search issues, held oral argument on March 21, 2024, and conducted an evidentiary hearing on April 1, 2024.  The Court ultimately denied the defendant's motions to suppress.  *See generally* 4/2/24 Tr. at 3-17.

Trial began on April 9, 2024.  The government's evidence showed that on September 21 and October 1, 2020, the defendant uploaded over two hundred files containing child pornography to his Google Drive account.  *See* Gov't Exs. 100-1 to 100-19.  Some of the uploaded files had been on the defendant's laptop for months before he uploaded them to Google Drive.  *See* Gov't Ex. 412; 412A.  Evidence also showed that the defendant viewed some of the files on his web browser, *see* Gov't Ex. 400A, and opened other child pornography files using the Microsoft Movies & TV application*, see* Gov't Ex. 412A.

The defense argued that the defendant did not knowingly possess or upload child pornography, and that he had inadvertently downloaded it while seeking out adult pornography. *See* 4/9/24 Tr. at 305:4-8; 306:3-4; 309:11-14; 311:5-12.

In response to this defense, the government introduced, and the Court admitted, additional evidence from the defendant's Google account and cellphone showing other times he had accessed websites and groups with names indicative of child pornography. For example, the defendant repeatedly visited a Dropbox folder called "Black teens and underage thots" less than three months before he uploaded child pornography to his Google Drive. *See* Gov't Ex. 400B. The defendant's cellphone also showed he was in multiple groups on both Telegram and Google Photos that advertised child pornography. *See* Gov't Exs. 401E; 401G; 402B; 402C. Some of the groups, like the Google Photos shared album "13-17 lesbian cp," were named in ways that clearly conveyed child pornography. *See* Gov't Ex. 401E. The cellphone also showed that three images containing child pornography had been downloaded from Telegram. *See* Gov't Ex. 401D.

The jury first indicated it had reached a verdict in the early afternoon of April 17, 2024. *See* 4/17/24 Tr. at 1358:24. As the foreperson read the verdict, the defendant's supporters in the gallery engaged in repeated, emotional outbursts, with one person shouting at the jury, "I hope you can sleep at night." *See id.* at 1368:11-14; 1386:3-4. Jury polling then revealed a lack of unanimity. *See id.* at 1363:16-17.

The defense moved for a mistrial. After taking a short recess and hearing from the parties, the Court denied the motion, finding that the record did not "demonstrate clearly, if at all that there had been coercion, rather than a change of mind or a reaction to the enormity of the moment or a reaction to the outburst in the crowd[.]" *See id.* at 1379:21–1380:5. The Court instructed the jury to continue deliberating. *Id.* at 1381:5-12.

A few hours later, the jury again indicated that it had reached a verdict.  The jury convicted the defendant of five counts of transportation of child pornography and one count of possession of child pornography.  *See id.* at 1397:4–1400:2.  Jury polling confirmed that the verdict was unanimous.  *See id.* at 1400:9–1401:9.  At the defense's request, the Court conducted limited voir dire that removed any doubt as to the unanimity of the jury's verdict.  *Id.* at 1404:19-20.

The defendant now moves for a new trial under Federal Rule of Criminal Procedure 33.

## ARGUMENT

## I.    The Defendant's Rehashed Suppression Arguments Do Not Support a New Trial.

The defendant argues that the Court's failure to suppress evidence from his digital devices and his Google account warrant a new trial.  *See* Def.'s Mot. at 19–31.  These two arguments simply rehash the defendant's suppression arguments without providing any new legal or factual grounds to support his motions.  *See, e.g., United States v. Williams*, No. 18-CR-149-1, 2022 WL 1136573, at *4 (N.D. Ill. Apr. 18, 2022) ("Because [defendant] adds nothing new to his previous arguments, he has not given the Court any reason to reconsider these earlier rulings.  Put differently, [defendant's] arguments made in the present motion do not meet the burden placed on defendants to provide adequate grounds for relief under Rule 33."); *cf. Singh v. George Washington Univ.*, 383 F. Supp. 2d 99, 101 (D.D.C. 2005) (holding that bases for reconsideration include "when the Court has patently misunderstood a party, has made a decision outside the adversarial issues presented to the Court by the parties, has made an error not of reasoning but of apprehension, or where a controlling or significant change in the law or facts [has occurred] since the submission of the issue to the Court" (alteration in original) (internal quotation marks and citation omitted)).

As it pertains to his rehashed suppression arguments, the defendant's motion should be denied.

### A. The Search of the Digital Devices

The defendant first asks this Court to reconsider its denial of his motion to suppress evidence from his digital devices. *See* Def.'s Mot. at 19–25. He primarily focuses on his belief that the search warrant for the defendant's apartment did not authorize the search of digital devices within the apartment. *Id.* The government has already responded on this issue, both in briefing (ECF 94) and at oral argument, and it incorporates its earlier arguments by reference. At bottom, though, the defendant ignores that Attachment B of the search warrant, which was incorporated by reference, expressly allows for seizure of evidence from the digital devices found in the apartment:

> 3.   For any digital device which is capable of containing and reasonably could contain fruits, evidence, information, contraband, or instrumentalities as described in the search warrant affidavit and above, hereinafter the "Devices":
>
> > a. Information, correspondence, records, and documents constituting evidence of the possession, receipt, distribution, or production of child pornography including: [. . .]

(*See* ECF 94, Ex. E at 7).

The Court previously considered the parties' arguments and denied this motion, finding that the search warrant incorporated Attachment B by reference and ruling that the "most natural way to read these various authorizations is as allowing the government to enter Johnson's devices to look for and then to seize certain content." 4/2/2024 Tr. at 17:4-7. The defendant identifies no basis for the Court to reconsider its ruling. Instead, he rehashes the same points he made in his motion and at oral argument. His motion for a new trial as to this argument should be denied.

