**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

UNITED STATES OF AMERICA                    Criminal Action
                                            No. 1:22-176
        Plaintiff,

    vs.                                 Washington, DC
                                            January 25, 2024
STEPHEN JOHNSON,

      Defendant.                     3:03 p.m.
_____/

TRANSCRIPT OF CONFLICTS/PLEA INQUIRY HEARING
**BEFORE THE HONORABLE CARL J. NICHOLS**
UNITED STATES DISTRICT JUDGE

APPEARANCES:

**For the Plaintiff:**          **Jocelyn Bond**
                                **Paul Courtney**
                                United States Attorney's Office
                                601 D Street NW
                                Washington, DC 20530
                                Email: paul.courtney@usdoj.gov
                                Email: jocelyn.bond@usdoj.gov

**For the Defendant:**          **Jonathan Jeffress**
                                KAISER DILLON, PLLC
                                1099 14th Street, Suite 800 West
                                Washington, DC 20005
                                Email: jjeffress@kaiserdillon.com
                                **Tony Miles**
                                MILES LAW PLLC
                                1717 K Street, NW, Suite 900
                                Washington, DC 20006
                                Email: tonymiles@mileslawpllc.com

**Conflicts Counsel:**          **Jeffrey O'Toole**
                                KIERNAN TREBACH
                                1233 20th St. NW
                                Washington, DC 20036
                                Email: otoole@kiernantreback.com

**Reported By:**                **LORRAINE T. HERMAN, RPR, CRC**
                                Official Court Reporter
                                U.S. District & Bankruptcy Courts
                                333 Constitution Avenue NW
                                Washington, DC 20001

1                    **P R O C E E D I N G S**

2            **DEPUTY CLERK:**  Good afternoon, Your Honor.

3            This is criminal case year, 2022-176, *United*

4   *States of America versus Stephen Johnson.*

5            Counsel, please come forward and introduce

6   yourselves for the record, beginning with the government.

7            **MR. COURTNEY:**  Good afternoon, Your Honor.

8            Paul Courtney for the United States.  And I am

9   joined with my colleague, Jocelyn Bond.

10           **THE COURT:**  Good afternoon, everyone.

11           Mr. Miles, good afternoon.

12           **MR. MILES:**  Good afternoon, Your Honor.  Tony

13  Miles on behalf of Mr. Johnson, along with

14  Mr. Jonathan Jeffress.  And Mr. Johnson is present.

15           **THE COURT:**  And Mr. Johnson is present, yes.

16           **MR. O'TOOLE:**  Jeffrey O'Toole, conflict counsel.

17           **THE COURT:**  Yes, Mr. O'Toole.  Thank you for

18  coming.

19           Counsel, as to the last hearing we had, I would

20  like to take the conflict question first; assuming it is

21  resolved, we will then go to the plea colloquy.

22           Mr. Jeffress, the government has asked me to

23  conduct a renewed conflict inquiry.

24           **MR. JEFFRESS:**  Yes, Your Honor.

25           **THE COURT:**  Can you give me a brief update on the

1    matter, for the record, so that Mr. Johnson can hear it?

2              **MR. JEFFRESS:**  Yes, Your Honor.

3              As I explained to Mr. Johnson and Mr. O'Toole, I

4    have a trial of May 28th of this year.  There are no plea

5    negotiations or anything like that; there never was.  I

6    don't know if the Court needs any other information from me.

7              **THE COURT:**  Am I right that the trial is set for

8    D.C. Superior Court?

9              **MR. JEFFRESS:**  Correct.

10             **THE COURT:**  But the case is being tried, not by

11   the U.S. Attorney's Office in D.C.  Correct?

12             **MR. JEFFRESS:**  That's correct.  It's by the

13   Northern District of West Virginia.

14             **THE COURT:**  So, as a result, both you haven't had,

15   as you just said, any plea negotiations with the government

16   at all, but at a minimum you certainly haven't had any with

17   the U.S. Attorney's Office in D.C.  Correct?

18             **MR. JEFFRESS:**  On the first question, there was

19   before the indictment, but those did not materialize in

20   anything.  So they charged it.  And there has been nothing

21   since.

22             **THE COURT:**  Okay.  And you've discussed --

23             **MR. JEFFRESS:**  And -- I'm sorry.

24             **THE COURT:**  Please.

25             **MR. JEFFRESS:**  This office is completely not

1    involved.  I don't think they are involved in any aspect of

2    the case, as far as I understand it.

