## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

UNITED STATES OF AMERICA,

    v.

STEPHEN JOHNSON,

      *Defendant*.

Criminal Action No. 1:22-cr-176 (CJN)

## **ORDER**

Following a five-day trial (and three days of deliberation), a jury convicted Stephen Johnson of five counts of transportation of child pornography, in violation of 18 U.S.C. § 2252(a)(1) and (b)(1), and one count of possession of child pornography, in violation of 18 U.S.C. § 2252(a)(4)(B) and (b)(2). *See* ECF No. 166; 4/17/2024 Tr. at 1597-99. Johnson moves for a new trial, raising arguments that the Court previously rejected. *See* Johnson Mot. for New Tr. ("Johnson Br."), ECF No. 179. The Court denies that motion.

### **A.**

Prior to trial, Johnson moved to suppress evidence from his digital devices and Google account. Following extensive briefing, *see* ECF Nos. 82, 84, 94, 99, 128, 133-34 & 136, a motions hearing, *see* 3/21/2024 Tr., and an evidentiary hearing, *see* 4/1/2024 Tr., the Court denied those motions and explained in detail its reasoning, *see* 4/2/2024 Tr. at 3-14, 16-17. The Court has reviewed Johnson's more recent filings on the topic and concludes that he has provided no new legal or factual bases that cause the Court to reconsider its prior decisions.

### **B.**

Johnson also contends that certain evidence should not have been admitted at trial.

1.      Johnson first argues that the Court improperly admitted evidence that should have been excluded under Federal Rules of Evidence 404(b) and 403.  Johnson Br. at 36.  In particular, Johnson takes issue with the admission of evidence (1) that Johnson visited a Dropbox folder labeled "black teens and underage thots" ten times, (2) that Johnson belonged to Telegram groups advertising child pornography and that his phone contained child sexual abuse materials (CSAM) from those Telegram groups, and (3) that Johnson was a member of shared Google Photo albums titled "13-17 lesbian cp," "CINCITY PYT," and "pyt videos."  *Id.* at 36-42.

All of that evidence was properly admitted.  Generally, all relevant evidence is admissible.  *See* Fed. R. Evid. 402.  Rule 404(b) carves out an exception for evidence of "other crimes, wrongs, or acts" if introduced to prove a defendant's character, but such evidence is admissible if it is introduced for non-propensity purposes.  And under Rule 403, evidence is inadmissible if the danger of "unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence" stemming from admission "substantially outweigh[s]" the evidence's probative value.

The Dropbox, Telegram, and Google Photos evidence were admitted for non-propensity purposes—to demonstrate Johnson's intent, knowledge, and absence of mistake in possessing and uploading the charged materials.  *See* Fed. R. Evid. 404(b)(2) (listing permitted uses of evidence about other wrongs).  This evidence went to an issue at the trial:  Did Johnson accidentally download (and ultimately upload) the illegal child pornography while trying to access legal adult pornography?  Or did he do so intentionally, with knowledge of what was in the files he downloaded and uploaded?

Johnson wanted to tell a narrow story, focused only on the conduct for which he was charged—that he had one or two accidental brushes with child pornography.  The government

2

wanted to provide the jury with a fuller picture—that Johnson repeatedly found himself in contact with child pornography, and therefore acted with intention when it came to the charged conduct.

The government had a right to present that broader story to the jury, especially given Johnson's choice to put his accident theory front and center in the trial. *See Old Chief v. United States*, 519 U.S. 172, 187-89 (1997). A reasonable juror, when told that a defendant claims to have accidentally interacted with child pornography, might ask "has he done it before?" The government was entitled to proffer evidence suggesting that he had. Indeed, if it had failed to do so, the jury might "draw[] a negative inference against" the government and assume that there was no evidence that Johnson had other encounters with child pornography. *Id.* at 188.

No rule forces the government to live with such a result. Under Rule 404(b), this evidence was introduced for non-propensity purposes—to disprove Johnson's accident theory.[1] And the evidence had significant probative value, more than enough to survive 403 balancing. Regardless of whether Johnson accessed the Dropbox folder on different dates than he accessed the materials for which he was charged, the fact that, on more than one occasion, Johnson accessed a folder entitled "black teens and underage thots" was highly relevant to an assessment of his accident defense. Similarly, his presence in Telegram groups and Google Photos albums was relevant to whether his possession and uploading of the charged child pornography was accidental.[2]

---

[1] It is also "generally accepted in this Circuit and elsewhere that evidence of a defendant's sexual attraction to children (or teenagers) is probative of the specific intent element of criminal statutes involving sexual activity with minors," such that this type of evidence generally survives 404(b) challenges. *United States v. Lieu*, 298 F. Supp. 3d 32, 52 (D.D.C. 2018) (cleaned up).

