**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| **UNITED STATES OF AMERICA** | |
| **v.** | **Case No. 22-CR-176 (CJN)** |
| **STEPHEN JOHNSON,** | |
| **Defendant.** | |

### GOVERNMENT'S MEMORANDUM IN AID OF SENTENCING

Following a five-day trial in April 2024, a jury convicted Defendant Stephen Johnson of five counts of transportation of child pornography, in violation of 18 U.S.C. § 2252(a)(1), (b)(1), and one count of possession of child pornography, in violation of 18 U.S.C. § 2252(a)(4)(B), (b)(2). The charges arose out of reports to the National Center and Missing Exploited Children that the defendant had uploaded hundreds of illegal child pornography files to his Google Drive account in the fall of 2020. The files largely depict the rape and sadistic sexual abuse of prepubescent girls. At trial, the defendant argued that he had accidentally obtained illegal child pornography while seeking out legal adult pornography. The evidence refuted his excuse. The evidence showed, among other things, that the defendant had accessed, downloaded, and viewed child pornography as early as April 2020; repeatedly visited a Dropbox folder called "Black teens and underage thots"; uploaded child pornography files to Google Drive; and—after he knew that Google had caught him—was a member of Telegram and Google Photos groups in which child pornography was being trafficked.

For reasons that follow, this Court should sentence the defendant to a guidelines term of **180 months' (15 years') imprisonment**, to be followed by ten years of supervised release. In support of its recommendation, the government respectfully submits this Memorandum.

## BACKGROUND

In September 2020, Google reported to the National Center for Missing and Exploited Children, or NCMEC, that a user had uploaded over two hundred files containing child pornography to the Google Drive account stephenjohnson1197@gmail.com. *See* Gov't Exs. 100-1 to 100-19. NCMEC forwarded the reports, called "CyberTips," to law enforcement. *See* 4/9/24 Tr. 346:18-23. After searching the defendant's Google account pursuant to a lawfully issued warrant, law enforcement obtained an arrest warrant for the defendant and a search warrant for the defendant's apartment. *See* 4/9/24 Tr. 379:20-23. The Federal Bureau of Investigation arrested the defendant and searched his apartment on October 7, 2021. *See* 4/9/24 Tr. 379:24-25.

As relevant to this trial, a federal grand jury returned a second superseding indictment charging the defendant with 15 counts of 18 U.S.C. § 2252(a)(1), (b)(1) (transportation of child pornography) and one count of 18 U.S.C. § 2252(a)(4)(B), (b)(2) (possession of child pornography). (ECF No. 110).

Trial began on April 9, 2024. The government's evidence showed that on September 21, 2020, and October 1, 2020, the defendant uploaded over two hundred child pornography files to Google drive. *See* Gov't Exs. 6, 100-1 to 100-19, 200-1 to 200-220. Some filenames were plainly indicative of child pornography, including:

- "lil black girl fucked by BBC.mp4" (Gov't Ex. 200-12);

- "Pthc Goldberg 10Y 2 Kleine Fotzen - Sonya (22.24).avi" (Gov't Ex. 200-135);

- "Pthc Goldberg 10Y Kleine Fotze - Unk (07.14).avi" (Gov't Ex. 200-136);

- (Children-sf-model) Pthc - 11Yo Black Girl Showing Off Her Pussy Aka - [!!! New !!!][USA][00.07.14] (2).avi (Gov't Ex. 200-173); and

- "[pthc] Goldberg - The Visitors (HiRes, 20m36s) ~ 2014 opva 9y 10y 11y 12y black preteen pedo lolitabay pussy.avi" (Gov't Ex. 200-174).

The evidence showed that the defendant had accessed child pornography using his Leonovo laptop as early as five months before the first reported uploads to Google Drive. It showed that he had viewed certain files using his web browser on April 27, 2020. *See* Gov't Ex. 400A. And it further showed that showed that he had opened a number of child pornography files using using the Microsoft Movies & TV application between April 27, 2020, and August 4, 2020, including the five files he was convicted of transporting in Counts One, Two, Five, Seven, and Eight of the second superseding indictment. *See* Gov't Ex. 412A.

| Summary of Jump List Showing Charged Files on Lenovo Desktop | | | |
|---|---|---|---|
| Potential App Name | Linked Path | Last Access Date/Time (Eastern Time) | Target File Created Date/Time (Eastern Time) |
| Microsoft Movies & TV | C:\Users\steph\Desktop\Courses\pyt trade\trade \2020 black pyt\black Shayla BACK IT UP 2.mp4 | 4/27/2020 2:37:48 PM | 4/27/2020 2:31:05 PM |
| Microsoft Movies & TV | C:\Users\steph\Desktop\Courses\pyt trade\trade \2020 black pyt\Pthc Goldberg 10Y Kleine Fotze - Unk (07.14).avi | 4/27/2020 2:39:01 PM | 4/27/2020 2:23:31 PM |
| Microsoft Movies & TV | C:\Users\steph\Desktop\Courses\pyt trade\trade \2020 black pyt\(Children-sf-model) Pthc - 11Yo Black Girl Showing Off Her Pussy Aka - [!!! New !!!][USA][00.07.14] (2).avi | 8/4/2020 12:26:54 PM | 4/27/2020 2:16:28 PM |
| Microsoft Movies & TV | C:\Users\steph\Desktop\Courses\pyt trade\trade \2020 black pyt\[pthc] Goldberg - The Visitors (HiRes, 20m36s) ~ 2014 opva 9y 10y 11y 12y black preteen pedo lolitabay pussy.avi | 8/4/2020 12:27:23 PM | 4/27/2020 4:19:35 PM |
| Microsoft Movies & TV | C:\Users\steph\Desktop\Courses\pyt trade\trade \2020 black pyt\1_4947301621999599675.mp4 | 8/4/2020 12:27:56 PM | 4/27/2020 4:18:58 PM |

Gov't Ex. 412A.

The defense argued that the defendant did not knowingly possess or upload child pornography, and that he had inadvertently downloaded it while seeking out legal adult pornography. *See* 4/9/24 Tr. 305:4-8, 306:3-4, 309:11-14, 311:5-12.

In response to this defense, the government introduced, and the Court admitted, additional evidence from the defendant's Google account and cellphone showing other times he had accessed

websites and groups with names indicative of child pornography.  For example, on three separate days between June 26, 2020, and July 2, 2020, the defendant accessed a Dropbox folder called "Black teens and underage thots" ten times.  *See* Gov't Ex. 400B.  This was approximately three months before the defendant uploaded child pornography to his Google Drive.  The defendant's cellphone also showed he was in multiple groups on both Telegram and Google Photos that advertised child pornography in 2021, well after Google had closed his account.  *See* Gov't Exs. 401E; 401G; 402B; 402C.  Some of the groups, like the Google Photos shared album "13-17 lesbian cp," were named in ways that clearly conveyed child pornography.  *See* Gov't Ex. 401E. The cellphone also showed that three images containing child pornography had been downloaded from Telegram.  *See* Gov't Ex. 401D.

