UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

|  |  |
|---|---|
| UNITED STATES OF AMERICA,<br><br>v.<br><br>STEPHEN JOHNSON<br><br>Defendant. | Case No. 1:22-cr-00176 (CJN) |

**STEPHEN JOHNSON'S RESPONSE TO THE
GOVERNMENT'S MEMORANDUM IN AID OF SENTENCING**

Mr. Johnson and the government each filed a sentencing memorandum on October 24 and October 28, 2024, respectively, to assist the Court with matters relating to Mr. Johnson's upcoming sentencing hearing. The government's sentencing memorandum focuses almost exclusively on Mr. Johnson's offense conduct and recommends a grossly disproportionate sentence. The government ignores critical information that is essential to determining an appropriate sentence, including Mr. Johnson's background, extensive and extraordinary community support, and post-offense (and post-Google alert) rehabilitation.[1] Moreover, it fails to candidly address the sentences in comparable cases, as those sentences do not support any sentence beyond 60 months' here, and do not come remotely close to supporting the government's truly excessive request for fifteen years.

---

[1] The government's Memorandum falsely suggests Mr. Johnson joined certain Telegram and Google Photos groups after receiving the Google Alert in October 2020. As the government well knows, there is zero evidence—forensic or otherwise—to support this claim. *See generally* 4/10 Tr. 646-649 (Dero Tucker testifying as to when messages were received, but not when Mr. Johnson would have been added to a group); *see also* 4/10 Tr. 725-727 (Mr. Tucker agreeing that he had not "looked at the rules or … the permission structure on Telegram for getting added to a channel" and he did "not recall any instances where there were sent messages from the Samsung Note+ device.")

The Court should impose a fair sentence in line with what other judges of this District Court have done: a 60-month sentence. In support of this request, Mr. Johnson responds to the government on (1) sentences in comparable cases; (2) the trial penalty, which in the government's view is over a decade of prison time; (3) the government's distortions of Dr. Felix's psycho-sexual report; and (4) the United States Sentencing Guidelines.

### I. Comparable Cases Militate Against a Guidelines Sentence, to a Sentencing at the Mandatory Minimum

The government acknowledges, as it must, that sentences within the guideline range in child pornography possession cases are rare. The overwhelming majority of child pornography possession and transportation defendants, including defendants in the District of Columbia, receive below guidelines sentences, and most are significantly below. *See* U.S.S.C Nat'l and Dist. Sentencing Data (see *United States v. Kampel*, 1:20-cr-00084-DLF, ECF 27). According to sentencing information concerning defendants sentenced in fiscal years 2015-2019 under U.S.S.G. § 2G2.2 with similar guideline adjustments, only 18.4% nationally received sentences within the guideline range. In the District of Columbia, 0% received guideline sentences during this same period. *Id.* Nationally, the overwhelming majority of this category of defendants received below guidelines sentences (i.e. 81.3%) and 5.5% of defendants received a probationary sentence.[2] As discussed *supra* and in Mr. Johnson's sentencing memorandum, *see generally* ECF 214, because Mr. Johnson's total offense conduct and his personal history is less troubling than many offenders who have similar guideline ranges, Mr. Johnson should be punished less severely.

---

[2] 3.7% received probation only sentences and 1.8% received a sentence of probation with alternatives.

An analysis of child pornography cases in this District yields 16 similar cases: David Malakoff (probation), Jason Wright (probation), Pasha Pakdel (time served), Wesley Hawkins (3 months), Mark Misiano (9 months), Ryan Young (12 months and 1 day), Michael Rowan (24 months), Pamela Wilson (30 months), Brian Kampel (33 months), Jason Dejournett (33 months), Thomas Meekins, Jr. (37 months), Marc Gange (46 months), Ryan Cooper (mandatory minimum 60 months), Aron Patterson (mandatory minimum 60 months), Christopher Solorzano (mandatory minimum 60 months), and John Moreira (mandatory minimum 60 months). *See* Ex. A (statements of facts). Not one of these cases featured conduct *less* disturbing than Mr. Johnson's, and some featured conduct considerably worse, including distribution to other persons. *See id.* (e.g., *Misiano*, *Young, Gange*, *Cooper*, *Patterson*, *Solorzano*, *Moreira*). All of the below cases occurred in this District, involved worse or conduct to Mr. Johnson's, then resulted in the government requesting significantly lower terms of imprisonment, and/or the court imposing significantly lower terms. The only independent variable that differs from those cases with the lowest sentences, including the probationary ones, is Mr. Johnson's exercise of his constitutional right to a trial.