### B. The Search of the Google Account

The defendant next argues for reconsideration of this Court's denial of his motion to suppress evidence from his Google account. *See* Def.'s Mot. at 25–31. The defendant primarily argues that because law enforcement conducted a warrantless review of the CyberTip reports from

Google, that review of the CyberTip reports tainted the subsequent search warrant for the defendant's account. *See id.*

This issue was exhaustively litigated before trial. The Court received extensive briefing from the parties (ECF 94, 99, 121, 128, 133, 134, 136, 140, 142) and heard oral argument. It then held an evidentiary hearing at which it took testimony from Detective Thomas Sullivan. *See generally* 4/1/24 Tr. at 1-64. Once again, the government has already responded at length on this issue, both in briefing (ECF 94, 133, 136, 140) and at oral argument, and it incorporates its earlier arguments by reference.

The Court ultimately denied this motion to suppress. *See* 4/2/24 Tr. at 13:7-12. The Court noted that the question of whether a search warrant was needed under these circumstances was a "difficult one." *See* 4/2/24 Tr. at 5:1-2. But the Court did not decide the issue. *See id.* at 7:13-16. Rather, the Court found that the good faith exception to the exclusionary rule applied to both the detective's initial viewing of the files and the government's viewing and use of the files after the magistrate judge found no warrant was needed. *See id.* at 7–12; *see also Davis v. United States*, 564 U.S. 229 (2011); *Herring v. United States*, 555 U.S. 135, 137–138 (2009). Among other things, the Court found that the detective followed then-existing precedent from the Courts of Appeals and did not act "deliberately, recklessly or with gross negligence." *See* 4/2/24 Tr. at 10:10–11:5.

The defendant again makes no new arguments that change that analysis. The suppression issues were extensively litigated before trial, and the defendant rehashes the same arguments this Court has already considered and rejected. Because the defendant identifies no proper basis for this Court to reconsider its ruling, his motion for a new trial as to the suppression arguments should be denied.

II.     **The Court, Consistent with Rule 31(d), Instructed the Jury to Keep Deliberating After July Polling Revealed a Lack of Unanimity.**

The defendant argues that the Court erred in instructing the jury to keep deliberating after jury polling revealed a lack of unanimity.  This argument is meritless.  Under Federal Rule of Criminal Procedure 31(d), the Court had to poll the jury at the defense's request.  Fed. R. Crim. P. 31(d) ("[T]he court *must* on a party's request . . . poll the jurors individually.").  And once the jury poll revealed a lack of unanimity, Rule 31(d) explicitly authorized the court to "direct the jury to deliberate further." *Id.*

### A.  Additional Facts

On April 17, 2024, the jury indicated it had reached a unanimous verdict.  *See* 4/17/24 Tr. at 1358:24–1359:1.  The jury foreperson read the verdict in open court, finding the defendant guilty of six counts of transportation of child pornography (Counts 1, 2, 3, 5, 7, and 8), one count of possession of child pornography (Count 16), and acquitting him of the rest.  *Id.* at 1359–62.  While the jury foreperson read the verdict, the defendant's supporters in the gallery engaged in repeated, emotional outburst, shouting "no" at the jury.  This disruption was loud enough that the court reporter captured "no" repeatedly in the transcript.  *See id.* at 1359:17; 1360:5; 1360:14; 1360:19; 1362:7; 1362:12.  The government made a record as to what had unfolded, including that members of the audience were yelling "no" and also that a gallery member yelled "I hope you can sleep at night" while the foreperson read the verdict.  *See id.* at 1368:6-14.  The Court noted that while these events would likely not all be reflected in the transcript, the Court "personally observed" these events and called the government's description an "accurate recitation of what occurred." *See id.* at 1368:20-24.  Multiple members of the Court's staff also heard a gallery member yell either "I hope you can sleep at night" or "tonight." *See id.* at 1386:3-4.

The defense asked to poll the jury. *Id.* at 1363:8-9. Juror 1 said that this was not his verdict and then leaned forward in his seat, sobbing. *Id.* at 1363:16-17. The Court finished polling the jury. *Id.* at 1363:18–1364:14. The defense then moved for a mistrial. *See id.* at 1365:7-11.

In evaluating the defense's motion for a mistrial, the Court found the record did not "demonstrate clearly, if at all that there had been coercion, rather than a change of mind or a reaction to the enormity of the moment or a reaction to the outburst in the crowd[.]" *See id.* at 1379:21–1380:5. The Court denied the motion. *Id.* at 1380:12-13.

Instead, consistent with Rule 31(d), the Court instructed the jury to continue deliberating. In doing so, the Court emphasized:

> The goal here is not to force you to reach a verdict or to suggest in any way what your verdict should be. Do not surrender your honest vocation as to the weight or effect of evidence solely because of the opinion of your fellow jurors or for the mere purpose of returning a verdict.

> But since you have not reached a unanimous verdict, please continue your deliberations.

*Id.* at 1381:5-12.

A few hours later,[1] the jury indicated again that it had reached a unanimous verdict. The jury convicted the defendant of five counts of transportation of child pornography (Counts 1, 2, 5, 7, 8), one count of possession of child pornography (Count 16), and acquitted him of the rest. *See id.* at 1397:4–1400:2. This time, the jury poll was unanimous. *See id.* at 1400:9-1401:9.

The defense then asked to poll Juror 1 outside the presence of the other jurors. *See id.* at 1402:16-17. The Court agreed to do so. *See id.* at 1403:9-15; 1404:2–1405:16. Juror 1,

---

[1] The jury sent a note indicating it had reached a unanimous verdict, signed at 11:35 a.m. on April 17, 2024. (ECF 164). The transcript on April 17, 2024, begins at approximately 12:06 p.m., and the Court took the first verdict shortly thereafter. The jury sent a second note, indicating it had again reached a unanimous verdict, signed at 3:20 p.m. (ECF 164). The second verdict was taken shortly after 4:05 p.m. *See* 4/17/24 Tr. at 1385:6.

unprompted, stated that his issues were that "it's a very serious charge" and "a bad situation for everybody." *Id.* at 1404:19-20.   Juror 1 confirmed that this was his verdict and that the evidence established the defendant's guilt.  *See id.* at 1404:2-1405:15.

### B.  Argument

The defendant argues that further deliberations were "coercive" because Juror 1 was revealed as the lone holdout.  Neither the facts nor case law support that argument.