3              **THE COURT:**  In the past, I think it was

4    represented for various reasons, the investigation and

5    presumably now, the case was being run entirely out of a

6    different office.

7              And is it fair to say that what you've just

8    described now and, of course, everything that we had

9    discussed the last time we discussed the conflicts question,

10   those are topics that you discussed with Mr. Johnson?

11             **MR. JEFFRESS:**  Yes, Your Honor.  I kept him up to

12   date of everything.

13             **THE COURT:**  In your view, he is well-apprised of

14   your situation?

15             **MR. JEFFRESS:**  Yes, Your Honor.

16             **THE COURT:**  Thank you very much.

17             **MR. JEFFRESS:**  Thank you, Your Honor.

18             **THE COURT:**  Mr. Miles, I want to make sure you

19   agree, I take it, with everything Mr. Jeffress just said?

20             **MR. MILES:**  I do.

21             **THE COURT:**  Mr. O'Toole -- sorry for the, you

22   know, whatever you want to call it -- rotation here.

23             **MR. O'TOOLE:**  That's fine.

24             **THE COURT:**  Have you had an opportunity to become

25   apprised of the current state of play with respect to

1    Mr. Jeffress?

2             **MR. O'TOOLE:**  I have, Your Honor.

3             I spoke to Mr. Johnson, numerous times.  Both

4    before we had it last year and I called him from underneath

5    a bridge and we got called off in the middle of a hearing

6    the last time.  You might recall.

7             **THE COURT:**  Yes.

8             **MR. O'TOOLE:**  I talked then and I have apprised

9    him of the new situation, as Mr. Jeffress has explained to

10    you.  I have spoken to the people in West Virginia.

11    Mr. Johnson, I think, is well aware of all of his options.

12    He understands the situation completely.  I'm comfortable to

13    tell the Court that I think he understands what his options

14    are, as we set it out before, and we wishes to waive any

15    potential conflict and proceed.

16             **THE COURT:**  In your view, if he does confirm that

17    today, from your perspective that is a knowing, voluntary

18    and informed waiver?

19             **MR. O'TOOLE:**  Absolutely.

20             **THE COURT:**  Thank you very much.  Thank you both

21    for that and your work in this matter.

22             **MR. O'TOOLE:**  You're very welcome.  Thank you,

23    Your Honor.

24             **THE COURT:**  So, Mr. Johnson, could you please come

25    forward, please?

1              Mr. Johnson, obviously last year we had a

2   discussion about the possibility raised, certainly by the

3   government, that Mr. Jeffress might have a conflict in this

4   matter.  Do you recall that discussion?

5              **THE DEFENDANT:**  I do, yes.

6              **THE COURT:**  And it relates to the fact that, at

7   least in theory, Mr. Jeffress -- I'll just frame it

8   colloquially -- could potentially seek to curry favor or to

9   get a better deal for himself in his discussions with the

10  government in his case, at your expense.  Do you understand

11  that?

12             **THE DEFENDANT:**  I do, yes.

13             **THE COURT:**  And, again, I'm not saying that's what

14  is going on here --

15             **THE DEFENDANT:**  Right.

16             **THE COURT:**  -- but that's the question.  You are

17  aware of that, at least as a possibility, I assume?

18             **THE DEFENDANT:**  Yes, Your Honor.

19             **THE COURT:**  And you discussed the current state of

20  play with Mr. Jeffress?

21             **THE DEFENDANT:**  Yes, Your Honor.

22             **THE COURT:**  And with Mr. Miles?

23             **THE DEFENDANT:**  Yes, Your Honor.

24             **THE COURT:**  And you've consulted, I take it, with

25  Mr. O'Toole, on both these facts and the implications for

1    this case; is that right?

2            THE DEFENDANT:  Yes, Your Honor.

3            THE COURT:  And you've discussed with him, am I

4    right, your different options?

5            THE DEFENDANT:  Yes.

6            THE COURT:  And you understand that you have a

7    right to an attorney that doesn't have even a potential

8    conflict of interest.  Do you understand that?

9            THE DEFENDANT:  I do understand that, yes.

10            THE COURT:  And you've discussed with Mr. O'Toole,

11    I assume, whether it makes sense for you, to waive this

12    potential conflict and to proceed with Mr. Jeffress as your

13    lawyer; is that correct?

14            THE DEFENDANT:  Yes, Your Honor.

15            THE COURT:  And Mr. O'Toole sort of previewed your

16    view here, but just to make sure, are you waiving any

17    potential conflict that Mr. Jeffress would have?