[2] Evidence of other crimes or bad acts can be introduced only if "the evidence is sufficient to support a jury finding that the defendant committed the other crime or act." *United States v. Bowie*, 232 F.3d 923, 930 (D.C. Cir. 2000). Johnson argues that the government did not provide sufficient evidence that he intentionally joined the Telegram groups and Google Photos albums. *See* Johnson Reply at 21, ECF No. 183. But that argument misses the point of that evidence. The government was not trying to prove that *every* interaction Johnson had with child pornography was intentional. Rather, it introduced the evidence to show that Johnson so frequently found himself in contact

Johnson's argument might have some force in a different case, such as one revolving around whether the pornographic materials depicted minors. But one of the central issues in this trial was Johnson's *mens rea*—that is, whether his possession and uploading of child pornography was accidental or intentional—and evidence rebutting the possibility that his conduct was unintentional was probative enough to outweigh any concerns about unfair prejudice or cumulative presentation of evidence.[3]

Also eliminating concerns about unfair prejudice is the Court's instruction reminding the jury that "Johnson is not on trial for any act or any conduct not specifically charged in the indictment." Final Jury Instructions at 22, ECF No. 169. Jurors are, of course, presumed to follow such an instruction. *See infra* p. 8–9.

2. Johnson also contends that evidence of the presence of the Tor browser on his computer should have been excluded "as irrelevant and/or more prejudicial than probative." Johnson Br. at 42. But Johnson put the Tor issue on the table, making the government's evidence sufficiently probative to satisfy 403 balancing.

Before trial, the government stated that it did not intend to present evidence that the Tor browser (a browser which can be used to access the dark web) was on Johnson's computer. At

---

with child pornography as to make it less likely that that contact in general—and the charged conduct in particular—was accidental. Thus, the government's burden was to show that Johnson was in the groups and albums, not that he necessarily joined them on purpose. It easily met that burden.

[3] Johnson's concerns of unfair prejudice—that the jury might seek to punish Johnson for unindicted bad acts—are muted here, where the jury convicted Johnson of only those counts of transportation for which the government presented the best and clearest evidence. Government Exhibit 412A showed that five files had been saved and played on Johnson's computer prior to being uploaded to his Google Drive. Those were the only five files that the jury convicted Johnson of transporting. If the jury wanted to punish Johnson for his other bad acts, it might have convicted him across the board, or at least not been so discerning in acquitting him on the ten counts supported by less evidence.

trial, however, Johnson put the dark web, and Tor in particular, at issue.  In his opening, defense counsel stated to the jury that "[t]he main website here is not from the dark web.  It is not from Tor or anything like that."  4/9/24 Tr. at 309.  And defense counsel engaged in the following colloquy while cross examining FBI Special Agent Laura Calvillo:

> Mr. Jeffress:     And, just to be clear, there are websites out there that specifically cater to child pornography. Correct?
>
> SA Calvillo:     Mostly on – nowadays, on the dark net. But in the past there have been, yes.
>
> Mr. Jeffress:     That's right. Most of them are on the dark web. Correct?
>
> SA Calvillo:     Correct.
>
> Mr. Jeffress:     And they are specifically catered to child pornography. They are not, you know, public websites that may have child pornography in them. Correct?
>
> SA Calvillo:      Correct.
>
> Mr. Jeffress:     And if someone wants to find child pornography, all they need to do is go to the dark web, and they can go to a website that's exclusively all about this; isn't that right?
>
> SA Calvillo:     They can. I don't see that much in our investigations, but they can.
>
> Mr. Jeffress:     You don't see any dark web investigations?
>
> SA Calvillo:     In the users that I've seen, the majority of them are on chats or other ways of getting the links. On occasion, we see the Tor, as in the The Onion Router, but –

*Id.* at 467.

Johnson thus implied (both through his opening and his cross-examination) that a significant portion of child pornography is found on the dark web, using specific browsers, and that Johnson did not use the dark web or such browsers.  As the Court put it at the time, Johnson had essentially argued to the jury that "it is more likely that a mistake was made here or it's less

likely that there is *mens rea* when the government only has evidence that Mr. Johnson was using traditional Internet sites to access CSAM . . . . [l]eaving the impression, I think, that . . . he uses only such sites." 4/10/24 Tr. at 570:9-13. This created the risk that the jury would be left with a partial, and misleading, picture, believing that the government was unable to find evidence indicating that Johnson had the Tor browser or accessed the dark web. As a result, the Court explained, "the government's evidence as to Tor [had become] both more probative than it was before and less prejudicial than it would have been because of [defense counsel's] line of questioning." 4/10/24 Tr. at 570:15-22. The Court maintains that view: The evidence had significant probative value, particularly given the need to correct the implication that Johnson had (intentionally or not) created in his opening and cross-examination, and that probative value outweighed any 403 concerns.