The government also introduced evidence that, in the hours and days after Google notified the defendant it had closed his account, he conducted a number of Google searches that showed he knew why the account had been closed and that progressively demonstrated his consciousness of guilt.  The defendant began by searching for general information about Google accounts being disabled and then turned to searching for information about specific cases in which Google had reported its users for possessing child pornography.  The searches then progressed to more serious inquiries for information about when therapists are required to break confidentiality and confessing to a preacher.  In the midst of these searches, the defendant also Googled "private Tor search engine," indicating that he was looking for a dark web search engine that would conceal his online activity.  *See* Gov't Exs. 401B, 401I; 4/10/24 Tr. 653:9–667:6.

On April 17, 2024, the jury convicted the defendant of five counts of transportation of child pornography (Counts One, Two, Five, Seven, and Eight) and one count of possession of child pornography (Count Sixteen).  *See id.* at 1397:4–1400:2.  The transportation counts pertained to

five files that the government's evidence showed the defendant had (i) saved to his desktop and (ii) played on his computer prior to uploading them to his Google Drive.  *See* Gov't Ex. 412A.

A sentencing hearing is scheduled for November 1, 2024.  The government now respectfully submits this Memorandum in Aid of Sentencing.

## **LEGAL STANDARD**

Although the Sentencing Guidelines are advisory, under *United States v. Booker*, a sentencing court "must consult those Guidelines and take them into account when sentencing." 543 U.S. 220, 264 (2005); *United States v. Brown*, 892 F.3d 385, 399 (D.C. Cir. 2018).  The Supreme Court has noted that while the Guidelines provide "the starting point and the initial benchmark" for sentencing, the district court should consider all the § 3553(a) factors. *Gall v. United States*, 552 U.S. 38, 49–50 (2007).  The Guidelines' recommended sentencing range will ordinarily "reflect a rough approximation of sentences that might achieve § 3553(a)'s objectives." *Kimbrough v. United States*, 552 U.S. 85, 108–09 (2007).

The Section 3553(a) factors include the following:

> (1) the nature and circumstances of the offense and the history and characteristics of the defendant;
>
> (2) the need for the sentence imposed –
> > (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;
> > (B) to afford adequate deterrence to criminal conduct;
> > (C) to protect the public from further crimes of the defendant; and
> > (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner;
>
> (3) the kinds of sentences available;
>
> (4) the kinds of sentence and the sentencing range established for –

(A) the applicable category of offense committed by
the applicable category of defendant as set forth
in the guidelines –
(i) issued by the Sentencing Commission . . .;
and
(ii) that, . . . are in effect on the date
the defendant is sentenced; . . .

(5) any pertinent policy statement –
(A) issued by the Sentencing Commission . . . and
(B) that, . . . is in effect on the date the defendant is
sentenced.

(6) the need to avoid unwarranted sentence disparities among
defendants with similar records who have been found guilty of
similar conduct; and

(7) the need to provide restitution to any victims of the offense.

18 U.S.C. § 3553(a).

In addition to the Section 3553 factors, in child pornography cases the court should also

consider the reports prepared by the U.S. Sentencing Commission specifically addressing

sentencing in such cases. In 2012 and 2021, the U.S. Sentencing Commission published reports

to Congress analyzing federal sentences in both production and non-production child pornography

offenses. The reports recommend three categories of aggravating factors that courts should

consider when imposing sentences in non-production cases: content, community, and conduct. The

Commission further explained how these factors should affect a defendant's sentence:

The presence of aggravating factors from any of these three categories, even
without the presence of any aggravating factors from the other two categories,
warrants enhanced punishment depending on the degree that aggravating factors
from that category are present in a particular case. The presence of aggravating
factors from multiple categories generally would warrant a more severe penalty
than the presence of aggravating factors from a single category.

U.S. SENT'G COMM'N, FEDERAL CHILD PORNOGRAPHY OFFENSES at 321 (Dec. 2012)

(hereinafter, the "2012 Report").

*Content*

As outlined in the 2012 Report, this factor directs courts to evaluate the content of an offender's collection and behavior "in terms of volume, the types of sexual conduct depicted in the images, the ages of the victims depicted, and the extent to which an offender has organized, maintained, and protected his collection over time, including through the use of sophisticated technology." *Id.* at 320.

*Community*

This factor directs the Court to evaluate "the degree of an offender's engagement with other offenders — in particular, in an Internet 'community' devoted to child pornography and child sexual exploitation." 2012 Report at 320. The Commission distinguishes between impersonal file-sharing exchanges, which involve "anonymous, indiscriminate" open exchange and no two-way communication, versus "personal" distribution in closed groups, involving two-way communication concerning child pornography and child exploitation. *Id.* at 313–14, 324.

*Conduct*

The third factor asks courts to assess whether an offender "has a history of engaging in sexually abusive, exploitative, or predatory conduct in addition to his child pornography offense." 2012 Report at 320. Notably, the Commission recommends that, in addition to criminal offenses, courts consider "non-criminal acts of sexually deviant behavior" because such behavior also indicates sexual dangerousness. *Id.* at 325.

\*    \*    \*

The Court must impose a sentence of not less than 5 years' imprisonment. *See* 18 U.S.C. § 2252(b)(1). The Court must also impose a term of supervised release of not less than 5 years up to life. *See* 18 U.S.C. § 3583(k).

7

## SENTENCING GUIDELINES CALCULATION

While the Sentencing Guidelines are only advisory, the Court "shall consider" them before imposing sentence. 18 U.S.C. § 3553(a)(4). A sentencing court must therefore "begin all sentencing proceedings by correctly calculating the applicable Guidelines range." *United States v. Turner*, 21 F.4th 862, 864 (D.C. Cir. 2022) (quoting *United States v. Brown*, 892 F.3d 385, 399 (D.C. Cir. 2018) (per curiam)). "[T]he government bears the burden of proof in seeking sentencing enhancements under the Guidelines, but the defendant bears the burden in seeking sentencing reductions." *United States v. Keleta*, 552 F.3d 861, 866 (D.C. Cir. 2009). Facts relevant to sentencing must generally be proven by a preponderance of the evidence. *See United States v. Watts*, 519 U.S. 148, 156 (1997) (per curiam); Commentary to USSG §6A1.3.

The defendant has raised several objections to Probation's calculation of the guidelines. He submits that his total offense level is 28, yielding a guidelines range of 78 to 97 months' imprisonment. The defendant asserts that he is entitled to two-level reduction in his offense level because his conduct was limited to receipt, *see* USSG §2G2.2(b)(1), and that the specific offense characteristics for distribution, *see* USSG §2G2(b)(3), and for material portraying sadistic masochistic conduct or sexual abuse or exploitation of an infant or toddler, *see* USSG §2G2(b)(4), do not apply. The defendant also disputes the number of images for which he is responsible under USSG §2G2.2(b)(7).

The government previously took the position that the two-level enhancement for distribution under USSG §2G2.2(b)(3)(F) applied. Upon further consideration, the government agrees that there is an insufficient basis for application of that enhancement here. The defendant's objections are otherwise meritless and should be overruled.