• ***United States v. Brian Kampel*, 1:20-cr-0084 (DLF) (D.D.C. August 5, 2021)**

Mr. Kampel had downloaded and possessed CSAM for ten years, sourced among others from websites which required credit card payment. This resulted in over a thousand files of child pornography depicting sadistic, penetrative conduct explained in more detail in Mr. Johnson's original sentencing memorandum. *See* ECF 214 at 52. The government requested 78-97 months' incarceration, and the court imposed 33 months.

• *United States v. Jason Dejournett*, 1:20-cr-00094 (DLF) (D.D.C. July 30, 2021)[3]

The defendant here had used Tor browser (a browser familiar to the Court from Mr. Johnson's hearing) and Bitcoin to pay for and download child pornography multiple times, over the course of one and a half years. The government requested a sentence at the lower end of the 51–63-month Guidelines range. The court imposed a sentence of 33 months' incarceration, followed by lifetime supervised release.

• *United States v. Ryan Cooper*, 19-cr-382 (KBJ) (D.D.C. April 30, 2021)

Mr. Cooper distributed nineteen images depicting child pornography through a Tumblr page, then twenty-six more images through a second Tumblr account. The distributed material included three videos depicting oral, anal or penetrative sex of pre-pubescent males. A search warrant for Mr. Cooper's electronic devices revealed hundreds more of such content. The government only requested 72 months, and he received the five-year mandatory minimum, followed by 10 years supervised release.

• *United States v. Aron Patterson*, 19-cr-355 (PLF) (D.D.C. January 28, 2020)

The defendant in this case acted as the "owner" of a social media messenger group established for trading and distributing child pornography. He invited, added and removed users as he saw fit, and actively traded in and encouraged others to trade in illicit material, incentivizing active participation in the distribution scheme by removing anyone who did not quickly share child pornography with the group and promoting those to "admin" who shared sufficient material. The government sought 60 months' incarceration, and he received the five-

---

[3] This case, alongside the comparable sentences in *United States v. Thomas Meekins, Jr.*, 1:17-cr-103 (ABJ) (D.D.C. May 14, 2018), *United States v. Pamela Wilson*, 1:17-cr-00011 (RDM) (D.D.C. Apr. 12, 2017) and *United States v. Marc Gange*, 1:13-cr-00038 (JEB) (D.D.C. June 11, 2013), explained below, only came to the undersigned counsel's attention recently and were not included in the original sentencing memorandum.

year mandatory minimum, followed by five years' supervised release. Notably, the period of incarceration was further reduced through credit for time served since his arrest 15 months prior.

• ***United States v. Christopher Solorzano*, 19-cr-282 (TJK) (D.D.C. December 3, 2019)**

The defendant in this case distributed images of child pornography through an instant messaging app. He also claimed to have engaged in sexual activity with his minor stepdaughter and sent an undercover officer images he purportedly snuck of her, alongside other child pornography. During the course of his conversation with the officer, the defendant also discussed travelling to the District of Columbia to engage in sexual acts with the officer's 8-year-old child. The government recommended, and the court imposed, the five-year mandatory minimum of incarceration, followed by five years' supervised release.

• ***United States v. Pasha Pakdel*, 1:17-cr-00165 (RJL) (D.D.C. June 11, 2019)**

Over the course of two years, Mr. Pakdel downloaded, uploaded and shared multiple child pornography files to a peer-to-peer network, many of which were subsequently downloaded by other users. The government sought 37-46 months' incarceration, and he was sentenced to time served, followed by 120 months of supervised release.