First, the facts show that no coercion occurred here because the jury's further deliberations led the jury to acquit the defendant of an additional count. When the jury returned the second verdict, it acquitted the defendant of Count 3; during the first verdict, the foreperson read a "guilty" verdict as to that count.  *Compare* 4/17/24 Tr. at 1359:18-21 ("guilty") *with* 4/17/24 Tr. at 1397:12-15 ("Not guilty").  That fact alone shows that Juror 1 was not coerced into simply accepting a verdict reached by the other jurors.

Second, continuing the jury poll is not coercive unless the court coerced the jurors into prematurely rendering a decision.  *See United States v. Brooks*, 420 F.2d 1350, 1354 (D.C. Cir. 1969) (rejecting argument that jury polling that continued after one juror disagreed with verdict and one juror had reservations as to the verdict was coercive); *Williams v. United States*, 419 F.2d 740, 745–46 (D.C. Cir. 1969).  *Williams* involved the first juror—like Juror 1 here—indicating disagreement and confusion with the jury verdict.  *See id.* at 745.  The court finished polling the other jurors before directing the jury back to the jury room to determine what their unanimous verdict was.  *See id.*  The D.C. Circuit rejected the argument that this polling was coercive, finding that "the mere fact that the announcement by one juror seems to differ from the judgment of the other jurors" did not amount to "impermissible coerciveness."  *Id.* at 746.

Other circuits agree.  In *United States v. Penniegraft*, for example, the Fourth Circuit rejected the same claim that the defendant makes here: that continuing polling after a juror disagreed with the verdict was coercive.  *See* 641 F.3d 566, 580 (4th Cir. 2011).  Rather, the *Penniegraft* court, citing *Brooks*, found no error with continued polling under Rule 31(d) absent the court coercing the jurors into "prematurely rending a decision."  *Id.; accord United States v. Gambino*, 951 F.2d 498, 501 (2d Cir. 1991) (holding "reversible error occurs only when it is apparent that the judge coerced the jurors into prematurely rending a decision, and not merely because the judge continued to poll the jury"); *United States v. Fiorilla*, 850 F.2d 172, 176–77 (3d Cir. 1988) (same); *Amos v. United States*, 496 F.2d 1269, 1273 (8th Cir. 1974) (same); *United States v. Carraway*, 108 F.3d 745, 751 (7th Cir. 1997) (discerning "no error in the decision to complete the polling," "let alone any prejudice to" the defendant).

Nothing about how the Court continued polling here coerced the jury into "prematurely rendering a decision."  The Court did not impose time pressures on the jury to reach a verdict or inquire into why any juror agreed or disagreed with the verdict.  To the contrary, the Court emphasized that the goal was "not to force you to reach a verdict" or "suggest what your verdict should be."  4/17/24 Tr. at 1381:5-7.  Indeed, the jury deliberated several more hours without any pressure from the Court, leading the jury to acquit the defendant of an additional count.  Nor did the Court single out the dissenting juror in front of other jurors.  *Compare with United States v. Spitz*, 696 F.2d 916, 917–18 (11th Cir. 1983) (finding coerciveness when the court, after a juror indicated disagreement with the verdict, finished polling the jury, had the dissenting juror stand, asked the juror to confirm again that this was not their verdict, then began giving an *Allen* charge while the juror was still standing).  By continuing the polling here, the Court avoided singling out Juror 1's response under the circumstances.

The only potential coercion of the jury came not from the Court but from the defendant's supporters in the gallery.  During the reading of the first verdict, the defendant's supporters engaged in repeated, emotional outbursts.  Members in the gallery repeatedly yelled "no" almost every time the jury foreperson said "guilty."  And multiple people in the courtroom, including a member of the Court's staff, heard someone yell, "I hope you can sleep at night," as the foreperson read the verdict.

Third, the defense's failure to contemporarily object to the continued polling "demonstrates to some degree the absence of a coercive atmosphere."  *See Fiorilla*, 850 F.2d at 176; *Brooks*, 420 F.2d at 1354 (finding any additional coercion from continued polling was "relatively slight" in light of defense counsel's failure to object);  *Penniegraft*, 641 F.3d at 579, 579 n.5 (noting that there was "no objection to continued polling of the entire jury" and concluding that that "some degree" of deference to defense counsel's lack of objection is warranted because continued polling could be beneficial to the defendant); *Amos*, 496 F.2d at 1273 (finding the "lack of objection by counsel permits an inference that the procedures utilized did not appear coercive at the time").

To argue coerciveness, the defendant relies on cases finding error in polling jurors in deadlock situations.  *See Brasfield v. United* States, 272 U.S. 448 (1926); *United States v. Ligon*, 781 F. Supp. 1, 8 (D.D.C. 1991).  But reliance on *Brasfield* is "largely misplaced" because a "jury poll, it is clear, stands on quite a different footing[.]"  *See Brooks*, 420 F.2d at 1354.  Unlike in deadlock situations, Rule 31(d) mandates polling on a party's request.  *See* Fed. R. Crim. P. 31(d).

Finally, the Court's colloquy with Juror 1 after the second verdict outside the presence of other jurors ensured that Juror 1's verdict was his own and based on the evidence at trial, not coercion from the Court or other jurors.  Juror 1 unequivocally stated that he agreed with the verdict and that the evidence established the defendant's guilt.  *See* 4/17/24 Tr. at 1404:2–1405:16.

The Court neither erred in polling the jury nor coerced Juror 1 into reaching any certain verdict (or a verdict at all).  As to this argument, the defendant's motion should be denied.

III.   **The Jury's Receipt of Redacted Exhibit Lists Does Not Warrant a New Trial Because the Neutral Descriptions of Cumulative Evidence Were Not Prejudicial.**

The defendant next argues that the court clerk's delivery of the defense and prosecution exhibits lists to the jury was reversible error.  The exhibit lists, however, could not have prejudiced the jury's verdict because they contained neutral and objective descriptions of evidence that were mostly cumulative of evidence already seen by the jury.  Because the exhibit lists did not prejudice the jury's verdict, no new trial is warranted.