18            THE DEFENDANT:  Yes, I am, Your Honor.

19            THE COURT:  And you are doing so knowingly and

20    intentionally in this case?

21            THE DEFENDANT:  I am.

22            THE COURT:  Any other questions the government

23    thinks I should ask on this topic?

24            MR. COURTNEY:  No, Your Honor.

25            THE COURT:  Okay.  Thank you.

1          So, as before, I conclude, based on this colloquy,

2     advice of conflicts counsel, and the like, that

3     Mr. Johnson's waiver of any potential conflict that

4     Mr. Jeffress might have here, is knowing, voluntary and with

5     advice of counsel and is accepted.

6          So, Mr. O'Toole, thank you, again.

7          **MR. O'TOOLE:**  I think you are right, Your Honor.

8     You said it correctly.

9          **THE COURT:**  Thank you and you may be seated.

10          So now that Mr. Jeffress is still with us, let's

11     proceed to the plea question.

12          Mr. Courtney -- yes, Mr. O'Toole, you may be

13     excused.  Thank you for your time again.

14          Mr. Courtney, do you want to outline for the

15     record the situation with respect to the plea offer the

16     government has tendered and we can ensure the defendant is

17     so rejecting it and doing so knowingly and voluntarily.

18          **MR. COURTNEY:**  Yes, Your Honor.  Thank you.

19          I had written a letter dated January 6th, 2024,

20     that I had sent to Mr. Jeffress and Mr. Miles.  It's filed

21     on the docket as document number 106.  I am not going to

22     read the entire letter, but it does lay out the history.

23     And I trust that they've reviewed it and gone over it with

24     Mr. Johnson.

25          Essentially, the initial plea offer that was

1    extended in this case was to one count of possession of

2    child pornography, and the guidelines under the original

3    plea offer was 97 to 121 months imprisonment, with no

4    mandatory minimum term of imprisonment.  That offer was

5    originally extended in 2022, and it was extended several

6    times and was ultimately revoked by the government in July

7    of 2023.

8            After the superseding indictment issued in

9    December, the government re-extended the same offer.  There

10   was an attempt to negotiate a plea.  The government agreed

11   to make a concession on a guidelines issue, which resulted

12   in a reduction of the guidelines range to 78 to 97 months

13   imprisonment, down from 97 to 121 months imprisonment,

14   again, with no mandatory minimum.  It's our understanding

15   that that offer has been rejected.

16           We've estimated Mr. Johnson's exposure at trial to

17   be, if convicted, of one of the lead counts to be 210 to 262

18   months imprisonment, under the sentencing guidelines, with a

19   five-year mandatory minimum term of imprisonment.

20           We've also separately informed Mr. Miles and

21   Mr. Jeffress that we are likely to obtain another

22   superseding indictment in early February.  That would not,

23   in our estimate, affect the sentencing exposure.

24           **THE COURT:**  Okay.  Thank you.

25           Mr. Jeffress.  Mr. Miles.

1          Mr. Miles, have you shared with Mr. Johnson all of

2    the plea offers that have been extended to him, including

3    the most recent one?

4          **MR. MILES:**  Yes, we have.

5          **THE COURT:**  Have you shared with Mr. Johnson the

6    letter that Mr. Courtney identified that was filed, the

7    January 6th, 2024 letter from the government?

8          **MR. MILES:**  Yes, the plea offer dated January 6th,

9    2024.  We have shared that with Mr. Johnson.

10          **THE COURT:**  And, in your view, at least, has

11    Mr. Johnson had the opportunity to explore with you with

12    sufficient time whether and to what extent -- I'm sorry.  I

13    guess, really, whether to accept the plea offer.

14          **MR. MILES:**  He has.

15          **THE COURT:**  First of all, has he determined to

16    reject the plea offer?

17          **MR. MILES:**  He is rejecting the plea offer,

18    Your Honor.

19          **THE COURT:**  And is he doing so knowingly and

20    voluntarily and with the input of counsel?

21          **MR. MILES:**  Yes.

22          **THE COURT:**  In your view, does he understand that

23    his exposure, if convicted at trial, might be substantially

24    greater than his exposure if he were to enter the plea as

25    offered by the government?

1      **MR. MILES:**  Yes, he understands.

2          **THE COURT:**  Mr. Johnson, why don't you come up

3      again.