## C.

Johnson also seeks a new trial based on alleged errors that occurred after the case was submitted to the jury.

1.      Johnson first argues that a new trial is necessary because the jury had access to both sides' complete exhibit lists during its deliberations. In particular, during the middle of the jury's deliberation, the Court learned that (contrary to the Court's normal practice) the jury had been given a copy of each party's exhibit list. Those lists included a short description of each potential exhibit (whether admitted into evidence or not). The descriptions of the exhibits that had not been admitted were redacted with a black marker, but, as the Court found at the time, it was "possible that some of the redacted [descriptions] could be viewed, if someone wanted to" try to do so.

4/16/24 Tr. at 1340:15-21.[4]  Many of those redacted descriptions were of meaningless phrases (such as photographs labelled "DSC_0093," "DSC_0094," "DSC_0097," and "DSC_0098"); others described the material in wholly objective terms (such as "Lenovo Yoga laptop Shell Bags").  ECF No. 161.

Johnson focuses on one entry on the government's exhibit list in particular: "October 7, 2021, Interview of Stephen Johnson."  Even assuming that the jury could and did read this item, the Court concludes that a new trial is not warranted.  This description was, like others, objective; it did not say "October 7, 2021, *Confession* of Stephen Johnson."  Johnson argues that the exhibit was found on the government's list, so the jurors might have "conclude[d] that the contents of the statement were inculpatory."  Johnson Br. at 35.  The more natural inference, however, would have been that the interview did not contain anything inculpatory because otherwise the government would have attempted to use it.  It was also no secret that the government had talked with Johnson. Defense counsel elicited testimony at trial that "Johnson gave the passcode to [his] Lenovo computer [to law enforcement] the very day he was arrested."  4/10/2024 Tr. at 675:11-13.  Further, it seems unlikely that it would have been grounds for a new trial had the government attempted to introduce the video into evidence by asking a law-enforcement witness questions about the video in front of the jury.  The exhibit list's description of Johnson's custodial interview was more neutral than what a witness's testimony might have been in connection with an attempt to lay foundation.

Changing tack, Johnson argues that the mere fact that the jury could see that a higher proportion of entries on Johnson's exhibit list was crossed out than on the government's list would leave "jurors with the impression, even implicitly, that the government's case was stronger than it

---

[4] For admitted exhibits, the lists also contained the courtroom deputy's annotations about when each exhibit was admitted and through which witness the exhibit was introduced.

actually was, and/or that defense counsel had doubts about the strength of their proposed evidence." Johnson Br. at 35.  This is pure speculation.  To the extent jurors read into this at all, they may well have thought that defense counsel felt they didn't need to introduce further evidence because the government's case was weak and Johnson's presented evidence was strong.

In any event, the Court gave the jury a curative instruction that, together with the other instructions the Court gave throughout the trial, reduces the risk that jurors drew an improper inference from the exhibit lists.  With respect to the exhibit lists specifically, the Court instructed that the jury that the "*lists are not themselves evidence, and you should not weigh anything in those documents, including their length, as evidence in this case.  Furthermore, the lightly redacted or the drawn-through entries concerned exhibits never entered into evidence, so you should disregard those entirely as well.  You must not consider either of the exhibit lists in your deliberations.*" 4/16/2024 Tr. at 1352-53 (emphasis added).   More generally, the Court instructed the jury that it "may consider only the evidence properly admitted in this trial," which consists of "the sworn testimony of the witnesses, the exhibits that were admitted into evidence and the facts and testimony stipulated to by the parties."  Final Jury Instructions at 6.  The Court similarly told the jury it "should determine the facts solely from a fair consideration of the evidence."  Final Jury Instructions at 4.  And it instructed that any "exhibits as to which I have sustained an objection or that I ordered stricken are not evidence, and you must not consider them in your deliberations."  Final Jury Instructions at 14.

"Our legal system presumes" "that jurors can be relied upon to follow the trial judge's instructions." *Samia v. United States*, 599 U.S. 635, 646 (2023).  If jurors can be trusted to follow instructions when it comes to far more probative, far more potentially damaging, and far more difficult to compartmentalize evidence—such as an instruction to consider a defendant's

statements procured via a *Miranda* violation only for impeachment purposes and not as evidence of substantive guilt, *see Harris v. New York*, 401 U.S. 222, 223-26 (1971)—then the instruction to disregard the exhibit lists here suffices too.