**A. The Defendant Is Not Entitled to a Two-Level Reduction Under USSG §2G2.2(b)(1) Because, Having Been Convicted of Five Counts of Transportation of Child Pornography, His Conduct Plainly Was Not Limited to Receipt or Solicitation.**

The plain text of USSG §2G2.2(b)(1) makes clear that it has no application here. Where, as here, the base offense level is 22 under USSG §2G2.2(a)(2), a defendant is entitled to a two-level reduction if he can satisfy a two-pronged inquiry. First, the defendant's conduct must have been "limited to the receipt or solicitation of material involving the sexual exploitation of a minor." USSG §2G2.2(b)(1)(B). Second, the defendant must not have "intend[ed] to traffic in, or distribute, such material." USSG §2G2.2(b)(1)(C). The defendant cannot meet his burden.

Because the defendant was convicted of five counts of transportation of child pornography, his conduct went beyond—and thus was not limited to—receipt or solicitation, and he fails to qualify for the reduction at the first step of the inquiry. *See, e.g.*, *United States v. Fore*, 507 F.3d 412, 415 (6th Cir. 2007) (rejecting application of USSG §2G2.2(b)(1) where the defendant's "criminal conduct was not *limited* to the receipt or solicitation of pornographic materials, but also encompassed the transportation of materials involving the sexual exploitation of a minor in interstate commerce in violation of 18 U.S.C. § 2252(a)(1), an offense that is separate and distinct from, and goes beyond, the mere receipt or solicitation of pornography" and "further not[ing] that U.S.S.G. § 2G2.2(b)(1) is devoid of any language suggesting that the offense of transporting child pornography in interstate commerce otherwise qualifies for the two-level decrease in a defendant's offense level"); *accord United States v. Burgess*, 576 F.3d 1078, 1102 (10th Cir. 2009) (affirming district court's determination that "because Burgess' conduct included transportation of child pornography, not only receipt, he did not qualify for the reduction even though Burgess did not intend to distribute the material").

The defendant's reliance on *United States v. Chiccini*, No. 21-1036, 2022 WL 1024261, at

*1 (3d Cir. Apr. 6, 2022) (not precedential),[1] is misplaced. (*See* ECF No. 214 at 32). The Third Circuit panel's reasoning is not analytically sound. That case involved a defendant who uploaded child pornography to his Adobe Cloud account and pleaded guilty to only receipt and possession offenses, not transportation offenses. The panel acknowledged that defendants convicted of transportation of child pornography do not qualify for the reduction, *see id.* at *2 (citing *Fore*, 507 F.3d at 415–16), but held that, in Chiccini's case, "the facts of record d[id] not amount to transportation" because he did not share the material with others, *see id.* at *3. In reaching this erroneous conclusion, the panel appears to have conflated transportation with distribution. *See, e.g.*, *United States v. Fall*, 955 F.3d 363, 374 (4th Cir. 2020) ("Fall improperly conflates the offense of transportation with the offense of distribution. Transportation . . . does not require conveyance to another person."). Had the panel concluded that Chiccini did not *distribute* child pornography, that would have satisfied only the second prong of the inquiry, *see* USSG §2G2.2(b)(1)(C), but Chiccini would have failed to satisfy the first prong because offenses involving *transportation* of child pornography go beyond, and thus are not limited to, receipt or solicitation, *see* USSG §2G2.2(b)(1)(B); *accord Fore*, 507 F.3d at 415; *Burgess*, 576 F.3d at 1102. The panel found both prongs of the inquiry satisfied based on its flawed conclusion that Chiccini did not transport child pornography. *See id.* at *3. Where, as here, a defendant is convicted of transportation offenses, the Third Circuit panel's reasoning in *Chiccini* makes no sense.

Because the defendant's conduct was not limited to receipt or solicitation of child pornography, the reduction under USSG §2G2.2(b)(1) does not apply.

---

[1] In the Third Circuit, not precedential opinions do not constitute binding precedent because they are decided by the panel and do not circulate to the full court before they are issued. *See* 3d Cir. I.O.P. 5.7 (2023).

**B. The Four-Level Enhancement for Images Depicting Sadistic Conduct and Sexual Abuse or Exploitation of an Infant or Toddler Under USSG §2G2.2(b)(4) Applies Because the Defendant's Offenses Involved Such Images.**

The offenses involved depictions of both sadistic conduct and sexual abuse or exploitation of an infant or toddler, so the four-level enhancement under USSG §2G2.2(b)(4) applies.

The defendant's claim that the files pertaining to the counts of conviction do not involve such material is incorrect. The file that the defendant was convicted of transporting in Count Two— "black Shayla BACK IT UP 2.mp4," *see* Gov't Ex. 200-7—alone justifies the application of this enhancement. Special Agent Calvillo testified that this video depicts "a nude African American prepubescent female who is holding a toothbrush and is using the toothbrush as a vibrator on her vagina, and then later in the video a male hand also uses that same vibrator – or that same toothbrush on the child's vagina." 4/9/2024 Tr. 406:20–407:11. Courts have held that the penetration of prepubescent minors—including with foreign objects—is inherently violent and warrants application of the sadistic and masochistic conduct enhancement. *See, e.g.*, *United States v. Sanchez*, 30 F.4th 1063, 1075 (11th Cir. 2022) (affirming application of sadistic and masochistic conduct enhancement where defendant filmed child penetrating herself with a toothbrush because "[a]n objective viewer could reasonably find that it was painful and humiliating"); *United States v. Starr*, 533 F.3d 985, 1001–1002 (8th Cir. 2008) ("[G]iven the plain meaning of 'violence,' it is difficult to imagine that the sexual penetration with a foreign object of a minor female would not qualify as 'violence' even if self-inflicted." (quoting *United States v. Parker*, 267 F.3d 839, 849 (8th Cir. 2001))); *United States v. Hall*, 312 F.3d 1250, 1261–63 (11th Cir. 2002) (holding that images showing vaginal or anal penetration of a prepubescent minor by either an adult male or a foreign object is sadistic within the meaning of § 2G2.2(b)(3)); *United States v. Turchen*, 187 F.3d 735, 739 (7th Cir. 1999) (explaining that "sadistic and masochistic conduct includes sexual

gratification which is purposefully degrading and humiliating"). The file associated with Count Two plainly merits this enhancement.

In any event, the Court's determination of the applicable guidelines is not limited to the specific files that are associated with the counts of conviction. In calculating the sentencing guidelines, the "'[o]ffense' means the offense of conviction and all relevant conduct under §1B1.3." Application Note 1(I) to USSG §1B1.1. Relevant conduct includes "all acts or omissions committed . . . by the defendant . . . during the commission of the offense of conviction," USSG §1B1.3(a)(1)(A), and is not limited to the conduct charged in the indictment, *see, e.g.*, *United States v. Ignancio Munio*, 909 F.2d 436, 439 (11th Cir. 1990) ("[C]onduct not contained in the indictment may be considered at sentencing."). At trial, the government introduced evidence of hundreds of files the defendant possessed in his Google Drive account, including files that Google did not report to NCMEC and excise from the account. Some of these visual depictions portrayed the penetration of prepubescent girls and the sexual abuse and exploitation of infants and toddlers. *See, e.g.*, Gov't Ex. 200-197; 4/9/24 Tr. 419:22-23 (Special Agent Calivllo: "This is a video of a Caucasian infant or baby whose anus is being penetrated by an adult male penis.").