• ***United States v. Thomas Meekins, Jr.*, 1:17-cr-103 (ABJ) (D.D.C. May 14, 2018)**

Mr. Meekins used a peer-to-peer file-sharing network to share child pornography, including graphic images downloaded by law enforcement from Mr. Meekins's computer. He also possessed approximately 66 videos and 16 partially-downloaded videos. The government recommended 37 months' incarceration and the Court imposed a s sentence of 24 months, to be followed by 48 months of supervised release.

- ***United States v. Pamela Wilson*, 1:17-cr-00011 (RDM) (D.D.C. Apr. 12, 2017)**

Ms. Wilson had distributed to the government agent a collection of more than 500 graphic videos and images of child pornography and traveled to meet the agent and the agent's purported nine-year-old daughter to engage in sexual conduct with the daughter. At the time she did all this, Ms. Wilson was aware that she was separately being investigated for distributing images child pornography to online chat rooms. She also admitted to the agent that she had "touched" children as young as seven years old for whom she had babysat. Among the thousands of images and videos in defendant's possession were graphic images of prepubescent children experiencing anal and oral sodomy and vaginal intercourse with adults. Despite all of the above, the government only sought a sentence at the bottom of the 97-121 months Guidelines range, and the court only imposed 30 months' incarceration, followed by 120 months of supervised release.

- ***United States v. Ryan Young*, 16-cr-00082 (CRC) (D.D.C. Aug. 17, 2016)**

The defendant sent multiple images of child pornography to an undercover agent, solicited images of the agent's purported 9-year-old daughter, and discussed engaging in sex acts with the purported daughter. A search of the defendant's cell phone revealed 22 further unique videos and 44 unique images, including two clips depicting bestiality against prepubescent female children and one video depicting multiple prepubescent and toddler female children forcibly penetrated vaginally and orally. Still, the government sought a sentence at the low end of the 108-135 months Guidelines range. The court imposed one year and one day incarceration, followed by 60 months of supervised release.

• *United States v. Mark Misiano*, 16-cr-00048 (RDM) (D.D.C. July 26, 2016)

Mr. Misiano distributed multiple pornographic images of prepubescent and toddler children to an undercover officer, including some he described as depicting rape. In part relying on Mr. Misiano's post-offense rehabilitation, the government recommended 36 months' imprisonment. The Court sentenced him to 9 months, followed by 120 months of supervised release.

• *United States v. Wesley Hawkins*, 13-cr-00244 (KBJ) (D.D.C. Nov. 22, 2013)

Mr. Hawkins uploaded fives videos depicting child pornography to YouTube and sent multiple child pornography videos to an undercover agent, both through email and cloud file-sharing services. The government recommended 24 months of incarceration. Mr. Hawkins was sentenced to 3 months, followed by 73 months of supervised release.

• *United States v. Marc Gange*, 1:13-cr-00038 (JEB) (D.D.C. June 11, 2013)

In this case, the defendant distributed approximately 79 images of child pornography depicting 9-12-year-old female children, many being vaginally, orally and anally penetrated by adult males. He also sent pictures of young women he worked with, claiming to have masturbated into their underwear, pictures of prepubescent females with semen on them, and pictures of himself masturbating. A search of his USB drive revealed 3 videos and 911 further images of child pornography, with the videos depicting oral, anal or vaginal penetration. The government requested 97 months and the court imposed 46 months' incarceration, followed by 120 months of supervised release.

• *United States v. John Moreira*, 1:10-cr-00002 (ESH) (D.D.C. May 21, 2010)

Mr. Moreira used peer-to-peer software to share files with an undercover law enforcement agent. When the defendant was arrested, law enforcement found over 800 images

and 5 videos of child pornography, including images of prepubescent children, in the defendant's possession. The government requested the mandatory minimum of 5 years, which the court imposed, followed by 5 years of supervised release. Notably, probation was terminated after 3 years based on flawless compliance with its terms.