### A. Additional Facts

The jury began deliberating late on Friday, April 12, 2024.  The following Tuesday, the Court alerted the parties that a courtroom deputy had given a copy of the government and defense exhibit lists to the jury.  *See* 4/16/24 Tr. at 1338–39.  The clerk had tried to redact the listed exhibits that were not admitted in evidence using a black marker.  *See id.*  Some, if not all, of the "blacked out" exhibit descriptions could be seen through the black marker.  *Id.*

Unredacted versions of both the government's exhibit list (ECF 162) and the defense's exhibit list (ECF 163) were uploaded to the docket.

The government's exhibit list was 24 pages long.  (ECF 161).  Most of the exhibits on the government's list, 328 of the 349 listed, were admitted during the trial.  *See id.*  The defense later admitted two of the 21 unadmitted government exhibits on the list: government exhibit 413 was admitted as defense exhibit 18, and government exhibit 410 was admitted as defense exhibit 19.  Other unadmitted government exhibits listed were cumulative of evidence introduced during the trial, including:

- Government Exhibit 4: A hard drive containing Exhibit 3, which was cumulative because Exhibit 3 was admitted;

- Government Exhibit 108: Google CyperTip Log, which was cumulative because all this information was included on Government Exhibits 100-1 to 100-19;

- Government Exhibits 321–324: Four photographs labeled as DSC_0093, DSC_0094, DSC_0097, and DSC_0098, which were additional photographs in a series of search warrant photographs admitted as Government Exhibits 300-320;

- Government Exhibits 401 and 402: A scoped extraction report for the defendant's Samsung cellphone.  The pertinent parts of these two report were admitted as Government Exhibits 401A, 401B, 401D, 401E, 401G, 401I, 402B, and 402C;

- Government Exhibit 414: Samsung Galaxy Note 10 Plus Browser History, which was mostly duplicative of data admitted in Government Exhibit 400, the Google Chrome Browser history.

In arguing prejudice, the defense focused on two entries relating to the defendant's post-arrest statement as potentially prejudicial.  *See* 4/16/24 Tr. at 1346:6-18.  Those two entries, on page 20 of the government's exhibit list, read:

| 202 | October 7, 2021, Interview of Stephen Johnson | | | Calvillo | |
| 202A | Transcript of Exhibit 202 | | | Calvillo | |

Based on this purported prejudice, the defense requested a mistrial.  *See id.*  The Court denied the motion for a mistrial.  *See id.* at 1349:2-3.  For analytical purposes, the Court assumed that the jurors could see each entry, even if the clerk had tried to redact it.  *See id.* at 1349:13-23.  The Court found that the jury having seen the names was not prejudicial and "certainly not sufficiently prejudicial to warrant a mistrial."  *Id.* at 1350:1-3.  The Court reasoned, among other things, that jurors frequently hear of evidence that is not admitted, such as when attorneys try to lay a foundation but the evidence is not admitted, or when testimony or evidence is stricken from the record.  *See id.* at 1350:4-17.  The Court then gave the jury a curative instruction:

In particular, it's come to our attention that both sides' exhibit lists were provided to you on Friday, April 12.  Those lists are not themselves evidence, and you should

14

> not weigh anything in those documents, including their length, as evidence in the case.
>
> Furthermore, the lightly redacted or the drawn-through entries concerned exhibits never entered into evidence, so you should disregard those entirely as well. You must not consider either of the exhibit lists in your deliberations.

*See* 4/16/24 Tr. at 1352:19–1353:3. The defense, without waiving its request for a mistrial, agreed to the language in the curative instruction. *See* 4/16/24 Tr. at 1347:2-3.

The jury deliberated into the next day before returning its guilty verdict.

**B. Argument**

The court clerk's delivery of the exhibit lists to the jury room does not warrant a new trial. No one disputes that the court clerk should not have provided the exhibit lists to the jury without informing the parties and the Court. But without showing prejudice, no new trial is warranted. *See United States v. Treadwell*, 760 F.2d 327, 339 (D.C. Cir. 1985) (finding no reversible error even though jury received unadmitted substantive evidence without a showing of prejudice). Prejudicial error exists when the error could have swayed the jury verdict, *see id.*, and it depends on several factors, including "the force of the unfairly prejudicial evidence, whether that force was mitigated by curative instructions, and the weight of the admissible evidence that supports the verdict." *See United States v. Roy*, 473 F.3d 1232, 1238 (D.C. Cir. 2007) (quoting *United States v. McLendon*, 378 F.3d 1109, 1112 (D.C. Cir. 2004)) (rejecting, on plain error review, that sending an indictment listing incorrect predicate felonies to the jury warranted a new trial).

The prejudice here—if any—was minimal. To start, the exhibit lists had "neutral or objective" descriptions that are unlikely to be prejudicial. *See United States v. Wiley*, 846 F.2d 150, 157–58 (2d Cir. 1988); *cf. Roy*, 473 F.3d at 1238 (finding insufficient showing of prejudice in felon in possession trial when the jury received indictment that *incorrectly* identified predicate crimes of "Assault with Intent to Kill" and "Use of a Handgun in the Commission of a Crime of

Violence"). In *Wiley*, much like what happened here, the exhibit list inadvertently made it into the jury room without the district court's knowledge. *Id.* at 157. The exhibit list contained "neutral or objective" descriptions of evidence, and the district court issued a prompt curative instruction. *Id.* at 158. Because the exhibit list was "so patently harmless" and the "trial judge is generally in the best position to evaluate the critical question of whether the jury's exposure to extra-record evidence prejudiced the defendant," the Second Circuit found that it was harmless error and the district court's prompt curative instruction cured any possible prejudice. *Id.* at 157–58.

Here, the exhibit lists provided to the jury contained "neutral" and "objective" descriptions of the unadmitted exhibits. The defendant's post-arrest interview, which the defense focuses on, is described neutrally and objectively as the "October 7, 2021, Interview of Stephen Johnson." Indeed, the jurors could glean little from the description of unadmitted Exhibits 202 and 202A.[2] While the defendant speculates that jurors might conclude the statement was inculpatory, he provides no evidence or case law supporting that conclusion. As a logical matter, this conclusion is not the most obvious: Why would the jury assume the defendant's statement is inculpatory if the government chose not to put it in evidence? And nothing in the description supports that conclusion. This description does not, for example, refer to the interview as a "confession." In fact, this description indicates nothing about what happened in the interview. Even though the defense calls it a "post-arrest statement," the exhibit list does not say that. This neutral description told the jury nothing that could have influenced the verdict.