4          So a similar set of questions that I asked

5      earlier.  Have you had an opportunity to discuss with

6      Mr. Miles and Mr. Jeffress the most recent offer from the

7      government?

8          **THE DEFENDANT:**  Yes, Your Honor.

9          **THE COURT:**  Do you understand, as I just asked

10     Mr. Miles and as the government articulated, at least your

11     potential exposure, if you don't accept the plea offer,

12     could substantially exceed your exposure, if you do accept

13     the plea offer?

14         **THE DEFENDANT:**  Yes, Your Honor.

15         **THE COURT:**  Have you discussed and explored with

16     counsel the different possible outcomes that could result in

17     this case, if you were to go to trial?

18         **THE DEFENDANT:**  Yes, Your Honor.

19         **THE COURT:**  Have you had sufficient time to

20     consider the plea offer?

21         **THE DEFENDANT:**  Yes, Your Honor.

22         **THE COURT:**  And is it your judgment today, perhaps

23     before, but to confirm it on the record here, that you would

24     like to reject the government's plea offer?

25         **THE DEFENDANT:**  Yes, Your Honor.

1          **THE COURT:**  Do you understand that that means we

2    would be setting this case, perhaps after a superseding

3    indictment is filed, for trial in this matter?

4          **THE DEFENDANT:**  Yes, Your Honor.

5          **THE COURT:**  And do you understand that if the

6    government does file a superseding indictment, that would

7    include adding additional charges in this case?

8          **THE DEFENDANT:**  Yes, Your Honor.

9          **THE COURT:**  And, again, you've had an opportunity

10   to discuss the fact that there may be a superseding

11   indictment and its affect on this case with Mr. Miles and

12   Mr. Jeffress?

13         **THE DEFENDANT:**  Yes, Your Honor.

14         **THE COURT:**  And you would still like to reject the

15   plea in this matter?

16         **THE DEFENDANT:**  Yes.

17         **THE COURT:**  And I think you probably already

18   implicitly said this, and if you didn't, forgive me, but are

19   you rejecting the plea offer, taking into consideration the

20   advice that you've been provided by your lawyers?

21         **THE DEFENDANT:**  Yes, Your Honor.

22         **THE COURT:**  Okay.  Anything else the government

23   believes I should ask?

24         **MR. COURTNEY:**  I didn't say this explicitly today

25   but it's in the letter.  If the Court could ask if

1    Mr. Johnson understands that it's the government's position

2    that there will be no re-extension of the possession plea

3    offer.  We will not be re-extending the plea offer.

4              **THE COURT:**  You will not be re-offering the

5    rejected plea offer, is what you mean.

6              **MR. COURTNEY:**  I want to make very clear.

7              **THE COURT:**  It's not re-extending.

8              **MR. COURTNEY:**  We will not be extending that offer

9    again.

10             **THE COURT:**  Got it.  Yes.

11             Mr. Johnson, just so we are clear, assuming you

12   continue to reject the plea offer -- and I'm hearing that's

13   exactly what you are intending to do here -- what the

14   government wants me to make clear is that it's not going to

15   extend that plea offer to you again in the future.  Do you

16   understand that?

17             **THE DEFENDANT:**  I do understand that.

18             **THE COURT:**  Okay.  Anything else, Mr. Courtney

19   from your perspective?

20             **MR. COURTNEY:**  No.  Thank you, Your Honor.

21             **THE COURT:**  Anything you'd like to add, Mr. Miles?

22             **MR. MILES:**  No.  Thank you, Your Honor.

23             **THE COURT:**  Mr. Johnson, thank you.

24             It seems to me we have the counsel we are going to

25   have.  We have no plea offer that's been accepted.  We're

1    back on track.  We are going to have a superseding

2    indictment?

3              **MR. COURTNEY:**  That's what we anticipate, yes.

4              **THE COURT:**  When do you think that would be by?

5              **MR. COURTNEY:**  We have grand jury time booked on

6    February 8th.

7              **THE COURT:**  I mean, it seems to me that in light

8    of all of that, this case is going to trial.  So is it the

9    government's position that I should set a trial date today

10   or should I wait to see after the grand jury acts, whether

11   we have a superseding indictment?

12             **MR. COURTNEY:**  At the last hearing we set an April

13   8th date, at least tentatively.

14             **THE COURT:**  Oh, okay.

15             **MR. COURTNEY:**  So another item we would like to

16   address today is the pretrial scheduling order.

17             **THE COURT:**  My apologies.  When I look at my

18   calendar on Outlook, it's too full of trials at the moment,

19   and it's actually not the number one listed on April 8th at

20   the moment.