2.      Johnson also argues that a new trial is warranted because the Court instructed the jury to continue deliberating after a post-verdict jury poll revealed a lack of unanimity.

a.      Here's what happened:  On April 17, 2024, the jury indicated that it had reached a unanimous verdict.  4/17/24 Tr. at 1558-59.  The foreperson read the verdict—which found Johnson guilty on the possession count as well as on six of the transportation counts, but not guilty as to the other counts—in open court.  *Id.* at 1559-62.  As the foreperson did so, members of the defendant's family (who were in the public seating area) loudly shouted "no" repeatedly, and one person yelled "I hope you can sleep at night" at the jury.  *Id.* at 1568, 1570.  Johnson then asked to poll the jurors.  *Id.* at 1563:8-9.  The courtroom deputy asked the jurors to individually indicate "if [his or her] individual verdict is the same as that just announced," starting with Juror 1.  *Id.* at 1563:12-16.  Juror 1 responded "No" and began sobbing.  *Id.* at 1563:16-17, 1568:15-17.  The polling continued and every other juror responded "Yes."  *Id.* at 1563-64.  Defense counsel initially stated that "in light of Juror No. 1's clear answer that that was not his verdict, this was not a unanimous verdict, and we would ask that they continue to deliberate," but then changed course and moved for a mistrial.  *Id.* at 1564-65.

The Court did not declare a mistrial, but instead directed the jury to continue deliberating and gave the following instruction:

> The goal here is not to force you to reach a verdict or to suggest in any way what your verdict should be.  Do not surrender honest conviction as to the weight or effect of evidence solely because of the opinion of your fellow jurors or for the mere purpose of returning a verdict.  But since you have not reached a unanimous verdict, please continue your deliberations.

*Id.* at 1581:5-12.

A couple of hours later, the jury again indicated that it had reached a unanimous verdict. This time, the Court cleared the courtroom to prevent further outburst; the foreperson announced the verdict, finding Johnson guilty on the possession count and five of the transportation counts, but not guilty as to all other counts; and the subsequent poll of the jury reflected that the jury was unanimous as to that verdict.  *See id.* at 1596-1601.

Johnson requested that Juror 1 be questioned outside the presence of the remaining jurors to "be sure that that is truly his verdict; that it was without coercion."  *Id.* at 1602:16-21.  The Court agreed, in order "to ensure [], outside the presence of the jury" that the verdict "is, in fact, his verdict." *Id.* at 1603:9-15.  In response to the Court's questions, Juror 1 agreed that the "verdict was [his] verdict," that he "agree[s] that the government proved the defendant guilty . . . [f]or the charges that [the jurors] all agreed upon," that the "verdict form . . . reflects [his] view of the proper verdict," and that "the evidence . . . establishes the defendant's guilt on every count the jury found him guilty of."  *Id.* at 1604-05.  The juror also volunteered that the case was difficult for him because "it's a very serious charge" and "a bad situation for everybody" and responded "yes" when the Court asked whether the "problem" he was having was because the case involved "a difficult subject and difficult charges."  *Id.*

As the Court summed up contemporaneously, Juror 1 "agreed entirely with the verdict," "agreed with the slightly different statement that the government had proved beyond a reasonable doubt Mr. Johnson's guilt[] o[n] each of the counts reflected in the guilty verdict," and agreed "that the reason for his emotional response and the difficulty he was having with this case was the nature of the charges and the difficult situation everyone finds themselves in." *Id.* at 1606.  Thus, the Court found, based on its observation of Juror 1's statements, that "the verdict has the

unanimous support of every juror and the polling response we saw earlier and his emotional reactions here are not because he believes the jury's verdict is incorrect or is not unanimous, but because he is suffering the emotional reaction to the difficulty of the topic, the videos and the like." *Id.* at 1607.

        b.      Johnson argues that the "Court erred when it resumed deliberations" after Juror 1 "openly disagreed with the verdicts" because doing so "created a substantial risk of juror coercion." Johnson Br. at 31. The Court disagrees.