Because the case involves numerous visual depictions portraying both sadistic conduct and sexual abuse or exploitation of an infant or toddler, the four-level enhancement under USSG §2G2.2(b)(4) applies.

### C. The Number of Images Involved Far Exceeds 600, so the Five-Level Enhancement Under USSG §2G2.2(b)(7)(D) Applies.

The evidence at trial established that the defendant possessed hundreds of child pornography files in his Google Drive account. Because the guidelines count each video as 75 images, *see* Application Note 6(B)(ii) of the Commentary to USSG §2G2.2, the number of total images far exceeds 600, and the five-level enhancement under USSG §2G2.2(b)(7)(D) applies.

The defendant takes the position that the Court may consider only the files associated with the transportation counts of conviction and that the number of images is therefore 300,[2] resulting in a four-level enhancement under USSG §2G2.2(b)(7)(C). But at trial, the government introduced evidence that the defendant possessed a much larger number of videos. Although the jury also convicted the defendant of possession of child pornography in Count Sixteen, the defendant argues that the jury may have based the possession conviction only on the files associated with the transportation counts of conviction. That is something we will likely never know, but it is also immaterial here. The Court can consider all the files as relevant conduct under USSG §1B1.3.[3]

---

[2] The jury convicted the defendant of five counts of transportation of child pornography (Counts One, Two, Five, Seven, and Eight). Counts Five and Eight charged the upload of distinct digital files that appear to contain identical visual depictions. The Court previously denied the defendant's motion to dismiss one of these counts on multiplicity grounds. *See* 4/2/24 Tr. 22:12-17. The defendant now contends, without citation to any authority, that the two video files associated with Counts Five and Eight are to be counted only once, as one video file that equates to 75 images. The files associated with Counts Five and Eight are distinct files with different filenames. But even if the files were identical duplicates, courts have held that duplicate digital images are to be counted separately in determining the number of images. *See, e.g.*, *United States v. Price*, 711 F.3d 455, 459 (4th Cir. 2013) ("We reject any uniqueness requirement that Price tries to read into Section 2G2.2(b)(7) and hold that any image without regard to its originality should be counted when applying this enhancement so long as that image depicts child pornography and is relevant to the underlying conviction."); *United States v. McNerney*, 636 F.3d 772, 780 (6th Cir. 2011) (holding that "duplicate digital images, like duplicate hard copy images, should be counted separately for purposes of calculating a sentence enhancement pursuant to § 2G2.2(b)(7)"); *United States v. Sampson*, 606 F.3d 505, 510 (8th Cir. 2010) (holding that each video counts "regardless of whether or not it is a duplicate").

[3] This is true even considering new USSG §1B1.3(c), which is scheduled to take effect on the day of sentencing. Although the defendant was acquitted of certain transportation counts, the Court can consider all the child pornography evidence presented at trial—including those files associated with acquitted transportation counts—because the defendant was also convicted of possession of child pornography in Count Sixteen. *See* USSG §1B1.3(c) ("Relevant conduct does not include conduct for which the defendant was criminally charged and acquitted in federal court, *unless such conduct also establishes, in whole or in part, the instant offense of conviction*." (emphasis added)). New Application Note 10 of the Commentary to USSG §1B1.3 explains that "[t]here may be cases in which certain conduct underlies both an acquitted charge and the instant offense of conviction. In those cases, the court is in the best position to determine whether such overlapping conduct

Because the transportation counts of conviction involve five video files, for the five-level enhancement under USSG §2G2.2(b)(7)(D) to apply, the Court need only find, by a preponderance of the evidence, that the offense involved at least three other video files.

The Court can easily make this finding based on the trial evidence. The government introduced evidence that the defendant uploaded 220 child pornography files (218 videos and two still images) to his Google Drive, *see* Gov't Exs. 6, 200-1–200-220, and that he possessed additional child pornography video files that Google did not report to NCMEC and left in his account, *see* Gov't Exs. 5B, 201-1–201-4. The evidence at trial showed that the defendant had viewed numerous of these files and had accessed others that were not ultimately recovered.

For example, the government presented evidence at trial establishing that on April 27, 2020, the defendant used the Chrome web browser to access files entitled "2019-01-26 11.23.22.mp4," "2017-06-22 22.28.29.mp4,"[4] and "deleted porn hub vid 13 yo.mp4." *See* Gov't Ex. 401; 4/9/24 Tr. 436:5–445:9. Google reported "2017-06-22 22.28.29.mp4" to NCMEC and excised it from the defendant's Google Drive, *see* Gov't Exs. 6, 200-5, and it failed to report "2019-01-26 11.23.22.mp4" or "deleted porn hub vid 13 yo.mp4," leaving them in the account, *see* Gov't Exs. 5B, 201-2. Special Agent Calvillo testified that "2017-06-22 22.28.29.mp4" depicted "an African American prepubescent female performing oral sex on an adult male's penis,

---

establishes, in whole or in part, the instant offense of conviction and therefore qualifies as relevant conduct."

[4] This defendant was charged with transportation of this file in Count Three. Given the evidence that the defendant had previously accessed the file, the jury's acquittal appears to have been based on insufficient evidence of transportation. The government was unable to present evidence that this file had been saved on the defendant's laptop before he uploaded it to Google Drive. For the five transportation counts of conviction, the government presented evidence that the files had been saved on the defendant's desktop in a folder entitled "Courses," and so were necessarily moved from that location onto Google Drive. *See* Gov't Ex. 412A.

and at a certain point in the video the male's hand also grabs her head and motions her head up and down on his penis as well," 4/9/24 Tr. 409:1-6, and that "2019-01-26 11.23.22.mp4" depicted a prepubescent African American female who was "rubbing on her vagina" with her vagina and anus exposed to the camera, 4/9/24 Tr. 440:16-23.