• *United States v. Jason Wright*, 1:09-cr-00311 (ESH) (D.D.C. Apr. 15, 2010)

In this case, the defendant had used a peer-to-peer file-sharing website to download 284 images of child pornography, depicting girls as young as 11 years old. The government sought 33-41 months incarceration. The court sentenced Mr. Wright to 5 years' probation.

• *United States v. Michael Rowan*, 09-cr-225 (RMU) (D.D.C. Jan. 5, 2010)

Mr. Rowan distributed 16 images to an undercover officer through peer-to-peer computer software. Upon investigation, 826 images of child pornography were found in the defendant's possession, including images of infants and toddlers being penetrated. The government requested 97 months' incarceration. The Court imposed 24 months, followed by a supervised release of 180 months.

• *United States v. David Malakoff*, 1:09-cr-00051 (ESH) (D.D.C. July 17, 2009)

Mr. Malakoff downloaded over 150 images of child pornography onto his computer, including images depicting sexual acts of violence against children and video clips of prepubescent children engaging in oral and vaginal sex. Individuals reviewing the files found references to child pornography in their titles, even though Mr. Malakoff claimed his computer was just infected with a virus. The government recommended 78-97 months incarceration. The court sentenced him to 5 years of probation, from which he was successfully terminated early.

* * *

The government attempts to distinguish Mr. Johnson's case from the above cases by arguing that his Guidelines range is higher. That argument turns a blind eye to a basic fact of federal criminal sentencing: that prosecutors manipulate the Guidelines ranges depending not on the actual offense conduct, but on a desire to achieve a plea and reward a defendant who pleads early, and punish those who do not. While the Guidelines were not meant to be used this way, the reality is that in the hands of the government the rewards and penalties of a plea go far beyond the three-level "acceptance of responsibility" already provided for in the Guidelines. While this practice of adding years to its sentencing requests for going to trial—or even a decade, as the government is doing here—runs directly contrary to the "real offense" sentencing system the Guidelines were meant to create, it is a central fact of plea bargaining and federal sentencing. Most importantly for present purposes, it undermines the basis for the comparisons the government presents the Court with here.

**II.     The Government's Efforts to Discredit Dr. Felix's Evaluation are Meritless**

Because Dr. Tashna Felix's professional findings are at odds with the government's flawed view of Mr. Johnson's recidivism risk, the government engages in baseless attacks on Dr. Felix's thoroughly investigated and well-reasoned psychological evaluation and report. The government begins by claiming that Dr. Felix's report is undermined by Mr. Johnson's alleged deception. The government's basis for accusing Mr. Johnson of deception is rooted in its opinion that deception is "inherent in the commission of child pornography offenses" and that Mr. Johnson called character witnesses to testify at trial about his law abidingness and sexual interest in adults. *See* Government's Memo at 19-20. If one were to accept the government's reasoning, psychosexual evaluations in child pornography cases would be meaningless because all evaluations would be undermined by this alleged inherent deceptive nature of child

9

pornography offenders. Accusing Mr. Johnson of deception based on the testimony of his character witnesses is also absurd. Unrefuted testimony from honest law-abiding and well-respected members of the community is not evidence of Mr. Johnson's deception—especially when their testimony is consistent with the government's evidence which shows that the vast majority of pornography involved in this case was adult pornography.

The government next complains that Dr. Felix relies solely on Mr. Johnson's self-reporting. *See* Government's Memo at 20. This allegation is also not true. Dr. Felix's report discusses Mr. Johnson's instant convictions of five counts of transportation of child pornography and one count of possession of child pornography, and these convictions are considered in her evaluation. *See* Felix Report at 5. Dr. Felix also noted instances where Mr. Johnson exhibited "defensiveness" and, despite this defensiveness, she determined that she was able to make a valid diagnosis of Mr. Johnson's psychological condition. *Id*. at 9. And, rather than base her conclusions on Mr. Johnson's reporting without any questioning, Dr. Felix evaluated Mr. Johnson's veracity on a Sex Item Truthfulness scale. *Id*. at 13. Dr. Felix determined that, after running the Sex Item Truthfulness scale, the scores she reported about Mr. Johnson are valid. *Id*.