Additionally, the exhibit lists described evidence that was cumulative and concerned matters already before the jury, thus minimizing or eliminating any prejudice. *See Treadwell*, 760 F.2d at 339–42 (finding no prejudice with jury receiving unadmitted summary of FBI testimony

---

[2] The same is true for the other unadmitted exhibits described in the government's exhibit list.

that the defense alleged "mapped out the government's theories of liability" on certain counts because it was mostly cumulative); *United States v. Bentley*, 489 F.3d 360, 362 (D.C. Cir. 2007) (finding no prejudice when unadmitted exhibits, including an envelope containing thousands in cash and handwritten labels on drug evidence, were sent to the jury because it was cumulative).

The Eleventh Circuit rejected an almost identical argument. *See United States v. Guida*, 792 F.2d 1087, 1091 (11th Cir. 1986). There, a jury received both a witness list and an unredacted exhibit list describing items never admitted in evidence. *See id.* By the time the Court gave a curative instruction, the jury had "in all probability . . . already reached their verdict[.]" *Id.* at 1092. The defense identified over 30 entries that referenced unadmitted prosecution exhibits, including additional unadmitted counterfeit notes. *Id.* But no prejudice existed because the exhibit list referenced cumulative evidence and concerned matters already before the jury. *Id.*

Nothing on the exhibit lists here revealed anything the jury had not already heard. The unadmitted exhibits were either admitted by the defense or duplicative of evidence the jury received in evidence. Although the defense focuses on the references to the defendant's interview, it was not news to the jury that the defendant spoke to law enforcement. The defense, in fact, asked the government's computer forensics expert, Dero Tucker, explicitly about information the defendant had provided to law enforcement *on the day of his arrest*:

> Mr. Jeffress:    Mr. [Tucker], you're aware that Mr. Johnson gave the passcode to the Lenovo computer the very day he was arrested, correct?
>
> Mr. Tucker:    I'm aware of a user account PIN, yes.

4/10/2024 Tr. at 675:11-14. Based on the defense's own questions, it would have been unsurprising—and likely expected—that the defendant spoke to law enforcement on the day of his arrest. Seeing a generic description for "October 7, 2021, Interview of Stephen Johnson" thus added nothing to the jury's knowledge of the case, and so it could not have been prejudicial.

17

The defendant, ignoring the D.C. Circuit's later decisions in *Treadwell* and *Bentley*, relies on one 1969 case to argue that the exhibit list prejudiced the jury.  *See Dallago v. United States*, 427 F.2d 546 (D.C. Cir. 1969).  But *Dallago* does not support his argument.  *Dallago* involved the jury receiving substantive evidence (an SEC suspension order containing unsubstantiated allegations), not an exhibit list, that the parties expressly agreed should not go to the jury room. *See id*. at 551–52.  Indeed, the defense stipulated to admission of certain exhibits during the trial conditioned on the jury not receiving this SEC suspension order.  *See id.* at 551.  The Court found the prejudice "clear enough" because the parties had agreed to keep those documents out of evidence.  *Id.* at 558.  Here, on the other hand, the jury received no substantive evidence; rather, it received both sides' exhibit lists.  *See Guida*, 792 F.2d at 1093 (noting that a jury receiving an exhibit list describing unadmitted exhibits is "clearly distinguishable from cases where the extrinsic evidence which comes before the jury constitutes a significant addition to the evidence already presented at trial").  And nothing on the exhibit list provided the jury with anything approaching the SEC suspension order in *Dallago*.

The defense also argues, without any legal or factual support, that the lists "telegraphed" to the jury that most of the defendant's evidence was deemed inadmissible or insignificant.  *See* Def.'s Mot. at 35.  That argument lacks any basis.  Factually, no evidence supports that inference. Practically, the jury saw throughout the trial that the government had many more exhibits than the defense.  Legally, juries often see evidentiary objections and are instructed to disregard and not speculate on evidence that was not admitted.  (*See* ECF 169 (Final Jury Instructions) at 14); *see also* 4/16/24 Tr. at 1350 (explaining that juries often hear about inadmissible evidence through foundational questions, and we presume that jurors focus only on admitted evidence).  The law presumes that jurors follow the Court's instructions.  *See Samia v. United States*, 599 U.S. 635,

646 (2023).  And jurors are instructed that the defense has no burden to produce any evidence.  (*See* ECF 169 at 9).  So the fact that the defense has fewer exhibits in evidence than the government does not prove prejudice.

In any event, the jury verdict itself undercuts this argument.  *See United States v. Richards*, 659 F.3d 527, 546–47 (6th Cir. 2011) (finding no plain error affecting substantial rights when the jury received labels on disks that the court had excluded when the jury acquitted the defendant on three counts based on the labeled disks and convicted on six others).   The jury here convicted the defendant of six counts and acquitted the defendant of ten other counts.  This breakdown aligned with whether the government had additional evidence showing that the defendant had accessed the files named in the indictment.[3]  Under these circumstances, the defendant's argument lacks any support that the exhibit list's inclusion of the defendant's post-arrest statement in any way prejudiced the jury.

Finally, the Court promptly instructed the jury that the exhibit lists were not evidence and to disregard anything not in evidence.  *See* 4/16/24 Tr. at 1352:19–1353:3.  This type of curative instruction can cure any minimal prejudice.  *See, e.g., Treadwell*, 760 F.2d at 341 ("The court responded by immediately retrieving the document and instructing the jury that the document was not in evidence and should not be considered by them."); *Wiley*, 846 F.2d at 158 ("Any possible prejudice was cured by the district court's prompt inquiry and curative instruction.") (cleaned up).

---

[3] The jury convicted of transportation of child pornography counts 1, 2, 5, 7, and 8, and the sole count of possession of child pornography, count 16.  Transportation counts 1, 2, 5, 7, and 8, are the only charged counts where the government had additional evidence showing that the defendant had accessed the files and initially saved them in a different location on his computer before moving them to Google Drive.  *See* Gov't Ex. 412A ("Summary of Jump List Showing Charged Files on Lenovo Desktop").