21             **MR. MILES:**  We recall that very well when we tried

22   to schedule this date, Your Honor.

23             **THE COURT:**  Sorry about that.

24             **MR. MILES:**  No worries.

25             **THE COURT:**  So why don't we have the government

1      come forward, Mr. Miles.

2              What would the government like to raise about the

3      current schedule?

4              **MR. COURTNEY:**  So this is the third schedule that

5      we've proposed.  We mostly came to an agreement on all of

6      the most important deadlines.  There is a disagreement as to

7      two items.  One is Paragraph 6, which is the date by which

8      the government is encouraged to make its production of

9      *Jencks*.  We would like that to be on March 15th, which is 21

10     days before trial, consistent with the prior order and

11     proposal before that.  The defense would like that

12     information on February 25th, before it is due to file any

13     additional motions.  The government has articulated that the

14     most substantive *Jencks* materials warrant applications, and

15     affidavits have been disclosed long ago.

16             The second item is in Paragraphs 7, Subsection (d)

17     and (e) and Paragraph 8.  The defense has now taken the

18     position that it does not want to provide a list of

19     witnesses and exhibits in advance of trial.  And the

20     government's position is that that should be reciprocal,

21     which appears to be the standard practice in this court.

22             **THE COURT:**  Thank you.  Mr. Miles?

23             **MR. MILES:**  Yes, Your Honor.  With regard to the

24     first matter, the *Jencks* disclosures, our reason for wanting

25     February 25th versus a March 15th date is primarily because

1    if the Court adopts this proposed order, we asked that

2    pretrial motions and motions in limine be filed by March

3    1st.  We think it would be very important and helpful and

4    useful to have had those disclosures made to us, you know,

5    about a week or so in advance, so that we can file our

6    motions.

7              **THE COURT:**  Right.

8              **MR. MILES:**  That's pretty clear.

9              **THE COURT:**  I understand.  I understand the point.

10             **MR. MILES:**  The second point, on the witnesses and

11   exhibit lists, Your Honor.  Frankly, it's been my experience

12   that the courts have, you know, over the course of many

13   years of practicing here, have been willing to accommodate

14   defense counsel and the defense because there are different

15   issues, burdens of proof, and things of that matter.  We

16   have different rights.  We are not treated, you know,

17   equally in the trial context, that the courts are willing to

18   accommodate our wishes and desires not to have to disclose

19   our witnesses or exhibits to the government before trial.

20             So for that reason we think the Court --

21             **THE COURT:**  In my experience, sometimes pretrial

22   scheduling orders just get entered where the defendant has

23   an obligation to disclose that information around the same

24   time as the government, perhaps at the same time, but it's

25   just consented to.  Every once in a while the defendant

1    takes the position that it's inappropriate to require that

2    that happen so early.  What I've always wondered is, Is

3    there a substantive argument for not requiring the

4    disclosure as early as the government would like it?  Or is

5    it just, We don't have a burden.  It's not fair?

6              Is there a constitutional or procedural argument?

7         **MR. MILES:**  Your Honor, at the moment, It's not

8    fair, is a substantive reason, a very important reason.  I

9    have not -- I wasn't prepared to address this issue today.

10   So if I could look into it further and, perhaps, I could

11   find some authority.  I don't know if Mr. Jeffress knows of

12   any.

13        (Discussion off the record between defense counsel.)

14        **MR. MILES:**  Your Honor, I first want to note that

15   we have an expert witness that we have already disclosed to

16   them.  We haven't done the formal expert notice where they

17   have her CV and all of that.  In the proposed order we have

18   a schedule of doing that, but they have been made aware of

19   her.

20             One issue is that we don't have a right to call

21   any witnesses.  It clues them into our defense who our

22   witnesses may be, whether or not we are even going to call

23   any witnesses.

24        **THE COURT:**  No, I understand those statements are

25   all true.  And the question in my mind is, What's the

1    argument in light of, perhaps, the criminal rules or the

2    civil rules -- sorry -- the civil rules or local rules

3    regarding discovery or disclosures?  What's the rule for

4    arguing that, notwithstanding those, the defendant should be

5    relieved of disclosure obligations?

6         **MR. MILES:**  Well, certainly -- unless I'm

7    mistaken -- I don't believe the Rules of Criminal Procedure

8    or local rules obligate the defense to disclose witnesses as

9    early as this.  What we are asking for is not inconsistent

10   with the rules.  I don't believe the rules speak to this

11   either way.