        The record makes clear that the verdict was not the result of coercion. As noted above, the Court expressly instructed the jurors that they should not "surrender [their] honest conviction as to the weight or effect of evidence solely because of the opinion of [their] fellow jurors or for the mere purpose of returning a verdict." 4/17/24 Tr. at 1581:5-12. The jury deliberated for several hours before again returning a verdict. Then, outside the presence of the other jurors, Juror 1 stated expressly that he fully agreed with the verdict and that he believed the evidence demonstrated Johnson's guilt beyond a reasonable doubt on the counts for which he was convicted. And Juror 1 provided an explanation for his earlier hesitation and demeanor: They were a result of the emotional weight of the case—and understandably so, given the seriousness of the charges, the graphic and brutal nature of some of the evidence, and the emotional outbursts of Johnson's family as the verdict was being read. Based on Juror 1's statements and the Court's observation of his demeanor, the Court saw no indication that Juror 1 was coerced against his conscience into voting guilty on any count. *See United States v. Brooks*, 420 F.2d 1350, 1353 (D.C. Cir. 1969) (explaining that "the trial judge [has] a measure of discretion in assessing the impact of a dissenting vote during a jury poll," because "the trial judge is in a much better position . . . to determine whether a recalcitrant juror's eventual acquiescence in a verdict was in fact freely given").

Johnson argues (essentially) that there is coercion as a matter of law whenever there is a jury poll indicating an 11-1 split (as opposed to a situation where the court stops polling as soon as a lack of unanimity is revealed) based on one juror's "disagreement with the substance of the verdict." Johnson Br. at 32. He cites cases that, due to coercion concerns, disfavor a court inquiring into the numerical division among jurors when they may be deadlocked during deliberations. Johnson Br. at 31 (citing *Brasfield v. United States*, 272 U.S. 448, 450 (1926), and *United States v. Ligon*, 781 F. Supp. 1, 8 (D.D.C. 1991)). The question is whether that disfavor extends to polls to ensure juror unanimity after a verdict has been announced.

The Court of Appeals has held that it does not. As the Court of Appeals has put it, although "inqur[ing] what the numerical division among the jurors" mid-deliberation is "not to be sanctioned," "[a] jury poll, it is clear, stands on quite a different footing," even though it may exert "pressure toward conformity . . . because of its tendency to isolate the dissenting jurors." *United States v. Brooks*, 420 F.2d 1350, 1354 (D.C. Cir. 1969) (quoting *Brasfield*, 272 U.S. at 450). That distinction makes sense. There is little reason, other than imposing pressure on the jury, for a judge to ask about the numerical division of a jury during its deliberation. *See id.* at 1354. In contrast, there are legitimate reasons for polling the jury after it has reached its verdict: for one, such polls help ensure verdicts are truly unanimous, and for another, the judge must conduct one if requested under Federal Rule of Criminal Procedure 31(d).

Moreover, Rule 31(d) expressly authorizes continued deliberations after a post-verdict poll reveals the jury might not be unanimous: "If the poll reveals a lack of unanimity, the court may direct the jury to deliberate further or may declare a mistrial and discharge the jury." Johnson argues that once one juror has indicated that the verdict is not unanimous, it is error to continue polling. But Rule 31(d) states that the court "must . . . poll the jurors individually," suggesting

that the rule at least contemplates that every juror is polled.[5]  And if that poll reveals a lack of unanimity, the Court can *either* "declare a mistrial" *or* "direct the jury to deliberate further."

Of course, a court should not "direct the jury to deliberate further" when that would result in a coerced verdict.  But as explained above, there was no coercion here.  And given that the poll happened after the jury returned its first verdict, this is not a situation (unlike when there is a possible deadlock) where a poll might suggest that the judge is getting impatient with the pace of deliberations.[6]

*     *     *

Accordingly, it is **ORDERED** that Defendant's Motion for a New Trial, ECF No. 179, is **DENIED**.

      **IT IS SO ORDERED**.

DATE:  October 10, 2024

                                    CARL J. NICHOLS
                                    United States District Judge

---

[5] Whether or not a Court *must* poll every juror even though a lack of unanimity is revealed before reaching the last juror, it does not follow that a court *cannot* continue to poll as Johnson suggests. *See Brooks*, 420 F.2d at 1354; *see also, e.g.*, *United States v. Penniegraft*, 641 F.3d 566, 580 (4th Cir. 2011); *United States v. Gambino*, 951 F.2d 498, 501 (2d Cir. 1991).  This is especially so in this case, where defense counsel requested the poll and did not object to continuing the poll after the lack of unanimity was revealed.

[6] Johnson raises one final argument.  He argues that even if none of the issues he has raised individually warrants a new trial, their "cumulative effect" does.  Johnson Br. at 43.  The Court disagrees.  The only arguable error identified by Johnson is providing the jury with the parties' exhibit lists, and that error was not prejudicial.