The government also introduced evidence that the defendant had saved "Goldberg" series[5] videos on his Lenovo laptop on April 27, 2020, and accessed them between April 27, 2020, and August 4, 2020. *See* Gov't Exs. 412, 412A, 412B; 4/10/24 Tr. 623:12-22, 625:12–626:22, 638:18–639:2. All of the files were saved in the same file path: C:\Users\steph\Desktop\Courses\pyt trade\trade \2020 black pyt\. *See* Gov't Exs. 412, 412B. Only two of these files were specifically identified in the indictment, in Counts Five and Eight, *see* Gov't Exs. 200-136, 200-173, 412A, and the jury convicted the defendant of transporting those files. The defendant appears to have deleted the other nine files, as Google produced only metadata associated with them. *See* Gov't Ex. 5B (file path: Haute Gurls\pyt trade\trade_\2020 black pyt). Based on the content of the Goldberg videos introduced into evidence, the testimony about who "Goldberg" was, the filenames (which all reference prepubescent ages and include terms like "pthc" and "preteen"), and the fact that the files were in the same file path and opened close in time to one another, the Court can find by a preponderance of the evidence that the nine deleted Goldberg video files were similarly child pornography videos.[6]

---

[5] Special Agent Calvillo explained that "Goldberg" was a known defendant who had digitized child pornography files, *see* 4/9/24 Tr. 412:9-11, and Dero Tucker testified that Goldberg "was a well-known, pretty prolific producer of child sexual abuse material," *see* 4/10/24 Tr. 626:13-14.

[6] The Court can count deleted files in assessing the number of images. *See, e.g.*, *United States v. Nissen*, 666 F.3d 486, 491 (8th Cir. 2012) (holding, in case where forensic evidence showed defendant had edited or played since-deleted child pornography videos, "the court could have drawn the inference that Nissen knowingly possessed the videos because he viewed them or edited them at some point" and that "a court is permitted to rely on circumstantial evidence that

The hundreds of videos entered into evidence at trial and all the other evidence demonstrating the defendant's repeated contacts with child pornography—through multiple channels—establishes by a preponderance of the evidence that the offense involved well more than the eight videos required to apply the five-level enhancement under USSG §2G2.2(b)(7)(D).

           *   *   *

In sum, the total offense level is **35**. With a criminal history category of **I**, the defendant's guidelines range is **168 to 210 months' imprisonment**.

### THE GOVERNMENT'S RECOMMENDATION

The government respectfully recommends that the Court sentence the defendant to a guidelines erm of **180 months' imprisonment**, to be followed by ten years of supervised release. For reasons set forth below, the government's recommended sentence is sufficient, but not greater than necessary, to achieve the goals of sentencing. *See* 18 U.S.C. § 3553(a).

### A. Nature and Circumstances of the Offense

The evidence at trial showed that the defendant repeatedly sought out, viewed, and downloaded child pornography. And the quantity of child pornography that law enforcement recovered in this case—hundreds of video files—was substantial: Special Agent Calvillo testified that while it was "not the most" and "not the least," it was "in the upper two-thirds" of the over 80 child pornography cases she has investigated. 4/10/24 Tr. 581:10-17. The defendant was caught only because he uploaded child pornography files to Google's servers in September and October of 2020. But getting caught by Google was not enough to make him stop. When his cellphone was seized in October 2021, it contained evidence that, well after Google caught him, he was

---

demonstrates knowing possession of a certain number of images when deciding whether USSG § 2G2.2(b)(7)(D) applies").

present in Telegram and Google Photos groups in which child pornography was being trafficked, such as the Google Photos groups "13-17 lesbian cp," "CINCITY PYT," and "Pytvideos." *See* Gov't Ex. 401E.

Transportation and possession of child pornography are incalculably serious crimes that demand a significant punishment. As a threshold matter, the defendant appears to believe that uploading child pornography to a cloud storage account amounts to nothing more than possession. Congress disagrees. Its decision to punish transportation offenses more severely than possession offenses reflects the greater harm caused by the movement of child pornography through modalities of interstate commerce. In this case, the defendant essentially duplicated files he possessed on his laptop by creating copies on Google's servers. That meant that the files were not isolated to a single device but accessible to him on any device that could connect to the Internet. It caused significant harm to Google—which does not want child pornography on its servers—and to any of its employees who might have encountered the content. And while the evidence did not show that the defendant intended to distribute child pornography, uploading child pornography to one's cloud storage account is a step on the path to distribution. Once uploaded to Google Drive, child pornography can be shared with others through only a few clicks. Given Congress's intention to eradicate the market for child pornography, the duplication and movement of such material in interstate commerce poses a substantially greater harm than mere possession.

Trafficking in child pornography inherently involves the sexual abuse of children, and the harms cannot be overstated. "The demand for child pornography harms children in part because it drives production, which involves child abuse. The harms caused by child pornography, however, are still more extensive because child pornography is 'a permanent record' of the depicted child's abuse, and 'the harm to the child is exacerbated by [its] circulation.'" *Paroline v.*

*United States*, 572 U.S. 434, 439–440 (2014) (quoting *New York v. Ferber*, 458 U.S. 747, 759 (1982)); *United States v. Galarza*, No. 18-MJ-146, 2019 WL 2028710, at *6 (D.D.C. May 8, 2019) (Howell, J.) (noting that "'the perpetual nature of child pornography distribution on the Internet causes significant additional harm to victims,' [who] 'live with persistent concern over who has seen images of their sexual abuse' and how those images are being used to cause additional harm.'" (quoting 2012 Report at vii)).

Courts across the country have similarly described the grave harm caused by child pornography offenders, as they drive demand for the creation of child pornography and thus further incentivize the rape and sexual abuse of children. As one court has explained:

> [W]e have numerous victims in a case like this, not one victim. Every image of a child, every image of a nonadult engaged in any type of sexual activity or any type of pose without clothing or any type of exploitation constitutes an additional case of victimizing a child. Without a demand for that type of information and that type of viewing from persons like this defendant, we don't know how many child abuse cases we could prevent. And as long as there is a demand to purchase images of child pornography, there is going to be an unending stream of child abuse of people—children who are forced into these roles.

> So although I do not take issue with the writing about what has happened to the guidelines, I think it begs the question of what is at stake here in the statutory sentencing scheme and the fact that this conduct is illegal and the concern that the Congress of the United States and the courts of this nation and the public of this nation place on it, and that is, every image has a child who has been exploited and abused, and that is the concern I have. It is the concern that I have when people are engaged in serially doing this, the effect it has on children throughout the world and the effect it has on their future lives.

*United States v. Miller*, 665 F.3d 114, 121–22 (6th Cir. 2011) (quoting the district court) (affirming sentence and rejecting attack on the child pornography sentencing guidelines).

This case involved hundreds of video files depicting the rape and sadistic sexual abuse of the most vulnerable members of our community—very young girls. These children were subjected to unimaginable sexual abuse and cruelty. NCMEC was able to identify approximately 50 video

files and 12 image files as containing known victims; those files are associated with 40 different "series." Of those 40 identified series, there are victim impact statements for only six children. (*See* ECF No. 215). These children have been identified and rescued, and they and their loved ones are able to tell the Court about their pain and trauma. Most of the victims have been less fortunate and will be voiceless at sentencing.

The extremely serious nature of these offenses warrants a guidelines sentence.

**B. The History and Characteristics of the Defendant**

The defendant is 37 years old. While he has undoubtedly faced some challenges in life, he stands before the Court having enjoyed advantages that many others have not. Despite all this, the defendant accessed, downloaded, possessed, viewed, and transported child pornography videos. The evidence at trial made clear that this was no accident, and that the defendant purposefully and repeatedly accessed child pornography over a significant period of time.