The government also attempts to discredit Dr. Felix's assessment of Mr. Johnson's performance on the CPORT tool. While the government accuses Dr. Felix of not considering the instant case in her assessment, the government fails to recognize that the tool is only used on individuals who have already been convicted of a child pornography offense. *See* Dr. Felix's report at 17 ("The CPORT is a risk assessment tool designed to predict the sexual recidivism of men convicted of child pornography offenses"). The fact that Dr. Felix administered the CPORT tool on Mr. Johnson is evidence that she did consider his conduct in the instant offense and that she is treating him as a child pornography offender. Contrary to the government's uninformed

opinion about this matter, scoring on the CPORT tool is based on factors such as "any *prior* criminal history" and "any *prior* sexual offense history." Dr. Felix's report at 17 (emphasis added).

Finally, the government seeks to undermine Dr. Felix's conclusion that Mr. Johnson "is classified as a 'low-risk' for sexually deviant behavior" [4] and that he "presents a low risk of sexual recidivism"[5] by arguing that "[s]ex offenders generally have a high rate of recidivism." Government's Memo at 21. First, the government's position about recidivism, unlike Dr. Felix's report, are based on the government's claims about "general" recidivism rates rather than on Mr. Johnson's risk of recidivism. Second, the government's claims about high recidivism rates are contradicted by the numerous studies cited in Mr. Johnson's sentencing memorandum and the examples of cases offered in Mr. Johnson's sentencing memorandum about the repeated success convicted child pornography offenders have while in the community. *See, e.g.,* Mary Helen McNeal & Patricia Warth, *Barred Forever: Seniors, Housing and Sex Offense Registration*, 22 KAN. J.L. & PUB. POL. 317, 344-45 (Spring 2013) ("research consistently demonstrates that recidivism rates for people who have been convicted of a sex offense are substantially lower than most people believe, and in fact, are among the lowest of all people convicted of a crime") and *Measuring Recidivism*, United States Sentencing Commission (May 2004) at 12-13 (research by the United States Sentencing Commission demonstrates that a history of stable employment, a college education, lack of criminal history, and family ties and responsibilities all predict reduced recidivism across offenses); *see also United States v. Jason Wright*, 1:09-cr-00311 (D.D.C.) (due to defendant's successful adjustment in the community, his supervision was

---

[4] Dr. Felix's Report at 19.
[5] *Id*.

terminated early) and *United States v. John Moreira*, 1:10-cr-00002 (D.D.C) (after complying with all the conditions of his probation, the Court agreed to the early termination of defendant's probation after three years).

### III.    Mr. Johnson Should Not Be Excessively Punished for Exercising his Constitutional Right to Trial

Mr. Johnson elected to proceed to trial and a jury has found him guilty of certain counts, while acquitting him of more. He should not be unfairly penalized at his sentencing hearing for exercising his Sixth Amendment right to trial. Particularly when compared to other sentences for similar (and worse) conduct, the only credible basis for a sentence above the mandatory minimum of 60 months is a heavy trial tax imposed on Mr. Johnson for exercising his constitutional right to trial.

To be fair and reasonable, "post-trial sentences should not increase by more than . . . denial of acceptance of responsibility (if appropriate); obstruction of justice (if proved); and the development of facts unknown before trial."[6] In Mr. Johnson's case, there is no proof that he obstructed justice, and no facts unknown before trial that would warrant an increased sentence ever developed. Therefore, there is no basis for increasing Mr. Johnson's sentence beyond what other defendants have received—some with significantly worse facts—in this category of cases.