The exhibit lists contained neutral descriptions of exhibits—most of which were admitted at trial—which could not have prejudiced the jury.  If the list of unadmitted counterfeit notes in *Guida*, the unadmitted summary of FBI testimony in *Treadwell*, the envelopes of cash and handwritten drug labels in *Bentley*, and the incorrect list of predicate felonies in *Roy* are not prejudicial, then the neutral indication that the defendant had participated in an interview on the day of his arrest—a fact that the jury already knew about from testimony that the defendant elicited at trial—cannot be prejudicial.  The Court's curative instruction was more than enough to resolve this issue.  No evidence of any prejudice exists here that would warrant a new trial.

## IV.    The Court Properly Admitted the Dropbox, Telegram, and Google Photos Evidence Under Rule 404(b).

The defendant contests the Court's admission of evidence involving Dropbox, Telegram, and Google Photos under Federal Rule of Evidence 404(b).  Here, the evidence was highly probative in showing that the defendant knew he possessed child pornography and did not accidentally download it. This evidence was especially probative considering the defense's opening statement, in which it argued that the defendant did not seek out child pornography and had accidentally downloaded it while seeking out adult pornography.

### A.  Additional Facts

Before trial, the government noticed certain evidence from the defendant's internet browser history and cellphone that it intended to offer at trial under Federal Rule of Evidence 404(b).  (*See* ECF 81, 97, 126).  This evidence included:

- Evidence that the defendant's Google Chrome browser had repeatedly visited a Dropbox folder called "Black teens and underage thots" in June and July 2020, a few months before the charged child pornography was uploaded to the Google Drive account.

20

- Evidence that the defendant's cellphone had downloaded three images containing child pornography from Telegram, months after the child pornography was uploaded to the defendant's Google Drive.

- Evidence from the defendant's cellphone showing he was a member of Telegram groups advertising child pornography, months after the child pornography was uploaded to the Google Drive.

- Evidence from the defendant's cellphone showing that he was a member of Google Photos shared albums focused on child pornography, including a group called "13-17 lesbian cp."

The defense objected.  (*See* ECF 93).  The Court reserved judgment until trial.

At trial, the defense opened by stating that the defendant "did not deliberately and intentionally possess child pornography and he did not deliberately and intentionally and knowingly transport child pornography[.]"  4/9/24 Tr. at 305:4-8.  The defense argued that the defendant "accidentally got a small amount, a relatively small amount, of illegal images."  *Id.* at 306:3-4.  They argued that "it is not difficult, if you are looking for adult pornography, to accidentally get a small amount of this material, which is exactly what happened here."  *Id.* at 309:11-14.  And they argued that the "government's evidence will also show you that Mr. Johnson used none of the techniques, the search terms, the other things that it well knows that people seeking child pornography on the Internet use."  *Id.* at 311:5-12.

The Court ultimately admitted the government's exhibits and testimony relating to the noticed 404(b) evidence.  *See* Gov't Ex. 400B (Summary of Google Chrome Browser History – Visits to Dropbox Folder "Black teens and underage thots"); Gov't Ex. 401D (containing three images of child pornography downloaded from Telegram and found on the defendant's cellphone); Gov't Ex. 401E, G (Google Photos groups); Gov't Ex. 402B–D (Telegram groups).

### B.  Argument

The Court appropriately allowed the government to introduce evidence under Rule 404(b). The evidence was highly probative of the defendant's knowledge, intent, and the absence of

mistake in possessing and uploading child pornography. This evidence became even more probative after the defense opening, in which the defense told the jury that this was an accident and that the defendant was not seeking out child pornography.

Federal Rule of Evidence 404(b) provides that evidence of "other crimes, wrongs, or acts" is not admissible to prove a defendant's character but is admissible for any non-propensity purpose, including motive, intent, plan, knowledge, and absence of mistake. *See United States v. Bowie*, 232 F.3d 923, 926, 930 (D.C. Cir. 2000). This rule is one of "inclusion rather than exclusion." *Id.* at 929. While "the first sentence of the rule is framed restrictively, the rule itself is quite permissive, prohibiting the admission of other crimes evidence in but one circumstance – for the purpose of proving that a person's actions conformed to his character." *United States v. Crowder*, 141 F.3d 1202, 1206 (D.C. Cir. 1998) (internal quotations omitted). In short, "Rule 404(b) bars not evidence as such, but a theory of admissibility." *Id.; see also United States v. Cassell*, 292 F.3d 788, 795 (D.C. Cir. 2002) ("[A]ny purpose for which bad acts evidence is introduced is a proper purpose so long as the evidence is not offered solely to prove character." (quoting *United States v. Miller*, 895 F.2d 1431, 1436 (D.C. Cir. 1990))).

There is a two-pronged test for determining whether other bad acts evidence is admissible. First, the evidence must be "probative of a material issue other than character." *Miller*, 895 F.2d at 1435. Second, the evidence is subject to the balancing test of Rule 403, so that it is inadmissible only if the prejudicial effect of admitting the evidence "substantially outweighs" its probative value. *Id*. Furthermore, it is not enough that the evidence is simply prejudicial; the prejudice must be "unfair." *See, e.g., United States v. Pettiford*, 517 F.3d 584, 590 (D.C. Cir. 2008) ("The Rule focuses on the danger of *unfair* prejudice, and gives the court discretion to exclude evidence only if that danger substantially outweighs the evidence's probative value." (emphasis in original)

(cleaned up)); *Cassell*, 292 F.3d at 796 ("'[U]nfair prejudice' as used in Rule 403 is not to be equated with testimony simply adverse to the opposing party. Virtually all evidence is prejudicial or it isn't material. The prejudice must be 'unfair.'" (quoting *Dollar v. Long Mfg., N.C., Inc.,* 561 F.2d 613, 618 (5th Cir. 1977))).

The Dropbox, Telegram, and Google Photos evidence was quintessential Rule 404(b) evidence as to the defendant's intent to possess child pornography and his knowledge that he was doing so. In opening, the defense challenged each of these mental states, argued that the material was accidentally downloaded, and promised the jury that the government's evidence would show "none of the techniques, the search terms, the other things that it well knows that people seeking child pornography on the Internet use." 4/9/24 Tr. at 311:5-12. The chosen defense made this Rule 404(b) evidence even more relevant and admissible.