12        **THE COURT:**  Right.

13        **MR. MILES:**  Again --

14        **THE COURT:**  I think there is a reciprocal, that

15   this might not be reciprocal discovery, in the sense that

16   sometimes that term is used.

17        **MR. MILES:**  Right.

18        **THE COURT:**  Mr. Courtney did use the word

19   "reciprocal".

20        **MR. MILES:**  Interestingly, on that point -- oh --

21        **THE COURT:**  No.  Go ahead.  I was telling

22   Mr. Courtney to hold for a second.

23        **MR. MILES:**  The issue of "reciprocal discovery",

24   with regard to expert notice, for example, that rule does

25   obligate the government to disclose first --

1          **THE COURT:**  Yes.

2          **MR. MILES:**  -- not at the same time.  And then

3     after the government discloses who their expert will be, we

4     have an opportunity to review and think about what we are

5     going to do.  And if we have an expert witness then we

6     disclose after.  So that rule suggests that it does not make

7     sense to have the parties disclose, in a criminal case, at

8     the same time.

9          **THE COURT:**  In your view, when should a defendant

10    disclose the defendant's witnesses and trial exhibits?

11         **MR. MILES:**  In our view, Your Honor, we would say

12    the day of trial.

13         **THE COURT:**  The day of trial or the day of the

14    defense case?

15         **MR. MILES:**  The day of the defense case would be

16    our preference.

17         **THE COURT:**  I'm sure it is your preference.  What

18    is your principle position that supports that view.

19         **MR. MILES:**  The principle position is when we

20    present our defense, it's based on what the government's

21    case is.  As the Court can imagine, our defense can change,

22    alter, vary --

23         **THE COURT:**  Of course.

24         **MR. MILES:**  -- depending on the government's case.

25    And we don't even have to put on a case, as the Court knows.

1    So it's not until the government presents its evidence, that

2    we know precisely what witnesses we are going to call, what

3    our defense will be, and it's at that time that we believe

4    we should disclose our witnesses and exhibit list.

5        **THE COURT:**  Understood.  Thank you, Mr. Miles.

6        Mr. Courtney, do you want to respond briefly?

7        **MR. COURTNEY:**  Yeah.  I would just note I don't

8    think that the rules or statutes or the constitution really

9    speak to this issue but they also don't impose on the

10   government any obligation to reveal any of its witnesses or

11   exhibits before trial.

12       And I think part of the reason that all of this is

13   done in advance, at least in this courthouse, is to flesh

14   out objections and issues before the trial so that we are

15   not bogged down with fights over the admissibility of

16   exhibits and whether things are proper, et cetera, in the

17   middle of trial.  The government, certainly, isn't in the

18   position of trying to sandbag anybody.

19       But if we are really just looking at how this

20   operates, and there is no obligation that anybody reveal

21   anything about their trial strategy before the trial begins,

22   so we would just ask, in the interest of the trial running

23   smoothly, that these materials be reciprocally -- my word,

24   not coming from a rule -- for this context disclosed prior

25   to the trial.

1          Obviously, with *Jencks*, under the rule, it's not

2    required to be disclosed until after the witness testifies.

3    That would be, of course, a nightmare and just inject a lot

4    of delay into the trial.  So we'd ask that that be the 24

5    days that we had previously agreed to.

6          **THE COURT:**  Fair enough.

7          I understand the positions, of course.  I'll enter

8    the pretrial scheduling order either today or tomorrow.  And

9    I'll just sort through the parties' positions, and you'll

10   see that in the order that we enter, and the parties will

11   comply with it.  Okay?

12         Any other topics we should discuss today now that

13   we are going forward?  Mr. Courtney?

14         **MS. BOND:**  No, Your Honor.  Thank you.

15         **THE COURT:**  Mr. Miles?

16         **MR. MILES:**  No, Your Honor.  Thank you.

17         **THE COURT:**  I'll see you -- well, before then, I'm

18   sure, but April 8th.

19       (Proceedings concluded at 3:29 p.m.)

20

21

22

23

24

25

1                    **C E R T I F I C A T E**

2

3            I, **Lorraine T. Herman, Official Court Reporter,**

4    certify that the foregoing is a true and correct transcript

5    of the record of proceedings in the above-entitled matter.

6

7

8

9    _____May 15, 2024_____    ___/s/__Lorraine T. Herman____
10              **DATE**                **Lorraine T. Herman**

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25