The government acknowledges that the defendant has no prior criminal record. However, the defendant's lack of criminal history is accounted for in the guidelines range. Moreover, the Sentencing Commission recently enacted an adjustment to lower the guidelines range for certain offenders without criminal history, *see* USSG §4C1.1, but explicitly provided that the adjustment is not to be extended to defendants convicted of sex offenses, *see* USSG §4C1.1(a)(5).

The defendant's lack of criminal history is also unsurprising given that crimes involving the online sexual exploitation of children are committed in secret. This secrecy, combined with the overwhelming presence of digital devices and the near universal access to the Internet, makes detection of child pornography crimes difficult. It also speaks to the level of deception in which the defendant has engaged, which the Court should consider in evaluating his history and characteristics. Indeed, evidence that the defendant introduced at trial proved just how deceptive

he can be.  The defendant called his wife and other family members as character witness to demonstrate his law abidingness and sexual interest in adults.  *See* 4/11/24 Tr. 806:17–824:12, 980:1–1007:17.  Each character witness expressed total disbelief that the defendant could have engaged in the charged conduct.[7]  The defendant projected an image of being a law-abiding businessman, but when nobody was watching, he sought out and viewed depictions of prepubescent girls being sexually abused.  He was caught only because he uploaded child pornography files to Google's servers, and the evidence showed that even that was not enough to end his engagement with child pornography.

The deception inherent in the commission of child pornography offenses—coupled with trial evidence that the defendant had in fact deceived those around him—undermines the value of the psychosexual evaluation submitted by the defendant.  Dr. Felix premised her evaluation entirely on the defendant's self-reporting—none of which was verified using a polygraph—and at no point addressed any of the evidence presented at trial.  For example, Dr. Felix appears to have taken at face value the defendant's self-serving denial of any interest in child pornography.  *See* Evaluation at 12.  And in conducting the CPORT assessment, for the fifth item ("pedophilic interests"), Dr. Felix concluded that "[t]here is no evidence (i.e. records, self-report, or results from formal testing) to indicate that Mr. Johnson has pedophilic or hebephilic interests" and gave him a score of 0 on this item.  Evaluation at 17.  This conclusion is completely at odds with the trial evidence, which showed that the defendant had (i) repeatedly accessed child pornography depicting the abuse of prepubescent girls and (ii) deceived others regarding his sexual interest in children.  Had Dr. Felix assigned a point to this factor, the CPORT would have indicated a

---

[7] As defense expert Sara Boyd testified during the *Daubert* hearing, this is not at all uncommon in child pornography cases.  *See* 4/11/24 Tr. 1031:2-4 ("**Q.** And when you deal with offenders in CSAM cases, are [their] families often surprised by the conduct?  **A.**  Almost always.").

considerably higher risk of recidivism, with only 16% of individuals having a higher risk score. Evaluation at 18. The fact that Dr. Felix awarded a score of 0 for pedophilic interests shows that the risk assessment was skewed and should be disregarded.

Sex offenders generally have a high rate of recidivism. *See, e.g.*, *Lombard v. United States*, 44 F. Supp. 3d 14, 26 (D.D.C. 2014) (rejecting post-conviction challenge to defendant's sentence in child exploitation case because court's comments at sentencing on recidivism were "supported by substantial authority") (collecting cases). The information that the defendant has put forth concerning his risk of recidivism is not helpful to the Court for the reasons discussed above. Moreover, "[s]tatistical analysis of sex crimes has shown that the best predictor of recidivism is not deportment at an interview but sexual interest in children." *United States v. Garthus*, 652 F.3d 715, 720 (7th Cir. 2011). The child pornography videos that the defendant downloaded, watched, and uploaded to Google's servers are evidence of his sexual interest in prepubescent children. At trial, the defendant intended to offer expert testimony from Dr. Sara Boyd. Dr. Boyd had not interviewed the defendant and had no opinion about him as individual. But during a *Daubert* hearing, Dr. Boyd testified that, in her experience, having adult sexual relationships and an interest in adult pornography is "not at all" incompatible with possession of child pornography. 4/11/24 Tr. 1030:19–1031:1. And when asked if someone could knowingly possess child pornography and not be a pedophile, Dr. Boyd responded: "Yes. However, it is an extremely strong indicator if its prepubescent children and the person is engaging with it, it is actually a stronger clinical indicator of pedophilia than a history of actual hands-on offenses against children." 4/11/24 Tr. 1031:5-11. Unsurprisingly, the defendant did not call Dr. Boyd as a witness at trial or employ her to conduct the psychosexual evaluation.

Although the government is not seeking an obstruction enhancement under USSG §3C1.1,

the Court should consider that the defendant engaged in repeated conduct that, at a minimum, gives rise to the appearance he was attempting to conceal assets from the Court.  The defendant attempted to liquidate his assets, including his retirement account, before self-surrendering, which would have made them unavailable for a fine, mandatory restitution, and mandatory assessments at sentencing.  The conduct made little financial sense and was so alarming to the defendant's financial advisor that he reported it.  (*See* ECF No. 174-4).  The government brought this matter to the Court's attention, and the Court ultimately restrained $250,000 of the defendant's assets. (ECF Nos. 173, 177, 189).

Against this background—and despite being aware of the government's and the Court's extensive efforts to prevent him from dissipating his assets—the defendant failed to make a complete and truthful accounting of his assets to the Probation Office.  In the Draft Presentence Investigation Report, Probation wrote:  "The defendant also indicated having stocks with Chase Bank, but noted they are not actual holdings, just cash.  He was unsure of the fair market values and did not provide documentation for these accounts."  (ECF No. 184 ¶ 118).  Probation accordingly concluded that the defendant's total net worth was only $172,572.  (ECF No. 184 ¶ 116).  It is hard to understand how the defendant could have been unsure of the value of his accounts with JPMorganChase, given that it represents the substantial majority of his net worth and he had recently attempted to liquidate the accounts.  After the government objected, the defendant then provided Probation with additional information about his JPMorganChase assets. In the Final Presentence Investigation Report, Probation has now concluded that the defendant's total net worth is $1,060,508.00.  (ECF No. 211 ¶ 116).  The defendant would have the Court believe that he somehow forgot about nearly $1,000,000 in cash.

The history and characteristics of the defendant counsel in favor of a guidelines sentence.

### C. The Need for the Sentence Imposed

The sentence imposed must reflect the seriousness of the offense; promote respect for the law; provide just punishment; afford adequate deterrence; and protect the public from further crimes of the defendant. The government's recommendation of 180 months' imprisonment serves these goals.

As discussed above, the sexual exploitation of children—including the viewing, possession, and transportation of child pornography—has devastating consequences for the children depicted in these images and videos. Once they find their way onto the Internet, depictions of the sexual abuse of a child will circulate in perpetuity because individuals make the repetitive and purposeful decision to collect, save, and trade them for sexual gratification.