Indeed, the government candidly admits that the central factor driving its 15-year sentencing recommendation is that most of the other cases involved a guilty plea. *See* ECF 217 at 25 ("To start, each case he cites from the District of Columbia involved a plea and acceptance

---

[6] *See* NACDL, *The Trial Penalty: The Sixth Amendment Right to Trial on the Verge of Extinction and How to Save It* (2018) at 13, available from https://www.nacdl.org/getattachment/95b7f0f5-90df-4f9f-9115-520b3f58036a/the-trial-penaltythe-sixth-amendment-right-to-trial-on-the-verge-of-extinction-and-how-to-save-it.pdf (last accessed Oct. 28, 2024).

of responsibility. Indeed, 14 of the 15 cases cited by the defendant involved the defendant pleading to an information[.]"). But notwithstanding Mr. Johnson decision to go to trial, the § 3553 factors—no prior criminal history, voluntary cessation of illegal conduct *prior to his arrest*, and the need to avoid unwarranted sentencing disparities—still apply equally to Mr. Johnson. These mitigating factors should not be ignored merely because someone exercises a constitutional right. Because Mr. Johnson is similarly situated to those defendants receiving far less than 60 months of imprisonment, he should receive no more than that.

### IV. The Government Miscalculates the Applicable Guidelines Range and its Recommended Term of Imprisonment, Based in Part on Ambiguities The Government Created Through Its Requested Jury Instructions

#### A. Because Mr. Johnson's conduct was limited to the receipt of child pornography, he is entitled to a two-level reduction pursuant to U.S.S.G. § 2G2.2(b)(1).

When a defendant's base offense level is 22, his conduct is limited to the receipt or solicitation of child pornography, and he did not intend to traffic or distribute child pornography, the defendant is entitled to the two-level reduction. *See* U.S.S.G. § 2G2.2(b)(1). Contrary to the government's contention, Mr. Johnson meets all three requirements under §2G2.2(b)(1).

The government's argument that Mr. Johnson's conduct was not limited to the receipt or solicitation of child pornography is meritless. First, as discussed in Mr. Johnson's sentencing memorandum, despite the title of Mr. Johnson's offense of conviction, his offense conduct involved nothing more than receiving child pornography when illicit material was uploaded to his Google Drive account. His conduct did not involve distribution, trafficking, or transportation to another person. His conduct also did not involve the physical transportation of child pornography by Mr. Johnson across state lines. Therefore, because his conduct was truly limited to only receipt, the two-level decrease applies.

Second, the government fails entirely to distinguish Mr. Johnson's case from

13

*United States v. Chiccini*, 2022 WL 1024261 (3d Cir. 2022), a case where the decrease was held to apply under factual circumstances similar to the facts in Mr. Johnson's case. Significantly, in *Chiccini*—like in Mr. Johnson's case—the defendant possessed child pornography on his computer and transferred those files via the internet to his personal cloud storage account. Rather than identify any distinction between *Chiccini* and Mr. Johnson's case, or cite alternative authority with a similar factual scenario, the government resorts to nothing more than attacking *Chiccini* by arguing that the decision "is not analytically sound." Government's Memo at 10. Because *Chiccini* was correctly decided and well-reasoned, it provides convincing authority for applying § 2G2.2(b)(1)'s two-level decrease in Mr. Johnson's case.

Third, the facts involved in the cases cited by the government to support its position are materially dissimilar to Mr. Johnson's case and to *Chiccini*. Both *United States v. Fore*, 507 F.3d 412 (6th Cir. 2007) and *United States v. Burgess*, 576 F.3d 1078 (10th Cir. 2009), involve defendants who physically transferred photographs depicting child pornography from one state to another by transporting those photographs across state lines in their vehicles. Unlike Mr. Johnson and Mr. Chiccini, the conduct in *Fore* and *Burgess* was not limited to the defendants receiving child pornography.

### B. Because the file charged in Count Two does not involve penetration, an enhancement for sadistic, masochistic, or depictions of violence, is inapplicable.