The Dropbox evidence showed that the defendant was logged into his Google account—the same account to which the defendant later uploaded the child pornography—when he repeatedly visited a folder called "black teens and underage thots" and accessed movie files from that folder within the Google Chrome browser. These visits occurred in June and July 2020, a period between when the evidence shows at least some child pornography files were first opened on the defendant's laptop and when the defendant uploaded the charged files to his Google Drive. This evidence was highly probative evidence that the defendant sought out child pornography, making it more likely that he knew he possessed child pornography and did not accidentally download it while looking for adult pornography. *See United States v. Hite*, 916 F. Supp. 2d 110, 119–20 (D.D.C. 2013) (finding browser history indicative of accessing child pornography probative of defendant's intent, knowledge, and absence of mistake in attempted coercion of a minor trial), *aff'd*, 963 F.3d 122 (D.C. Cir. 2020).

The defendant argues that the Dropbox site had little probative value because there was no evidence that the defendant downloaded child pornography from this folder.  *See* Def.'s Mot. at 37–38.  But that argument misses the point.  *See, e.g.*, *United States v. Lieu*, 963 F.3d 122, 129 (D.C. Cir. 2020) (noting admissible bad acts need not be identical so long as they are probative).  The defendant intentionally and repeatedly accessed an online folder obviously named to convey the presence of child pornography, making it more likely that the defendant knew about the child pornography in his Google account and did not accidentally download it.  *See, e.g., United States v. Roberson*, 581 F. Supp. 3d 65, 77–78 (D.D.C. 2022) (admitting internet searches for written accounts, images, and videos that sexualized children, which were "relevant to motive, intent, knowledge, and absence of mistake in seeking out and distributing child pornography a few months earlier"), *appeal filed*, No. 23-3066 (D.C. Cir. May 11, 2023).  In *United States v. Tanguay*, the defendant made the same argument that the defense makes here: that the prosecution admitted evidence of bookmarked websites like "CumFilledBoys" on the defendant's computer without showing the sites contained child pornography.  982 F. Supp. 2d 119, 124–25 n.5 (D.N.H. 2013).  The district court rejected that argument, noting that having bookmarked sites with such name suggested that the defendant "was also aware of the presence of child pornography on his computer."  *Id.*  That logic applies here too.

Similarly, the Telegram evidence showed that the defendant accessed several Telegram groups advertising child pornography on his cellphone.  It also showed that the defendant had downloaded three images containing child pornography from Telegram.  This evidence was again highly probative.  The fact that the defendant accessed child pornography using Telegram on a device other than his laptop made it less likely that the child pornography downloaded from other

sources onto the laptop was accidental and more likely that the defendant knowingly possessed and transported the child pornography.

The defendant argues that his "passive presence" on Telegram "does not tend to show that he knowingly and intentionally possessed or transported the charged files." *See* Def.'s Mot. at 39. That logic defies common sense: "passive presence" is often the point when seeking out and viewing child pornography. What is more, the defendant argued in opening that he accidentally downloaded child pornography while seeking out adult pornography. But if that were the case, one would not expect to find him in multiple child pornography groups—even "passively."

The defendant's presence in shared Google Photos child pornography groups on his phone further undercuts his "passive presence" argument. *See United States v. Hardrick*, 766 F.3d 1051, 1057 (9th Cir. 2014) (noting that it was inconsistent with defense of accidental downloading to have numerous files with names "clearly indicating" child pornography on two computers that had been downloaded on different days). The defendant was in a Google Photos group called "13-17 lesbian cp." That group name leaves no doubt as to the purpose of that group. "Passive presence" in this group makes it more likely that the defendant knowingly possessed and transported child pornography and significantly less likely that he accidentally downloaded it. Those inferences become even stronger when one combines "passive presence" in the Google groups, "passive presence" in the Telegram groups, downloaded images in the Telegram group, and repeated visits to the Dropbox folder.

The defendant argues that both the Telegram and Google Photos evidence was too "remote in time" to be relevant. The case law does not support that argument. *See, e.g., United States v. Nance*, 767 F.3d 1037, 1042 (10th Cir. 2014) (upholding admission of evidence that the defendant had viewed child pornography on his computer two years before the charged offenses as "clearly

probative" given defense of lack of knowledge).  The defendant's presence in child pornography groups months after he uploaded child pornography to his Google Drive is highly probative of whether the defendant knew he possessed and transported child pornography.  *See Roberson*, 581 F. Supp. 3d at 77–78 (permitting searches made in 2016 that sexualized children as evidence of child pornography distribution occurring months before in 2015).  The defendant claims that he accidentally downloaded the charged child pornography files was an accident.  Yet months later he was in child pornography groups and was downloading child pornography from Telegram onto a different device.  This evidence significantly undercuts any argument of accidental possession. At bottom, it becomes less believable that the defendant accidentally accessed child pornography when he did so on different devices through different internet applications on different days in different months.

Given its significant probative value, this evidence not "substantially outweighed" by considerations of unfair prejudice.  *See* Fed. R. Evid. 403.  Nor was this evidence "especially graphic in the context of the crimes" for which the defendant was charged.  *See Lieu*, 963 F.3d at 128.  "The prejudice that the court must assess is the prejudice that lies in the danger of jury misuse of the evidence." *United States v. Mitchell*, 49 F.3d 769, 777 (D.C. Cir. 1995).  And given the split jury verdict, the jury appears to have thoughtfully evaluated the evidence in this case as to each count.   The Court properly admitted this evidence, and the defendant's motion should be denied.

## V.    The Court Properly Allowed the Tor Browser Evidence After the Defendant Opened the Door.

Finally, the defendant argues evidence of the Tor browser on Mr. Johnson's computer should have been excluded under Federal Rules of Evidence 402 and 403.  This argument is surprising because it was the defendant—not the government—who brought Tor into this trial. Because the defendant opened the door to this evidence, and the evidence became probative as to

issues that the defendant brought up in his opening and in its cross-examination of the government's lead FBI agent, the defendant's motion should be denied.