Furthermore, as noted above, consumers of child pornography, like the defendant, create a market and demand for the production of these images and videos, which depict the sexual abuse and exploitation of real children. These consumers therefore contribute to the cycle of abuse and are in part responsible for the harm suffered by children used to produce the images and videos in their collections. *See United States v. Goff*, 501 F.3d 250, 259–60 (3d Cir. 2007) ("Children are exploited, molested, and raped for the prurient pleasure of [defendant] and others who support suppliers of child pornography"). Thus, even if consumers of child pornography do not themselves molest children, their actions necessarily contribute to the abuse of children. The defendant's conduct and the harm that it perpetuates demands a sentence that will reflect the nature and circumstances of the offense, serve as a just punishment, and promote respect for the law. The government's recommended sentence would serve those goals.

Courts have also recognized the importance of deterrence in fashioning an appropriate sentence in child pornography cases. *See Osbourne v. Ohio*, 495 U.S. 103, 109–10 (1990) ("It is

also surely reasonable for the State to conclude that it will decrease the production of child pornography if it penalizes those who possess and view the product, thereby decreasing demand."); *United States v. Fry*, 851 F.3d 1329, 1332 (D.C. Cir. 2017) (affirming a within-guidelines sentence where the sentencing court focused on the serious nature of the criminal conduct and the importance of deterring the defendant and "others who may be inclined in doing similar kinds of things"); *Goff*, 501 F.3d at 261 ("Deterring the production of child pornography and protecting the children who are victimized by it are factors that should have been given significant weight at sentencing."); *United States v. Barevich*, 445 F.3d 956, 959 (7th Cir. 2006) ("Transporting and receiving child pornography increases market demand.  The greater concern under the Guidelines is for the welfare of these exploited children.  The avenue Congress has chosen to weaken the child pornography industry is to punish those who traffic in it.").  The government's recommended sentence would deter the defendant and others from reoffending.

For all the foregoing reasons, the government's recommendation of a sentence of 180 months' imprisonment is appropriate in this case.

**D.  The Need to Avoid Unwarranted Sentencing Disparities**

Congress has directed the court to consider avoiding *unwarranted* disparities among similarly situated offenders.  But Section 3553(a)(6) "does not require the district court to avoid sentencing disparities between defendants who might not be similarly situated."  *United States v. Mattea*, 895 F.3d 762, 768 (D.C. Cir. 2018) (quoting *United States v. Guillermo Balleza*, 613 F.3d 432, 435 (5th Cir. 2010).  When an offense is uniquely serious, courts will consider the need to impose "stiffer sentences" that "justif[y] the risk of potential disparities."  *United States v. Jones*, 846 F.3d 366, 372 (D.C. Cir. 2017); *see also United States v. Accardi*, 669 F.3d 340, 346 (D.C. Cir. 2012) (concluding that a within-guidelines sentence did not produce an unwarranted disparity

when the child pornography images distributed by the defendant "were much more aggressive and troubling than the images distributed by other offenders" who received lesser sentences). The D.C. Circuit has held that "even if a district court retains discretion to vary from the child-pornography Guidelines based on a policy disagreement with them, a district court does not necessarily abuse its discretion by agreeing with (and applying) those Guidelines." *Fry*, 851 F.3d at 1334.

The defendant cites a litany of cases from this Court that he believes are "similar" to the defendant's case here. (*See* ECF No. 214 at 48–54). But several key differences exist.

To start, each case he cites from the District of Columbia involved a plea and acceptance of responsibility. Indeed, 14 of the 15 cases cited by the defendant involved the defendant pleading to an information, meaning that the defendant accepted responsibility before the government had even sought an indictment before a grand jury. Here, however, one of the most concerning factors is the defendant's continuing reluctance to accept any responsibility, despite voluminous evidence that he accessed, downloaded, possessed, viewed, and transported child pornography files—and that he kept seeking out child pornography even after Google disabled his account by, for example, accessing illicit Telegram and Google Photos groups.

In addition, the guidelines range in the plea agreement for each of these former defendants was significantly lower than the defendant's range here. The cases that the defendant cites as "most similar" involved defendants with guidelines ranges of 78 to 97 months (Kampel and Malakoff) and 33 to 41 months (Wright). For the cases that the defendant cites as "more serious," the guidelines ranges were 78 to 97 months (Pakdel) and 51 to 63 months (Moreira). For the cases involving "substantially more serious conduct," almost all the guidelines ranges were lower: 151 to 188 months (Cooper); 108 to 135 months (Singleton); 97 to 121 months (Hawkins and Young); 87 to 108 months (DeGrange); 70 to 87 months (Misiano); 57 to 71 months (Patterson and

Solorzano); and 46 to 57 months (Gardea). Only one guidelines range was higher at 262 to 327 months (Zagorski).[8] The guidelines range here is two to four times the guidelines range in most of the cited cases. In other words, most of the cases do not present similarly situated defendants.

Accordingly, the government's recommendation of a term of 180 months' imprisonment fairly accounts for the defendant's egregious criminal conduct and would not create an unwarranted disparity.

### E. The Need to Provide Restitution to Any Victims of the Offenses

The government has submitted restitution requests on behalf of four identified victims. (*See* ECF No. 216). Contrary to the defendant's argument, restitution is mandatory here.

#### i. Restitution is mandatory.

The defendant argues that restitution is not mandatory here, but he misreads the statute: those who transport and possess child pornography in violation of 18 U.S.C. § 2252 owe mandatory restitution.

First, restitution is mandatory for all offenses in chapter 110, which includes the transportation and possession of child pornography counts of conviction here. *See* 18 U.S.C. § 2259(a) ("[T]he court *shall* order restitution for any offense under this chapter [chapter 110]." (emphasis added)), 2259(b)(4) ("The issuance of a restitution order under this section is *mandatory*." (emphasis added)).

Despite this statutory language, the defendant argues that only distribution, not transportation and possession offenses, are covered under this mandatory restitution scheme. (*See* ECF No. 214 at 57). But "[b]oth distribution and possession of child pornography offenses fall

---

[8] While Zagorski received a 99 month sentence, his case presented a significant, unmentioned factor: Zagorski faced deportation to Poland—a country he had not lived in since he was 15 years old.

under Section 2259's mandatory restitution scheme." *United States v. Monzel*, 930 F.3d 470, 476 (D.C. Circuit 2019); *see also Paroline v. United States*, 572 U.S. 434, 443 (2014) (noting that Section 2259(a) requires restitution for convictions for knowingly possessing child pornography).

Second, these offenses qualify for the specific restitution provisions for "trafficking in child pornography." *See* 18 U.S.C. § 2259(b)(2). This provision requires that the Court order restitution that reflects the defendant's "relative role in the causal process that underlies the victim's losses," and mandates at least $3,000 in restitution. 18 U.S.C. § 2259(b)(2)(B). The definition of "trafficking in child pornography" includes "conduct proscribed by section . . . 2252." 18 U.S.C. § 2259(c)(3). All the counts of conviction here—the five transportation counts and the possession count—are offenses proscribed by Section 2252.