In arguing that U.S.S.G. § 2G2.2(b)(4)'s four-level enhancement for material depicting sadism, masochism, or violence applies, the government focuses on one file for which Mr. Johnson was convicted. Government's Memo at 11 ("The file that the defendant was convicted of transporting in Count Two—'black Shayla BACK IT UP 2.mp4,' [] alone justifies the application of this enhancement"). Even when adopting the government's position that the "penetration of prepubescent minors" alone justifies an enhancement under U.S.S.G. §

14

2G2.2(b)(4), the four-level enhancement does not apply to the file charged in Count Two. According to the government's account, the file in Count Two depicts a child using a toothbrush "*on* her vagina" and a male hand also using the same toothbrush "*on* the child's vagina." Government's Memo at 11 (emphasis added).  Since the toothbrush in this file is *on* the child's vagina and *not in* her vagina, penetration is not depicted in that file.  Accordingly, a four-level enhancement is inapplicable.

    **C. Even when counting both files charged in Counts Five and Eight, the applicable offense level increase for number of images is four levels.**

    The government asks this Court to apply a five-level enhancement for conduct involving 600 or more images based on images for which Mr. Johnson was acquitted.  Despite the new acquitted conduct guideline that prohibits use of acquitted conduct in calculating the applicable guideline range,[7] the government claims that files for which Mr. Johnson was acquitted should be considered because they establish "that the offense involved well more than the eight videos required to apply the five-level enhancement under USSG §2G2.2(b)(7)(D)." Government's Memo at 16.  The government argues that the acquitted material underlies both an acquitted charge and the offenses of conviction; therefore permitting the Court to exercise its discretion to include the acquitted conduct in calculating the Guidelines range.  *See* U.S.S.G. 1B1.3(c), Application Note 10 ("[t]here may be cases in which certain conduct underlies both an acquitted charge and the instant offense of conviction" and, in those situations, the court may decide whether such "overlapping conduct" is relevant conduct).  Because each of the fifteen transportation counts in the indictment charged a separate individual file, conduct for one of the

---

[7] In accordance with the 2024 Sentencing Guidelines manual, relevant conduct does not include acquitted conduct and acquitted conduct, therefore, "is not relevant conduct for purposes of determining the guideline range." U.S.S.G. 1B1.3(c) & U.S.S.G. 6A1.3 commentary.

transportation counts cannot possibly underlie conduct for another transportation count and there is no issue of "overlapping conduct." And, because there is no evidence that the jury's conviction on the possession count involved any files other than those charged in the five convicted transportation counts, Mr. Johnson's conviction is based on only five files. Regardless of whether the duplicative files charged in Counts Five and Eight are counted once or twice, the number of images involved in Mr. Johnson's case is at least 300 and fewer than 600. Therefore, only a four-level enhancement applies due to the number of images.

## CONCLUSION

Based on the information provided by Mr. Johnson regarding sentencing data, other child exploitation cases in the District of Columbia and nationally, Mr. Johnson's background, his extraordinary post-offense rehabilitation, and the fact that he poses a low risk for reoffending, the Court should sentence him to sixty months, to be followed by five years of supervised release.

Dated: October 30, 2024                              Respectfully Submitted,

*/s/ Jonathan Jeffress*
Jonathan Jeffress (D.D.C. No. 479074)
Courtney R. Forrest (D.D.C. No. 996740)
Tony Miles (D.D.C. No. 484450)
Washington, D.C. 20005
Phone: (202) 640-2850
Fax: (202) 280-1034
jjeffress@kaiserlaw.com
cforrest@kaiserlaw.com
tmiles@kaiserlaw.com

*Counsel for Stephen Johnson*

**CERTIFICATE OF SERVICE**

I hereby certify that on this 30th day of October 2024, the foregoing was served electronically on the counsel of record through the U.S. District Court for the District of Columbia Document Filing System (ECF) and the document is available on the ECF system.

*/s/ Jonathan Jeffress*
Jonathan Jeffress