### A. Additional Facts

Before trial, the defense moved in limine to exclude evidence of the Tor browser.  (*See* ECF 117 at 11–12).  The government agreed that it did not intend to use this evidence at trial, so the Court denied the motion as moot.  *See* 4/2/24 Tr. at 1–10.

Despite the government agreeing not use the Tor evidence, the defense brought up the dark web and Tor twice on the first day of trial.   The defendant first brought up Tor in his opening statement:  "The main website here is not from the dark web.  *It is not from Tor or anything like that*."  *See* 4/9/24 Tr. at 309:15-24 (emphasis added).

Then the defense led FBI Special Agent Laura Calvillo right into a discussion of the dark web on cross-examination:

> Mr. Jeffress:   And, just to be clear, there are websites out there that specifically cater to child pornography.  Correct?
>
> SA Calvillo:   Mostly on – nowadays, on the dark net.  But in the past there have been, yes.
>
> Mr. Jeffress:   That's right.  Most of them are on the dark web.  Correct?
>
> SA Calvillo:   Correct.
>
> Mr. Jeffress:   And they are specifically catered to child pornography. They are not, you know, public websites that may have child pornography in them. Correct?
>
> SA Calvillo:   Correct.
>
> Mr. Jeffress:   And if someone wants to find child pornography, all they need to do is go to the dark web, and they can go to a website that's exclusively all about this; isn't that right?
>
> SA Calvillo:   They can.  I don't see that much in our investigations, but they can.

Mr. Jeffress:    You don't see any dark web investigations?

SA Calvillo:    In the users that I've seen, the majority of them are on chats or other ways of getting links.  On occasion, we see the Tor, as in the The Onion Router, but –

*Id.* at 467:3-24.

Based on the defense opening and cross-examination, the government asked the Court for permission to bring out the Tor evidence.  After reviewing the transcript, the Court agreed that the Tor evidence was now "both more probative than it was before and less prejudicial than it would have been because of the line of questioning yesterday."  *See* 4/10/24 Tr. at 570:15-22.

The government then brought out a limited amount of information about the Tor browser from the government's computer forensics expert, Dero Tucker.  Mr. Tucker stated that the Tor browser was found on the defendant's laptop.  *See id.* at 613:10-14.  Additionally, Mr. Tucker testified that the defendant's cellphone showed evidence of a Google search for a "private Tor search engine" shortly after Google disabled the defendant's account for uploading child pornography.  *See id.* at 664:20-25; *see also* Gov't Ex. 401I at 19.

## B. Argument

To start, because the defense opened the door on this issue and left the misleading impression that the government had no evidence of Tor, the Court properly allowed the government to introduce evidence of the Tor browser on the defendant's laptop.  *See United States v. Lopesierra-Gutierrez*, 708 F.3d 193, 205 (D.C. Cir. 2013) (finding defense opened the door to admission of recorded phone call that the government had agreed not to use when the defense, "fully aware of the consequences of doing so," then argued the absence of the recording at trial).

In any event, the defendant's own argument shows why this evidence was relevant. The defendant now says that he "sought to establish that [he] only accessed CSAM through legitimate

internet sites, as opposed to the dark web." Def.'s Mot. at 42.  Implicit in that reasoning is that the defendant believes Tor (and the access or lack of access to it) is relevant in whether the defendant knowingly possessed and transported child pornography.  So his argument that Tor was not relevant is undercut by his own arguments about why he brought Tor up in the first place.

Even more, the defendant's Google searches show that the Tor browser was linked to the child pornography at issue in this case.  Just two days after learning Google had closed his account,[4] the defendant made a series of Google searches on his cellphone that ended with a search for "private tor search engine":

| Date | Time | Web Activity on Cellphone |
|---|---|---|
| October 5, 2020 | 12:34 PM | Google Search: "who can you legally tell secrets to" |
| October 5, 2020 | 12:35 PM | Google Search: "confess to a preacher" |
| October 5, 2020 | 12:49 PM | Google Search: "Is talking to a psychologist protected" [remainder of search term cannot be seen] |
| October 5, 2020 | 12:50 PM | Views a website with the heading: "When Does a Therapist Have to Break Confidentiality?" |
| **October 5, 2020** | **1:23 PM** | **Google Search: "Private tor search engine"** |

The defendant cannot have it both ways.  The defendant's opening statement and questioning left the misleading impression that he did not use Tor, despite knowing that the government had agreed not to introduce evidence that Tor was on his laptop and that he had searched for it shortly after Google detected child pornography.  The Court properly allowed the government to introduce this probative evidence after the defendant opened the door.

---

[4] The government also introduced Google search evidence showing that the defendant understood why his Google account had been suspended, including searches for "Google pornographic sweep" and a search about a child pornography offender caught by Google.  *See* Gov't Ex. 401I.

## **CONCLUSION**

The defendant's arguments do not amount to error.  The Court correctly denied the motions to suppress evidence, and the defendant identifies no proper basis for the Court to reconsider those rulings, instead rehashing the same arguments this Court has already considered and rejected.  The Court appropriately instructed the jury to keep deliberating after jury polling revealed a lack of unanimity, consistent with Federal Rule of Criminal Procedure 31(d).  The Court promptly gave a curative instruction when a court clerk gave the exhibit lists to the jury, and, in any event, the neutral and objective descriptions described cumulative evidence that was not prejudicial.  Finally, the Court properly admitted both the 404(b) evidence and the Tor browser evidence.

None of this was error, let alone cumulative error requiring a new trial.  The defendant's motion should be denied.

Respectfully submitted,

MATTHEW M. GRAVES
UNITED STATES ATTORNEY

By:     */s/ Ryan Lipes*
        Ryan Lipes
        Special Assistant United States Attorney
        N.Y. Bar No. 5404843
        Paul V. Courtney
        D.C. Bar No. 1034252 / N.Y. Bar No. 5392337
        Assistant United States Attorney
        601 D Street, N.W.
        Washington, D.C. 20530
        (202) 514-4715 (Lipes)
        (202) 252-1719 (Courtney)
        Ryan.Lipes@usdoj.gov
        Paul.Courtney@usdoj.gov