The defendant argues, without any legal support and with disregard for the statutory text, that this provision "cannot possibly include" all offenses under Section 2252. (ECF 214 at 57). Yet that is exactly what the statute says: all offenses under Section 2252 are "trafficking in child pornography" offenses. So all the counts of conviction involve "trafficking in child pornography" for restitution purposes. *See id.; see also United States v. Hoffman*, No. 22-CR-18, 2022 WL 4017890, at *2 (W.D. Wash. Sept. 2, 2022) ("Trafficking in child pornography, for purposes of restitution, includes the receipt or possession of child pornography."); *United States v. Sotelo*, No. 21-CR-60016, 2022 WL 344588, at *1-2 (S.D. Fla. Feb. 4, 2022) (applying Section 2259(b)(2) to defendant convicted of one count of receipt of child pornography).

Restitution is mandatory here, as is the mandatory minimum restitution of $3,000 for "trafficking in child pornography" offenses.

      **ii.**    **The defendant must pay restitution to all the victims whose materials he possessed, even if the jury did not convict him of transporting a depiction of that victim's abuse.**

The defendant next argues that he should be responsible only for restitution to victims in the materials the jury convicted him of transporting. That argument fails. The defendant must pay restitution for any victims of the transportation counts, plus any victims of the possession count. *See* 18 U.S.C. § 2259(a) (mandating restitution for possession of child pornography). A victim is an "individual harmed as a result of the commission of a crime under [chapter 110]." 18 U.S.C. § 2259(c)(4).

The jury heard evidence that the defendant possessed over 220 video and image files containing child pornography on his Google Drive account. *See* Gov't Exs. 6, 200-1 through 200-220; 4/9/24 Tr. 391:4-7 (when asked what is depicted on Government Exhibit's 200-1 through 200-220, Special Agent Calvillo responded: "These are files of child pornography"). As the defendant himself admits, his "offense conduct is limited to possessing child pornography on his computer and uploading it to his own Google Drive folder." (ECF No. 214 at 58). Each of these files that the defendant possessed depicts the sexual abuse of a minor victim, although not all victims are seeking restitution here. And so the defendant must pay restitution to any of the victims for the child pornography he possessed on his Google Drive. Each of the restitution requests that the government has made relates to victims depicted in child pornography files that the defendant possessed on his Google Drive.

The defendant relies on two cases to support his argument that he should only pay restitution for the files associated with the transportation counts of conviction. *See United States v. Udo*, 795 F.3d 24, 33–34 (D.C. Cir. 2015); *United States v. Pole*, 741 F.3d 120, 127–29 (D.C. Cir. 2013). Neither case supports his argument. In fact, neither case concerns restitution in child

pornography cases or even Section 2259. *Pole* concerns a defendant who embezzled money from a Senate office. *See* 741 F.3d at 182. The D.C. Circuit rejected a restitution order that required him to pay restitution for money taken before the charged conduct, when the jury had not convicted him of any offense committed during that time period and the district court made no further factual findings to support the restitution order. *See id.* at 186–87. *Udo* presented the same issue: the restitution order included restitution for uncharged crimes. *See* 795 F.3d at 34. Here, though, the jury convicted the defendant of the sole count of possession, and the possession evidence at trial centered on the 220 files in the defendant's Google Drive. Unlike in *Pole* and *Udo*, the restitution requests here fit directly into the offense of conviction.

As discussed above with respect to the application of certain guidelines enhancements, even if the jury decided to convict the defendant of the possession count based solely on the child pornography files underlying the transportation counts of conviction, the trial evidence provides ample basis for the Court to find by a preponderance standard that all the child pornography evidence—including those files depicting the abuse of the victims seeking restitution—falls within the scope of the "offense" as relevant conduct. *See* Application Note 1(I) to USSG §1B1.1; USSG §1B1.3(a)(1)(A).

Each victim on whose behalf the government submitted a request is entitled to restitution.

## MANDATORY ASSESSMENTS IN CHILD PORNOGRPAHY CASES

Because the defendant is not indigent, he must pay an assessment of $5,000 under 18 U.S.C. § 3014(a). This mandatory assessment funds the Domestic Trafficking Victims' Fund. *See* 18 U.S.C. § 3014(c). The weight of Circuit authority holds that this assessment applies per count of conviction. *See United States v. Warrington*, 78 F.4th 1158, 1168–70 (10th Cir. 2023) (affirming imposition of Section 3014 assessments per count of conviction on plain error review);

*United States v. Randall*, 34 F.4th 867, 874–78 (9th Cir. 2022) (same on *de novo* review); *United States v. Johnman*, 948 F.3d 612, 616–21 (3d Cir. 2020) (same on plain error review).  *But see United States v. Haverkamp*, 958 F.3d 145 (2d Cir. 2020) (holding the Section 3014 assessment applies per offender, not per count of conviction).  Because the defendant was convicted of six counts, the Court should impose $30,000 in Section 3014 assessments.

In addition, the Court "shall assess . . . not more than $17,000 on any person convicted of an offense under section 2252(a)(4)" and "not more than $35,000 on any person convicted of any other offense for trafficking n child pornography."  18 U.S.C. § 2259A(a)(1)-(2).  These mandatory assessments fund the Child Pornography Victims Reserve, which was created to provide defined monetary assistance to victims of child pornography offenses.  *See* 18 U.S.C. §§ 2559(d), 2259B.  Because the text of Section 2259A tracks that of Section 3014, this assessment too applies per count of conviction.  *Compare* 18 U.S.C. § 2259A(a) (imposing mandatory assessments on "any person convicted of" a child pornography offense), *with* 18 U.S.C. § 3014 (imposing mandatory assessments "on any non-indigent person or entity convicted of an offense").  Accordingly, the Court can assess the defendant up to a total of $192,000.

\*    \*    \*

Congress has provided that the defendant's financial obligations be paid in this order:

(A) A special assessment under Section 3013;
(B) Restitution to victims of any child pornography production or trafficking offense that the defendant committed;
(C) An assessment under Section 2259A;
(D) Other orders under any other section of Title 18; and
(E) All other fines, penalties, costs, and other payments required under the sentence.

*See* 18 U.S.C. § 2259A(d)(2).

## **CONCLUSION**

For the foregoing reasons, the government respectfully recommends that the Court sentence the defendant to at term of **180 months' (15 years') imprisonment** to be followed by ten years of supervised release.

Respectfully submitted,

MATTHEW M. GRAVES
UNITED STATES ATTORNEY
D.C. Bar Number 481052

Dated: October 28, 2024          By:        */s/ Paul V. Courtney*
Paul V. Courtney
D.C. Bar No. 1034252 / N.Y. Bar No. 5392337
Assistant United States Attorney
Ryan Lipes
Special Assistant United States Attorney
N.Y. Bar No. 5404843
United States Attorney's Office
for the District of Columbia
601 D Street NW
Washington, D.C. 20530
(202) 252-1719 (Courtney)
(202) 514-4715 (Lipes)
Paul.Courtney@usdoj.gov
Ryan.Lipes@usdoj.gov